**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 15 |
| JUNHO BANG, | Case No. 25-12298 (KBO) |
| Debtor in a Foreign Proceeding. | |

**VERIFIED PETITION FOR (I) RECOGNITION OF FOREIGN MAIN
PROCEEDING; (II) RECOGNITION OF FOREIGN REPRESENTATIVE;
AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

Professor Soogeun Oh, in his capacity as receiver (in such capacity, the "Receiver") and authorized foreign representative (in such capacity, the "Foreign Representative") of Mr. Junho Bang (the "Debtor" or "Mr. Bang"), who is the subject of a proceeding (Case Number: Seoul Bankruptcy Court 2025Hoedan142 Rehabilitation) (the "Korean Rehabilitation Proceeding") under the *Debtor Rehabilitation and Bankruptcy Act* (the "DRBA") currently pending before the Republic of Korea's Seoul Bankruptcy Court, 101st Single Bench (the "Korean Court"), submits this verified petition (together with the form petition filed concurrently herewith, the "Verified Petition") for recognition of the Korean Rehabilitation Proceeding with respect to the Debtor as a "foreign main proceeding" and certain related relief pursuant to sections 105(a), 1507, 1510, 1515, 1517, 1520, and 1521 of title 11 of the United States Code (the "Bankruptcy Code").

In support of the Verified Petition, the Foreign Representative has filed contemporaneously herewith the *Declaration of Soogeun Oh in Support of Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Oh Declaration"), which is incorporated herein by reference.

## I.    **PRELIMINARY STATEMENT**[1]

1.      Mr. Bang, a citizen and domiciliary of the Republic of Korea, is one of the single-largest creditors of FTX, having filed two large Customer Claims in the FTX Cases (the "FTX Claims").  He is also a convicted fraudster that is currently serving a ten-year prison sentence in Korea for his part in defrauding several Investors in a virtual-asset related scheme that collapsed, in part, as a result of the freezing of withdrawals from the FTX Exchange after the commencement of the FTX Cases.  In April 2025, two of the Debtor's creditors commenced the Korean Rehabilitation Proceeding against Mr. Bang before the Korean Court to facilitate a centralized and orderly process for the realization and distribution of the Debtor's assets to the Debtor's creditors. The Foreign Representative is the third-party Receiver (functionally equivalent to a chapter 11 trustee) appointed by the Korean Court in the Korean Rehabilitation Proceeding to act as a public fiduciary for the Debtor's stakeholders, vested with the exclusive authority to manage and dispose of the Debtor's assets.

2.      The Debtor's most valuable assets are the FTX Claims that the Debtor filed in the FTX Cases and then purported to transfer to Lemma, a Panamanian shell company the Debtor created and controlled.  The Receiver successfully applied for and obtained an order of the Korean Court avoiding the gratuitous transfer of the FTX Claims from the Debtor to Lemma.  As a result, pursuant to the Avoidance Order issued by the Korean Court, the FTX Claims are property of the Debtor's estate, whose proceeds should be available for distribution to the Debtor's creditors through the Korean Rehabilitation Proceeding in accordance with the DRBA.

3.      Unfortunately, however, the Receiver has been stymied by a claim trader active in

---

[1]      Capitalized terms used but not defined in this Preliminary Statement are intended to have the meanings ascribed to them *infra*.

the FTX Cases, Svalbard, in his efforts to realize distributions on account of the FTX Claims for the benefit of the Debtor's creditors.  Svalbard purportedly entered into two Svalbard Trade Confirmations with Lemma, pursuant to which Lemma agreed to sell the FTX Claims to Svalbard, subject to due diligence and the parties executing definitive documentation.  Svalbard asserts— including through the moribund (though still pending) NY State Court Action—that Lemma agreed to sell it the FTX Claims but, in breach of two Svalbard Trade Confirmations, failed to do so. Svalbard therefore continues to demand specific performance from Lemma in the NY State Court Action, notwithstanding the fact that—as a result of the Avoidance Order—Lemma does not own the FTX Claims and is therefore incapable of performing under the Svalbard Trade Confirmations (i.e. assigning the FTX Claims to Svalbard).

4.      Even though Svalbard is actively participating in the Korean Rehabilitation Proceeding as an alleged creditor of the Debtor and has never asserted that it is the actual owner of (or has any cognizable property interest in) the FTX Claims, Svalbard has flatly refused to cooperate with the Receiver with respect to the FTX Claims.  As a result, the Foreign Representative has been forced to commence this Chapter 15 Case to ensure the Debtor's Korean Rehabilitation Proceeding—including the Avoidance Order issued therein—is fully enforced and respected within the United States.[2]  The Foreign Representative submits that this Court's recognition of the Korean Rehabilitation Proceeding and cooperation therewith will provide for the most effective mechanism for dealing with two cases of cross-border insolvency (i.e. the FTX

---

[2]      The Receiver, through his undersigned United States counsel, has had productive discussions with counsel to the FTX Recovery Trust regarding the FTX Claims over the past several months.  Through those discussions, as well as the FTX Recovery Trust's filings in the FTX Cases, the Receiver understands that the main impediments to distributions being made on account of the FTX Claims are (i) the satisfaction of Original Customer KYC process in the FTX Cases as to the FTX Claims; and (ii) the pendency of the NY State Court Action.  The Foreign Representative intends to continue these discussions with the FTX Recovery Trust and believes that these asserted impediments through recognition of the Korean Rehabilitation Proceeding and entry of the Order and this Chapter 15 Case.

Cases and the Korean Rehabilitation Proceeding), including the "fair and efficient administration of" such cross-border cases in a manner "that protects the interests of all creditors, and other interested entities, including the debtor."[3]

5.      Accordingly, the Foreign Representative respectfully requests entry of an order (the "Order"): (a) granting the Verified Petition and recognizing the Korean Rehabilitation Proceeding as a "foreign main proceeding" pursuant to section 1517 of the Bankruptcy Code; (b) recognizing the Foreign Representative as the "foreign representative" of the Debtor as defined in section 101(24) of the Bankruptcy Code; (c) recognizing and enforcing the Avoidance Order; (d) applying section 362 of the Bankruptcy Code in this Chapter 15 Case pursuant to sections 105(a), 1507, and 1521 of the Bankruptcy Code; (e) finding that the Verified Petition meets the requirements of section 1515 of the Bankruptcy Code; (f) providing that no action taken by the Foreign Representative in preparing, disseminating, applying for, implementing, or otherwise acting in furtherance of the Korean Rehabilitation Proceeding, any order entered in respect of this Verified Petition, this Chapter 15 Case, any further order for additional relief in this Chapter 15 Case, or any adversary proceedings or contested matters in connection therewith, will be deemed to constitute a waiver of any immunity afforded the Foreign Representative, including without limitation pursuant to section 1510 of the Bankruptcy Code; and (g) granting such other relief as the Court deems just and proper. A proposed form of the Order is attached hereto as **Exhibit A**.

## II.      **JURISDICTION AND VENUE**

6.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated

---

[3]      11 U.S.C. § 1501(a)(3).

February 29, 2012.    The Foreign Representative confirms its consent, pursuant to Rule 7008 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order

by the Court in connection with the Verified Petition to the extent that it is later determined that

the Court, absent consent of the parties, cannot enter final orders or judgments in connection

herewith consistent with Article III of the United States Constitution.

7.    This Chapter 15 Case has been properly commenced pursuant to section 1504 of

the Bankruptcy Code by the filing of a petition for recognition of the Korean Rehabilitation

Proceeding under section 1515 of the Bankruptcy Code.  Venue is proper pursuant to 28 U.S.C. §

1410.

8.    The statutory bases for the relief requested herein are sections 105(a), 1504, 1507,

1510, 1515, 1517, and 1521 of the Bankruptcy Code.

## III.    FACTUAL BACKGROUND

### A.    The Debtor's Background

9.    The Debtor is a citizen of the Republic of Korea who was born in the Republic of

Korea on June 26, 1994.  Mr. Bang has always resided in the Republic of Korea and is a Korean

citizen with a registered domicile (prior to his incarceration) in Seoul.  In or about 2018, the Debtor

began to develop a cryptocurrency trading program (the "Trading Program"), aimed at exploiting

arbitrage opportunities in the cryptocurrency market.  Over the next several years, the Debtor

expanded his cryptocurrency business (operated, at least in part, through B&S Holdings

("B&S")).[4]

10.    Beginning in or about June 2022, the Debtor (either directly or through B&S)

entered into investment contracts (the "Investment Contracts") with Korean individuals and

---

[4]    Oh Declaration at ¶ 5.

companies (the "Investors"), pursuant to which the Debtor would manage the Investors' cryptocurrency assets (the "Managed Assets") using the Trading Program. The Debtor then deposited the majority of the Managed Assets into accounts held in the Debtor's name with FTX Trading Ltd. ("FTX"). Specifically, the Debtor was a "high volume trader on the FTX.com Exchange"[5] who maintained two accounts with FTX: (i) Customer Account No. 1806799 ("FTX Account 799"); and (ii) Customer Account No. 82284765 ("FTX Account 765").[6]

       **B.**      **The Debtor's Involvement with the FTX Bankruptcy Cases**

11. On and after November 11, 2022, FTX and over 100 of its affiliates (collectively, the "FTX Debtors") filed petitions under chapter 11 of the Bankruptcy Code with the Bankruptcy Court, which proceedings are and were jointly administered as *In re FTX Trading Ltd.*, Case No. 22-11068 (Bankr. D. Del.) (the "FTX Cases").

12. As a result of the commencement of the FTX Cases, "the withdrawal of virtual assets [from FTX] was suspended, the Debtor fell into a state of insolvency around that time, unable to repay debts that had reached maturity to [his] creditors."[7]

       **1.**      **The FTX Claims**

13. On September 11, 2023, the Debtor filed a proof of claim in the FTX Cases related to FTX Account 799 ("Claim No. 50458").[8] In Claim No. 50458, the Debtor asserted that he held a Customer Claim against FTX consisting of $255,744,265.03 in fiat and crypto holdings as

---

[5]     *Objection of the FTX Recovery Trust to the Motion of Hyung Cheol Lim, Aimed, Inc., Blocore Pte., Ltd., Ji Woong Choi, and Mosaic Co. Ltd. for an Order, Pursuant to Rules 3001 and 3020(d) of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. §§ 105(a) and 1142(b), for Leave to Amend Proof of Claim No. 87144 to Correct Claimant's Name and Address* [Case No. 22-11068, Docket No. 29582] at ¶ 3.

[6]     Oh Declaration at ¶ 6.

[7]     *Id.* at ¶ 8 (*quoting* Avoidance Order at p. 2).

[8]     A copy of Claim No. 50458 is attached to the Oh Declaration as **Exhibit D-1**.

asserted therein.[9]

14.     On October 6, 2023, the Debtor filed a proof of claim in the FTX Cases related to FTX Account 765 ("Claim No. 87144" and, together with Claim No. 50458, the "Initial Claims" or the "FTX Claims").[10]   In Claim No. 87144, the Debtor asserted that he held a Customer Claim against FTX consisting of $100,878,881.85 in fiat and crypto holdings as asserted therein.[11]

15.     Pursuant to an *Assignment Agreement* dated as of January 18, 2023 (the "Assignment Agreement"),[12] the Debtor purported to assign all of his rights in and to his trading accounts with FTX to Lemma Technologies Inc. ("Lemma"), a Panamanian paper company wholly-owned and controlled by the Debtor (the "Lemma Claim Transfer").   The Lemma Claim Transfer was made without any consideration from Lemma to the Debtor.[13]

16.     On July 18, 2024, the Debtor filed proofs of claim in the FTX Cases that purported to amend and supersede Claim No. 50458 and Claim No. 87144 ("Claim No. 96400"[14] and "Claim No. 96401,"[15] respectively and together, the "Amended Claims").   The Debtor filed each of the Amended Claims on behalf of Lemma, in each case stating as follows:

> Lemma is the transferee of the customer claim against the Debtors [i.e. the Initial Claims].   The underlying claim was originally held by Lemma's

---

[9]      The Foreign Representative does not believe that the Debtor deposited any fiat currency with the FTX Exchange.   Using the online tool available at https://ftxcustomercode.com/, the Foreign Representative calculated the approximate asserted amount of the Debtor's crypto holdings set forth in Claim No. 50458 at $105,677,836.35.

[10]      A copy of Claim No. 87144 is attached to the Oh Declaration as **Exhibit D-2**.

[11]      The Foreign Representative does not believe that the Debtor deposited any fiat currency with the FTX Exchange.   Using the online tool available at https://ftxcustomercode.com/, the Foreign Representative calculated the approximate asserted amount of the Debtor's crypto holdings set forth in Claim No. 87144 at $59,131,219.96.

[12]      A copy of the Assignment Agreement is attached to the Oh Declaration as **Exhibit E**.

[13]      Oh Declaration at ¶ 11.

[14]      A copy of Claim No. 96400 is attached to the Oh Declaration as **Exhibit D-3**.

[15]      A copy of Claim No. 96401 is attached to the Oh Declaration as **Exhibit D-4**.

president, Junho Bang ("<u>JB</u>") in his individual capacity.  On January 18, 2023, JB, in his individual capacity, transferred the claim to Lemma . . .

JB, in his capacity as president of Lemma, inadvertently filed the Initial Claim [i.e. Initial Claims] under his individual name.  The Initial Claim was intended to have been filed in Lemma's name—not in the individual name of Lemma's president . . .[16]

17.     On or about June 16, 2023, more than one year before the Debtor filed the Amended Claims in the FTX Cases purporting to evidence the transfer of the Initial Claims to Lemma, Lemma purportedly agreed to sell the Initial Claims to Svalbard Holdings Limited ("<u>Svalbard</u>") by executing two "trade confirmations" (the "<u>Svalbard Trade Confirmations</u>").  The Svalbard Trade Confirmations, both of which were signed by Mr. Bang on behalf of Lemma, each contemplated that Svalbard, Lemma, and the Debtor would enter into definitive transaction documents effectuating such sale after they completed due diligence.[17]

### 2.     Other Proceedings in the FTX Cases

18.     On January 21, 2025, Hyung Cheol Lim, Ji Woong Choi, and certain affiliated entities filed the *Motion of Hyung Cheol Lim, Aimed, Inc., Blocore Pte., Ltd., Ji Woong Choi, and Mosaic Co. Ltd. for an Order, Pursuant to Rules 3001 and 3020(d) of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. §§ 105(a) and 1142(b), for Leave to Amend Proof of Claim No. 87144 to Correct Claimant's Name and Address* [Case No. 22-11068, Docket No. 29345] (the "<u>Lim/Choi Claim Amendment Motion</u>").  In the Lim/Choi Claim Amendment Motion, the Investor movants therein (defined in such motion as the "<u>Principals</u>") alleged that "Bang served as the Principals' agent to invest some of their digital assets" pursuant to their Investment Contracts[18] and that the Principals were therefore "the true owners of at least 95% of [Claim No. 87144] (and

---

[16]     Claim No. 96400 at p. 18; Claim No. 96401 at p. 18.

[17]     Oh Declaration at ¶ 13.

[18]     Lim/Choi Claim Amendment Motion at ¶ 2.

most likely 100% of the Claim)."[19]  As a result, the Principals sought leave "to amend [Claim No. 87144] and substitute their name for Bang's name as the initial holder of the Claim."[20]

19.    Both Svalbard[21] and the FTX Recovery Trust[22] objected to the Lim/Choi Claim Amendment Motion.  The hearing on the Lim/Choi Amendment Motion was adjourned, at the direction of the bankruptcy court, to a date to be determined; as of the date hereof, no hearing has been set on the Lim/Choi Claim Amendment Motion.

### 3.    The Debtor's Criminal Conviction[23]

20.    In May 2019 and February 2022, respectively, B&S entered into Investment Contracts with an entity associated with Haru United Pte., Ltd. ("Haru") and Traum Infotech Co., Ltd. ("Traum").  The Debtor deposited most of the virtual assets owned by Haru, Traum, and other Investors (as well as his own virtual assets) into the FTX Exchange.  After doubts began to arise about FTX's financial soundness in early November 2022, the Debtor falsely told a representative of Haru that B&S had moved 70% of its total assets out of FTX and assured Haru's representative that he would personally backstop all losses caused by an FTX default.  From November 2022 through May 2023, the Debtor also provided falsified reports of accounts and returns to Haru and, as a result, B&S received additional transfers of virtual assets from Haru with the expectation that B&S would manage them.  Similarly, in November 2022, to induce Traum to enter into an Investment Contract, the Debtor falsely told Traum's representative that he personally owned ₩500 billion (approximately $348 million) in virtual assets and that he would personally backstop

---

[19]    Lim/Choi Claim Amendment Motion at ¶ 12.

[20]    *Id.* at ¶ 1.

[21]    Case No. 22-11068, Docket No. 29518.

[22]    Case No. 22-11068, Docket No. 29582.

[23]    This section describes the facts and conclusions set forth in the August 13, 2024 criminal judgment against the Debtor and is not intended to be a comprehensive recitation of the Debtor's interactions with all Investors.

any losses.[24]

21.    In reality, because withdrawals from the FTX Exchange were frozen, the Debtor used the virtual assets from Haru and Traum to respond to withdrawal requests and profit payment demands from other Investors.  The Debtor also commingled his personal virtual assets with those entrusted to him and B&S, in violation of the Investment Contracts.[25]

22.    In February 2024, the Defendant was arrested on charges of fraud and breach of trust under the Aggravated Punishment for Specific Economic Crimes Act.  On August 13, 2024, the Seoul Southern District Court, 13th Criminal Division rendered a judgment (the "Criminal Judgment"), finding the Debtor had criminally defrauded Haru and Traum and sentencing the Debtor to ten (10) years' imprisonment.  On February 14, 2025, the Seoul High Court affirmed the Criminal Judgment and, on June 26, 2025, the Supreme Court of Korea rejected the Debtor's appeal of his conviction and sentence.[26]

### 4.    The NY State Court Action

23.    On January 29, 2024, Svalbard commenced an action (the "NY State Court Action")[27] against Lemma in the Supreme Court of the State of New York, County of New York: Commercial Division (the "NY State Court").  In its complaint (the "Svalbard Complaint"),[28] Svalbard alleges that Lemma "breach[ed] two written and expressly binding trade confirmations," seeking "specific performance of the parties' contracts or, in the alternative, money damages based

---

[24]    Oh Declaration at ¶ 16.

[25]    *Id.* at ¶ 17.

[26]    *Id.* at ¶ 18.

[27]    The NY State Court Action is captioned *Svalbard Holdings Limited v. Lemma Technologies Inc.*, Index No. 650457/2024 (N.Y. Sup. Ct.).

[28]    A true and correct copy of the Svalbard Complaint is attached to the Oh Declaration as **Exhibit G**.

on [Lemma's] failure to perform."[29]  Svalbard alleges that, after a few months of progress on the due diligence contemplated by the Svalbard Trade Confirmations,[30] Lemma "began to assert that complications had arisen regarding [Lemma's] right or authority to sell the Transferred Claims and that as a result Junho Bang could be exposed to liability to his business associates if the Transactions closed."[31]  Svalbard alleged, however, that Lemma "never provided any concrete evidence" of such assertions.[32]

24.    Based on the docket in the NY State Court Action, Svalbard has been unable to effect service of the Svalbard Complaint on Lemma; to date, Svalbard has applied for and obtained four (4) extensions of its deadline to serve Lemma with the Svalbard Complaint via letters rogatory. The current deadline for such service is March 3, 2026 and, based on the docket in such matter, there have been no proceedings in the NY State Court Action to date (excepting the foregoing service deadline extensions and the issuance of letters rogatory).[33]

### C.    The Korean Rehabilitation Proceeding

25.    On April 9, 2025, Hyung Cheol Lim and Ji Woong Choi (the "Petitioning Creditors"), two Investors, filed an application for the commencement of rehabilitation proceedings against the Debtor (the "Application to Commence")[34] with the Korean Court. Pursuant to the Application to Commence, the Petitioning Creditors sought the commencement of rehabilitation proceedings pursuant to Article 34 of the DRBA against the Debtor and, given the

---

[29]    Svalbard Complaint at ¶ 1.

[30]    *Id.* at ¶ 26.

[31]    *Id.* at ¶ 27.

[32]    *Id*. at ¶ 30.

[33]    Oh Declaration at ¶ 20.

[34]    A true and correct copy of the Application to Commence (without exhibits), together with a certified translation thereof, is attached to the Oh Declaration as **Exhibit H**.

Debtor's incarceration, the appointment of a receiver pursuant to Article 74 of the DRBA.  On April 11, 2025, the Debtor consented to the commencement of rehabilitation proceedings against him.  On May 2, 2025, the Korean Court rendered a decision (the "Commencement Decision")[35] granting the relief requested in the Application to Commence and commencing such rehabilitation proceedings (i.e. the Korean Rehabilitation Proceeding).[36]

26.     The period for creditors to report claims against the Debtor (together with claims recorded on the creditor list in the Korean Rehabilitation Proceeding, the "Claims") in the Korean Rehabilitation Proceeding was August 21, 2025.  All but three of the parties with recorded or reported Claims are located in the Republic of Korea; the exceptions are Haru and Aimed Pte. Ltd. ("Aimed"), both of which the Foreign Representative understands are incorporated in Singapore but headquartered in Seoul) and Svalbard (which the Foreign Representative understands is incorporated in the Cayman Islands and headquartered in England).[37]

### 1.     The Avoidance Order

27.     On May 14, 2025, the Receiver commenced a claim for avoidance (2025Hoegi107 Claim for Avoidance) in the Korean Rehabilitation Proceeding (the "Avoidance Action") against Lemma by filing the *Application for Avoidance Claim* (the "Avoidance Application") with the Korean Court.[38]  Pursuant to the Avoidance Application, the Receiver sought to avoid the Lemma Claim Transfer pursuant to Article 100, Paragraph 1, Subparagraphs 1 and 4 of the DRBA.  The

---

[35]     A true and correct copy of the Commencement Decision, together with a certified translation thereof, is attached to the Oh Declaration as **Exhibit B**.  Pursuant to subsequent orders of the Korean Court, certain of the deadlines set forth in the Commencement Decision have been extended.  Among others, the deadline for the submission of the rehabilitation plan was extended to February 12, 2016.

[36]     Oh Declaration at ¶ 21.

[37]     *Id.* at ¶ 22.

[38]     A true and correct copy of the Avoidance Application, together with a certified translation thereof, is attached to the Oh Declaration as **Exhibit I**.

Avoidance Application was served on a representative of Lemma in accordance with Korean law on May 20, 2025.[39]

28.     On June 10, 2025, the Korean Court issued a decision and order (the "Avoidance Order"),[40] granting the relief sought in the Avoidance Application.  In the Avoidance Order, the Korean Court determined that "the Debtor transferred the [FTX] Claims to [Lemma] free of charge after falling into a state of insolvency" and that "the Debtor was aware that the transfer of the [FTX] Claims would prejudice the rehabilitation creditors."[41]  Thus, pursuant to the DRBA, under the Avoidance Order, the Assignment Agreement and the Lemma Claim Transfer dated January 18, 2023 were avoided and "deemed to have lost its effect."[42]

29.     In accordance with the DRBA, and as stated at the bottom of the Avoidance Order, if any party objected to the issuance of the Avoidance Order, they were required to initiate an Action for Objection within one month from the date of service.  No party initiated an Action for Objection and the Avoidance Order has not been appealed.  Accordingly, as of the date hereof, the Avoidance Order is a final, non-appealable order of the Korean Court.[43]

### 2.     Svalbard's Active Participation in the Korean Rehabilitation Proceeding

30.     Since June 2025, Svalbard, through their Korean counsel, has been an active participant in the Korean Rehabilitation Proceeding.  Among other things, and as set forth in further detail below, Svalbard has asserted and is litigating a claim against the Debtor in the Korean

---

[39]     Oh Declaration at ¶ 23.

[40]     A true and correct copy of the Avoidance Order, together with a certified translation thereof, is attached to the Oh Declaration as **Exhibit C**.

[41]     Avoidance Order at p. 3.

[42]     *Id.*

[43]     Oh Declaration at ¶ 25.

Rehabilitation Proceeding in relation to the Svalbard Trade Confirmations.[44]

31.    On August 21, 2025, Svalbard filed a *Proof of Rehabilitation Claim* (the "Svalbard Proof of Claim")[45] in the Korean Rehabilitation Proceeding.  The Svalbard Proof of Claim asserts a $187,419,280.60 claim against the Debtor for "damages arising from default and/or tortious acts."[46]  Specifically, Svalbard states the basis for its claim against the Debtor as follows:

> Meanwhile, although Lemma acquired the FTX Claims from the Debtor pursuant to the [Assignment Agreement], since such assignment as been avoided under Korean law, Lemma has a damage claim against the Debtor who, with the fraudulent intent of harming general rehabilitation creditors from the outset, committed the act subject to avoidance and then entered into the [Svalbard Trade Confirmations] with [Svalbard], thereby causing the occurrence of the aforementioned obligation to pay damages. [Svalbard] understands that Lemma is a special purpose company (SPC) with no other significant assets.  Therefore, [Svalbard] is in a position to exercise direct legal rights against the Debtor by subrogation of the damage claim that Lemma has against the Debtor.

> Separately, since the Debtor, while well aware from the beginning that it was an act harmful to [Svalbard], assigned the claims to Lemma and then sold them to [Svalbard], [Svalbard] can also directly claim damages from the Debtor based on tort.  In fact, the Debtor sold the FTX Claims to [Svalbard] through Lemma despite having no intention whatsoever to assign the FTX Claims to [Svalbard].  And while delaying the assignment of the FTX Claims despite having an obligation to do so under the validly executed [Svalbard Trade Confirmations], the present rehabilitation proceedings were commenced and an avoidance decision was rendered regarding the Debtor's act of assigning the FTX Claims to Lemma, resulting in the risk that Lemma's contractual obligation would become impossible to perform.  Therefore, as examined above, if the effect of such avoidance decision is recognized equally in the United States and it is definitively determined that Lemma's contractual obligation to [Svalbard] cannot be performed, [Svalbard] will suffer direct damages by not receiving the FTX Claims from Lemma pursuant to the [Svalbard Trade Confirmations].  As such, since the Debtor caused damage to [Svalbard] through a series of acts

---

[44]    *Id.* at ¶ 26.

[45]    A true and correct copy of the Svalbard Proof of Claim, together with a certified translation thereof, is attached to the Oh Declaration as **Exhibit J**.

[46]    Svalbard Proof of Claim at p. 3.

while fully aware of the possibility of damage occurring to [Svalbard], the Debtor is liable to compensate [Svalbard] for damages arising from tort.[47]

32.    On and around September 18, 2025, during the claim inspection period in the Korean Rehabilitation Proceeding, the Receiver and five of the Debtor's creditors filed a *Notice of Objection* (the "Svalbard Claim Objection Notice") to the Svalbard Proof of Claim pursuant to Article 161 of the DRBA.  As set forth in the Svalbard Claim Objection Notice, the grounds for such objection were: (i) that Svalbard's asserted claim should be required to be proven in the judicial process before the Korean Court; (ii) that the Debtor was not party to the Svalbard Trade Confirmations; and (iii) that the Debtor did not commit a tort against Svalbard.[48]

33.    Thereafter, on October 20, 2025, in accordance with Article 170 of the DRBA, Svalbard filed the *Petition for the Trial on Investigation and Determination of Rehabilitation Claim* (the "Petition for Adjudication") with the Korean Court, requesting a determination from the Korean Court that it holds a claim against the Debtor in the amount of ₩269,602,635,143 ($188,073,665.94).  The Petition for Adjudication commenced a proceeding within the Korean Rehabilitation Proceeding (Case No. 2025Hoehwak718 Allowance of Rehabilitation Claims) (the "Svalbard Claim Allowance Proceeding").[49]

34.    In advance of a hearing before the Korean Court scheduled on December 18, 2025, the Receiver and two of the Debtor's creditors submitted opinions with respect to the Petition for Adjudication and the Svalbard Proof of Claim.  At the December 18 hearing, the Korean Court scheduled a further hearing in the Svalbard Claim Allowance Proceeding for February 5, 2026 and directed all parties to (i) submit written opinions as to the allowance of the Svalbard Proof of Claim

---

[47]    Svalbard Proof of Claim at pp. 5 – 6.

[48]    Oh Declaration at ¶ 28.

[49]    *Id.* at ¶ 29.

in advance of such hearing and; (ii) exchange arguments such that all issues in the Svalbard Claim Allowance Proceeding are identified and exposed prior to the February 5 hearing.[50]

35.     In December 2025, Svalbard filed two requests with the Korean Court, seeking the transmittal of certified copies of all records from the Avoidance Action and the Bang Criminal Proceedings for the express purpose of proving its claim against the Debtor before the Korean Court.[51]

### 3.     Commencement of the Chapter 15 Case

36.     On December 18, 2025, the Receiver submitted an *Application for Permission to File a Lawsuit for Recognition of Foreign Insolvency Proceedings* (the "Chapter 15 Authorization Application") with the Korean Court.  In the Chapter 15 Authorization Application, the Receiver requested that the Korean Court "grant authority for the Receiver to exercise rights representing this rehabilitation proceeding in the relevant procedure, and grant permission to proceed with necessary legal procedures in the United States" as set forth therein.[52]  On December 18, 2025, the Korean Court issued an order (the "Chapter 15 Authorization Order"), granting the relief requested in the Chapter 15 Authorization Application.[53]

37.     Prior to the issuance of the Chapter 15 Authorization Order, on October 27, 2025, the Korean Court sent a letter to the Bankruptcy Court presiding over the FTX Cases, requesting the cooperation and assistance of the Bankruptcy Court "in facilitating smooth coordination" between the FTX Cases and the Korean Receivership Proceeding (the "SBC Letter").[54]  The

---

[50]     *Id.* at ¶ 30.

[51]     *Id.* at ¶ 31.

[52]     Chapter 15 Authorization Application at ¶ 3.

[53]     A true and correct copy of the Chapter 15 Authorization Order, together with a certified translation thereof, is attached to the Oh Declaration as **Exhibit N**.  The Chapter 15 Authorization Application, which sets forth the relief that was granted by the Chapter 15 Authorization Order, is attached thereto.

[54]     A true and correct copy of the SBC Letter is attached to the Oh Declaration as **Exhibit O**.

Bankruptcy Court replied to the SBC Letter (the "<u>Bankruptcy Court Reply</u>") on October 29, 2025.[55]

## IV.    <u>BASIS FOR RELIEF</u>

### A.    <u>The Debtor is Eligible for Chapter 15 Relief</u>

38.    Section 109(a) of the Bankruptcy Code provides that "only a person that resides or has a domicile, a place of business, or property in the United States . . . may be a debtor under this title."    Courts have applied section 109(a) of the Bankruptcy Code to chapter 15 eligibility.[56] Decisions interpreting section 109(a) of the Bankruptcy Code as applied to foreign debtors under other chapters of the Bankruptcy Code unanimously hold that a debtor satisfies the section 109 requirement even when it only has a nominal amount of property in the United States.[57] Effectively, if a debtor has any property in the United States, section 109(a) of the Bankruptcy Code is satisfied.

39.    For purposes of satisfying section 109(a) of the Bankruptcy Code's requirement that a debtor must have property in the United States in order to be a debtor, courts have held that contracts governed by United States law, a retainer held by United States counsel, or claims or causes of action against United States entities are each sufficient to allow a foreign individual or entity to be a chapter 15 debtor.[58]

---

[55]    A true and correct copy of the Bankruptcy Court Reply is attached to the Oh Declaration as **Exhibit P**.

[56]    *See, e.g.*, *Drawbridge Special Opp. Fund LP v. Barnett (In re Barnett)*, 737 F.3d 238, 247 (2d Cir. 2013).

[57]    *See GMAM Inv. Funds Trust I v. Globo Comunicacoes e Partipacoes S.A. (In re Globo Comunicacoes e Partipacoes S.A.)*, 317 B.R. 235, 249 (S.D.N.Y. 2004) (stating that  courts have repeatedly found that there is "'virtually no formal barrier' to having federal courts adjudicate foreign debtors' bankruptcy proceedings") (citing *In re Aerovias Nacionales de Colombia S.A. (In re Avianca)*, 303 B.R. 1, 9 (Bankr. S.D.N.Y. 2003)); *see also In re Global Ocean Carriers Ltd.*, 251 B.R. 31, 38-39 (Bankr. D. Del. 2000) (holding that approximately $10,000 in  a bank account and the unearned portions of retainers provided to local counsel constituted a sufficient property interest for chapter 15 purposes).

[58]    *In re Ocean Rig UDW Inc.*, 570 B.R. 687, 699–700 (Bankr. S.D.N.Y. 2017) ("The Foreign Debtors satisfy section 109(a)'s requirement of property in the United States. Each of the four Foreign Debtors paid its New York counsel a separate $250,000 retainer, for a total of $1 million, currently held in counsel's client trust

40.     The Debtor is eligible to be a debtor under section 109(a) of the Bankruptcy Code because he has property in the United States in the form of claims against FTX, causes of action arising under United States law, and/or a retainer held in a Delaware trust account.[59]     Thus, the Debtor satisfies the requirements under section 109(a) of the Bankruptcy Code.

**B.     The Korean Rehabilitation Proceeding Should Be Recognized as a Foreign Main Proceeding**

41.     Section 1517(a) of the Bankruptcy Code provides that, after notice and hearing, a court shall enter the Order recognizing a foreign proceeding as a foreign main proceeding if (a) such foreign proceeding is a foreign main proceeding within the meaning of section 1502 of the Bankruptcy Code; (b) the foreign representative applying for recognition is a person or body; and (c) the petition meets the requirements of section 1515 of the Bankruptcy Code.[60]   As explained below, the Korean Rehabilitation Proceeding, the Foreign Representative, and the Verified Petition satisfy all of the foregoing requirements.

**1.     The Korean Rehabilitation Proceeding is a Foreign Proceeding**

42.     Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

43.     Courts have held that a "foreign proceeding" is one:

a.     in which "acts and formalities [are] set down in law so that courts,

---

account in New York, where they will remain pending final billing in these proceedings."); *In re Berau Capital Res. Pte Ltd*, 540 B.R. 80, 82 (Bankr. S.D.N.Y. Oct. 28, 2015) ("The Court concludes that the presence of the New York choice of law and forum selection clauses in the [indenture] satisfies the section 109(a) 'property in the United States' eligibility requirement."); *In re Octaviar Admin. Pty Ltd*, 511 B.R. 361, 370 (Bankr. S.D.N.Y. 2014) ("Octaviar possessed property in the form of claims or causes of action sufficient to satisfy section 109(a) of the Bankruptcy Code.").

[59]     Oh Declaration at ¶ 35.

[60]     *See* 11 U.S.C. § 1517.

          merchants and creditors can know them in advance, and apply them evenly in practice;"

b.     that has either a judicial or an administrative character;

c.     that is collective in nature, in the sense that the proceeding considers the rights and obligations of all creditors;

d.     that is located in a foreign country;

e.     that is authorized or conducted under a law related to insolvency or the adjustment of debt, even if the debtor that has commenced such proceedings is not actually insolvent;

f.     in which the debtor's assets and affairs are subject to the control or supervision of a foreign court or other authority competent to control or supervise a foreign proceeding; and

g.     which proceeding is for the purpose of reorganization or liquidation.[61]

As set forth in the Oh Declaration, the Korean Rehabilitation Proceeding satisfies such requirements and, therefore, qualifies as a "foreign proceeding" for purposes of section 101(23) of the Bankruptcy Code.

44.    ***First***, the Korean Rehabilitation Proceeding is a proceeding commenced pursuant to the DRBA, a Korean law that governs rehabilitation and bankruptcy of insolvent individuals and entities.[62]  For purposes of chapter 15 recognition, "the hallmark of a 'proceeding' is a statutory framework that constrains a [debtor's] actions and that regulates the final distribution of a [debtor's] assets."[63]  Because the Korean Rehabilitation Proceeding operates under such statutory framework, it satisfies the first factor of section 101(23) of the Bankruptcy Code.[64]

---

[61]    *See In re Agro Santino, OOD*, 653 B.R. 79, 89 (Bankr. S.D.N.Y. 2023) (citing *In re Ashapura Minechem Ltd.*, 480 B.R. 129, 136 (S.D.N.Y. 2012); *see also In re Overnight and Control Comm'n of Avánzit, S.A.*, 385 B.R. 525, 533 (Bankr. S.D.N.Y. 2008) (discussing factors).

[62]    Oh Declaration at ¶ 39.

[63]    *In re Irish Bank Resol. Corp. Ltd.*, 538 B.R. 692, 697 (D. Del. 2015) (quoting *In re Betcorp*, 400 B.R. 266, 278 (Bankr. D. Nev. 2009)).

[64]    *See generally* Oh Declaration at ¶¶ 39 – 49.

45.    **Second**, the Korean Rehabilitation Proceeding is judicial in character. A proceeding is judicial in character whenever a "court exercises its supervisory powers."[65] Here, the Korean Court, a specialized court that oversees the liquidation and rehabilitation of debtors, oversees all aspects of the Korean Rehabilitation Proceeding.

46.    **Third**, the Korean Rehabilitation Proceeding is collective in nature in that all affected creditors are allowed to participate.[66]    In *Betcorp*, for instance, the bankruptcy court discussed the contrasts between a true collective proceeding, where such proceeding "considers the rights and obligations of all creditors" and a non-collective proceeding, such as a "receivership remedy instigated at the request, and for the benefit, of a single secured creditor."[67]    The DRBA provides equitable treatment to a debtor's creditors by offering a comprehensive scheme in which the interests of all creditors are taken into consideration. Indeed, the purpose of the DRBA is to provide a forum for an orderly insolvency proceeding with respect to a debtor's assets and liabilities, giving all creditors the opportunity to file proofs of claim and voice their positions throughout the proceedings, including by filing objections and appeals.[68]

47.    **Fourth**, the Korean Rehabilitation Proceeding, including the Korean Court, are located in a foreign country, namely Seoul, Republic of Korea.

48.    **Fifth**, as described above, the DRBA, which governs the Korean Rehabilitation Proceeding, relates to the adjustment of debt.[69]

49.    **Sixth**, the Korean Rehabilitation Proceeding subjects the Debtor's assets and affairs

---

[65]    *In re ABC Learning Ctrs. Ltd.*, 445 B.R. 318, 328 (Bankr. D. Del. 2010).

[66]    *See generally* Oh Declaration at ¶¶ 45 – 46; 48 – 49.

[67]    *See* 400 B.R. at 281.

[68]    Oh Declaration at ¶ 40.

[69]    *Id.* at ¶¶ 39 – 40.

to the supervision of the Korean Court during the pendency of the proceedings.[70]

50.     ***Finally***, the objective of the Korean Rehabilitation Proceeding is to effectuate a restructuring or liquidation of the Debtor's assets.[71]

51.     Since the Korean Rehabilitation Proceeding satisfies all of the criteria required by section 101(23) of the Bankruptcy Code, it is a foreign proceeding entitled to recognition under chapter 15 of the Bankruptcy Code.   Indeed, United States courts have recognized collective proceedings under the DRBA as "foreign proceedings."  *See, e.g.*, *In re SMP Ltd.*, Case No. 17-11192 (SMB), Docket No. 31 (Bankr. S.D.N.Y. June 15, 2017); *In re STX Offshore & Shipbuilding Co., Ltd.*, Case No. 16-35248, Docket No. 34 (Bankr. S.D. Tex. Nov. 17, 2016); *In re Toshiba Samsung Storage Technology Korea Corp.*, Case No. 16-11602 (CSS), Docket No. 70 (Bankr. D. Del. July 27, 2016); *In re Daebo Int'l Shipping Co., Ltd.*, Case No. 15-10616 (MEW), Docket No. 53) (Bankr. S.D.N.Y. May 8, 2015); *In re Daewoo Logistics Corp.*, Case No. 09-B-15558, Docket No. 17 (Bankr. S.D.N.Y. Oct. 21, 2009).

### 2.     The Korean Rehabilitation Proceeding is a Foreign Main Proceeding

52.     The Korean Rehabilitation Proceeding should be recognized as a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code.   A foreign proceeding must be recognized as a "foreign main proceeding" if it is pending in the country where the debtor has its center of its main interests ("COMI").[72]  The Bankruptcy Code provides that, in the absence of evidence to the contrary, an individual debtor's "habitual residence" is presumed to be the debtor's COMI.[73]

---

[70]     *See generally* Oh Declaration at ¶¶ 42 – 45; 48 – 52.

[71]     Oh Declaration at ¶ 40.

[72]     11 U.S.C. § 1517(b).

[73]     11 U.S.C. § 1516(c).

53.     Neither "center of main interests" or "habitual residence" are defined in the Bankruptcy Code.  However, courts have "commonly acknowledged that habitual residence is virtually identical to the concept of domicile, which is established by one's physical presence in a location coupled with an intent to remain there indefinitely."[74]  In determining an individual's COMI, courts have considered a debtor's habitual residence under a non-exhaustive list of factors, including: (i) the length of time spent in the location; (ii) the occupational or familial ties to the area; and (iii) the location of the individual's regular activities, jobs, assets, investments, clubs, unions, and institutions of which he is a member.[75]  Courts have also considered other factors such as "(i) the location of the debtor's primary assets; (ii) the location of the majority of the debtor's creditors; and (iii) the jurisdiction whose law would apply to most disputes."[76]

54.     Here, the Debtor is a citizen of the Republic of Korea who was born in the Republic of Korea.  He has resided in the Republic of Korea his entire life.  Moreover, the Debtor is presently incarcerated (and will be incarcerated for the next decade) in the Republic of Korea.  To the Foreign Representative's knowledge, the Debtor's occupational and family ties are solely to the Republic of Korea where, prior to his incarceration, he lived and worked.[77]  Finally, with the exception of Svalbard and Haru, all of the Debtor's creditors are also located within the Republic of Korea.[78]  Based on these factors, the Debtor's COMI is in Korea and, as such, the Korean Proceeding should

---

[74]     *Beveridge v. Vidunas* (*In re O'Reilly*), 598 B.R. 784, 804 (Bankr. W.D. Pa. 2019) (*quoting In re Pirogova*, 593 B.R. 402, 408 (Bankr. S.D.N.Y. 2018) (internal citation omitted), *aff'd* 612 B.R. 402, 408 (S.D.N.Y. 2020)); *see also In re Kemsley*, 489 B.R. 346, 353 (Bankr. S.D.N.Y. 2013) ("The term habitual residence includes an element of permanence and stability and is comparable to domicile; it connotes a meaningful connection to a jurisdiction, a home base where an individual lives, raises a family, works and has ties to the community.").

[75]     *Beveridge*, 598 B.R. at 804 (*quoting Pirogova*, 593 B.R. at 408 – 09).

[76]     *Id.* at 805 (*quoting Pirogova*, 593 B.R. at 408 – 09).

[77]     Oh Declaration at ¶¶ 5, 18.

[78]     Oh Declaration at ¶ 22.

be recognized as a foreign main proceeding.

### 3. The Chapter 15 Case Has Been Commenced by a Duly-Authorized Foreign Representative

55.     Section 1517 of the Bankruptcy Code provides that a "foreign representative" shall apply for recognition of the foreign proceeding. Section 101(24) of the Bankruptcy Code defines "foreign representative":

> The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.[79]

56.     Pursuant to the Chapter 15 Authorization Order, the Korean Court confirmed that the Receiver "was appointed the Receiver in the rehabilitation proceedings" for the Debtor and "is the person representing" the Korean Rehabilitation Proceeding[80] with the exclusive "authority to conduct the business and dispose of the property of" the Debtor.[81] Further, pursuant to the Chapter 15 Authorization Order, the Korean Court granted the Receiver the authority to file for recognition of the Korean Rehabilitation Proceedings "in all jurisdictions within the United States, including the United States Bankruptcy Court for the District of Delaware."[82] Accordingly, the Foreign Representative is a proper "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code.

### C.    The Verified Petition Satisfies the Requirements of Section 1515 of the Bankruptcy Code

57.     This Chapter 15 Case was duly and properly commenced by filing the Verified

---

[79]     11 U.S.C. § 101(24).

[80]     Chapter 15 Authorization Application at ¶ 1.

[81]     *Id.* at ¶ 2.

[82]     *Id.* at ¶ 3.

Petition, accompanied by all fees, documents, and information required by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, including: (a) a list containing (i) the names and addresses of all persons or bodies authorized to administer foreign proceedings of the Debtor, and (ii) all parties to litigation pending in the United States in which the Debtor is a party at the time of the commencement of the Chapter 15 Case; (c) a statement identifying all of the Debtor's foreign proceedings that are known to the Foreign Representative; and (d) certified copies of the Commencement Decision and the Chapter 15 Authorization Order.[83]

58.    Because the Verified Petition satisfies section 1517 of the Bankruptcy Code, the Court should recognize the Korean Proceeding in this Chapter 15 Case. Moreover, granting recognition will promote the United States public policy of respecting foreign proceedings as articulated in, *inter alia*, sections 1501(a) and 1508 of the Bankruptcy Code and further cooperation between courts to the maximum extent possible as mandated by section 1525(a) of the Bankruptcy Code. Thus, these circumstances satisfy the conditions for mandatory recognition of the Korean Proceeding under section 1517 of the Bankruptcy Code.

### D.    **The Additional Relief Requested by the Foreign Representative is Necessary and Appropriate**

59.    In connection with recognition of the Korean Rehabilitation Proceeding, the Foreign Representative seeks certain related relief, as set forth in the Proposed Order. The Foreign Representative respectfully submits that such relief is warranted under sections 105(a), 1507, and 1521 of the Bankruptcy Code and the general principles of comity that underpin chapter 15.

60.    Upon recognition of a foreign proceeding, section 1521(a) authorizes the Court to grant "any appropriate relief" at the request of the recognized foreign representative "where

---

[83]    *See* **Exhibit B** and **Exhibit N** to Oh Declaration, respectively.

necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors."  Such relief may include:

a.    staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520(a) of the Bankruptcy Code;

b.    staying execution against the debtor's assets to the extent it has not been stayed under section 1520(a) of the Bankruptcy Code;

c.    suspending the right to transfer, encumber or otherwise dispose of any assets of the debtor to the extent this right has not been suspended under section 1520(a) of the Bankruptcy Code; and

d.    granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a) of the Bankruptcy Code.

The Court may grant relief under section 1521(a) of the Bankruptcy Code if the interests of "the creditors and other interested entities, including the debtor, are sufficiently protected."[84] Similarly, section 1507 of the Bankruptcy Code provides that, "if recognition is granted," a court "may provide additional assistance to a foreign representative under this title or under other laws of the United States."[85]    Finally, section 105(a) of the Bankruptcy Code provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

61.    The Foreign Representative requests the Court exercise its discretion under sections 105, 1507, and 1521 to grant the relief requested insofar as such relief exceeds that which is automatic upon recognition of the Korean Rehabilitation Proceeding as a foreign main proceeding. The granting of such relief is consistent with the goals of international cooperation and assistance

---

[84]    11 U.S.C. § 1522(a).

[85]    11 U.S.C.  § 1507.

to foreign courts embodied in chapter 15 of the Bankruptcy Code, and is a necessary to effect the Korean Rehabilitation Proceeding. If granted, such relief would promote all of the legislatively enumerated objectives of section 1501(a) of the Bankruptcy Code, including (i) cooperation between courts of the United States and the courts and other competent authorities of foreign countries involved in cross-border insolvency cases; (ii) fair and efficient administration of cross-border insolvencies that protect the interests of all creditors, and other interested entities, including the debtor; and (iii) protection and maximization of the value of the debtor's assets.

62.     Indeed, by the Chapter 15 Authorization Order, the Korean Court expressly empowered the Receiver with "the authority to request necessary relief and assistance to implement all decisions made by the Seoul Bankruptcy Court in the rehabilitation proceedings regarding BANG Junho (including the Court's decisions on the exercise of the right of avoidance by the Receiver), in all jurisdictions within the United States, including the United States Bankruptcy Court for the District of Delaware."[86]

63.     Fair and efficient administration of the Korean Rehabilitation Proceeding (which proceeding protects the rights of all parties in interest) requires that all creditors be bound by the terms of the Korean Rehabilitation Proceeding as sanctioned by the Korean Court.[87] If the Korean Rehabilitation Proceeding and the orders of the Korean Court are not fully respected in the United States, the Receiver will be unlikely to be able to administer and make distributions to the Debtor's creditors on account of the Debtor's largest asset—the FTX Claims.

---

[86]     Chapter 15 Authorization Application at ¶ 4.

[87]     *See Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 714 (2d Cir. 1987) ("The equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding; if all creditors could not be bound, a plan of reorganization would fail."); *In re Energy Coal S.P.A.*, 582 B.R. 619, 626–27 (Bankr. D. Del. 2018) (acknowledging the broad principles of comity applied by U.S. courts in both recognition of foreign bankruptcies and post- recognition relief granted to foreign representatives).

64.     Among the additional relief requested by the Foreign Representative is the recognition and enforcement of the Avoidance Order issued by the Korean Court. Chapter 15's "overriding objective is to enable courts and insolvency administrators to operate effectively and efficiently in international insolvency cases with the goals of maximizing the value of the debtor's global assets . . . and furthering the just administration of the proceeding. The emphasis must be on ensuring that the insolvency administrator, appointed in that proceeding, is accorded every possible assistance to take control of all assets of the debtor that are located in other jurisdictions."[88] Given that chapter 15 also "encourages communication and cooperation with foreign courts," upon recognition of a foreign proceeding, "[f]oreign representatives can access U.S. courts to request enforcement of orders of the foreign proceeding and to stay actions against foreign debtors' property in the United States."[89]

65.     In the FTX Cases, Svalbard necessarily (and correctly) conceded that "[t]here should be no dispute that the Korean courts are adequate for determining . . . Bang's obligations to his investors, entitlement to the proceeds of the Proof of Claim,[90] and the equitable division of Bang's assets among his creditors."[91] That is precisely what has occurred in the Korean Rehabilitation Proceeding; in issuing the Avoidance Order, the Korean Court has rendered judgment as to who is entitled to the proceeds of the FTX Claims—the Debtor (subject, of course, to such proceeds' administration and distribution in the Korean Rehabilitation Proceeding in accordance with the DRBA). As a result, Lemma has no ownership of, or entitlement to the

---

[88]     *In re ABC Learning Ctrs. Ltd.*, 728 F.3d 301, 305 (3d Cir. 2013) (cleaned up).

[89]     *ABC Learning Ctrs.*, 728 F.3d at 306.

[90]     The "Proof of Claim" refers to the FTX Claim at issue in the Lim/Choi Claim Amendment Motion.

[91]     *Svalbard Holding Limited's Objection to Motion of Hyung Cheol Lim, Aimed, Inc., Blocore Pte., Ltd., Ji Woong Choi, and Mosaic Co. Ltd. for an Order, Pursuant to Rules 3001 and 3020(d) of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. §§ 105(a) and 1142(b), for Leave to Amend Proof of Claim No. 87144 to Correct Claimant's Name and Address* [Case No. 22-11068, Docket No. 29518] at ¶ 20.

proceeds of, the FTX Claims, and Svalbard's continued insistence on demanding that the FTX Claims be assigned to it in the NY State Court Action serves only to impermissibly interfere with the just administration of the Korean Rehabilitation Proceeding.

66.    Therefore, the Foreign Representative respectfully requests that this Court recognize and enforce the Avoidance Order upon the recognition of the Korean Rehabilitation Proceeding as a foreign main proceeding.

## V.    <u>CONCLUSION</u>

67.    The Foreign Representative respectfully submits that the Verified Petition satisfies the requirements for the recognition of the Receiver as the Debtor's "foreign representative" and the Korean Proceeding as the Debtor's "foreign main proceeding" (or, in the alternative, foreign nonmain proceeding) and further requests entry of the Order, substantially in the form attached hereto as **<u>Exhibit A</u>**, granting the relief requested herein.

## VI.    <u>NOTICE</u>

68.    The Foreign Representative will provide notice of this Motion consistent with Bankruptcy Rule 2002(q) and Local Rule 9013-1(m).  The Foreign Representative proposes to notify creditors and parties in interest of the filing of the Petition and the Foreign Representative's request for entry of the Order in the form and manner set forth in the *Motion for Order Scheduling Recognition Hearing and Specifying Form and Manner of Service of Notice*, filed contemporaneously herewith.  The Foreign Representative submits that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

## VII.    <u>NO PRIOR REQUEST</u>

69.    No prior request for the relief sought in this Verified Petition has been made to this or any other court.

WHEREFORE, the Foreign Representative respectfully requests entry of the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as is just and proper.

*[Remainder of page intentionally left blank.]*

Dated: December 31, 2025

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Steven W. Golden*

Steven W. Golden (DE Bar No. 6807)
Brooke E. Wilson (*pro hac vice* pending)
919 North Market Street, 17th Floor
Wilmington, Delaware 19899-8705
Tel:  302-652-4100
Fax: 302-652-4400
sgolden@pszjlaw.com
bwilson@pszjlaw.com

*Attorneys for Foreign Representative*

-and-

**ADVANCED LEGAL P.C.**

Woong Kyu Sung (*pro hac vice* pending)
143 E. Ridgewood Avenue, Suite 1540
Ridgewood, NJ 07450-3815
attorney@advancedlegal.io

*U.S. Counsel to Receiver*

## VERIFICATION OF PETITION

I, Professor Soogeun Oh, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America as follows:

I am the receiver and authorized foreign representative of Mr. Junho Bang, who is the subject of a proceeding (Case Number: Seoul Bankruptcy Court 2025Hoedan142 Rehabilitation) under the *Debtor Rehabilitation and Bankruptcy Act* currently pending before the Republic of Korea's Seoul Bankruptcy Court, 101st Single Bench. As such, I have full authority to verify the foregoing Verified Petition on behalf of the Foreign Representative.

I have read the foregoing Verified Petition, and I am informed and believe that the factual allegations contained therein are true and accurate to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: December 31, 2025
Seoul, Republic of Korea

By:  Soogeun Oh