**EXHIBIT G**

NYSCEF DOC. NO. 1

INDEX NO. 650457/2024
RECEIVED NYSCEF: 01/29/2024

Case 25-12298-KBO    Doc 6-11    Filed 12/31/25    Page 2 of 16

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| SVALBARD HOLDINGS LIMITED,<br><br>     *Plaintiff*,<br><br>-against-<br><br>LEMMA TECHNOLOGIES INC.,<br><br>     *Defendant*. | Index No. _____<br><br>**SUMMONS**<br><br>Basis for venue: CPLR 503(a): County designated by Plaintiff |

TO THE ABOVE-NAMED DEFENDANT:

  YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer on plaintiff's attorneys within (20) days after service of this summons, exclusive of the date of service, or within thirty (30) days after service is complete if the summons is not personally delivered to you within the State of New York. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

As set forth in the complaint, Plaintiff designates New York County as the place of venue pursuant to Sections 503 and 509 of the New York Civil Practice Law and Rules.

Dated: New York, New York
January 29, 2024

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/ Joshua Dorchak*
Joshua Dorchak
101 Park Avenue
New York, NY 10178
1.212.309.6700
joshua.dorchak@morganlewis.com

John C. Goodchild, III
2222 Market Street
Philadelphia, PA 19013-3007
215.830.6883
john.goodchild@morganlewis.com

*Attorneys for Plaintiff*
*Svalbard Holdings Limited*

TO:

LEMMA TECHNOLOGIES INC.
Via Espana, Delta Bank Building,
6th Floor, Suite 604D, Panama City
PA-8 Panama

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------- x
                                                                     :
SVALBARD HOLDINGS LIMITED,                                           :
                                                                     :
                                        *Plaintiff*,                 :   Index No. _____/2024
                                                                     :
                -against-                                            :
                                                                     :   **COMPLAINT**
LEMMA TECHNOLOGIES INC.,                                             :
                                                                     :
                                        *Defendant*.                 :
-------------------------------------------------------------------- x

Plaintiff, Svalbard Holdings Limited, by and through its undersigned counsel, as and for its Complaint against Defendant, Lemma Technologies Inc., alleges as follows.

## INTRODUCTION

1. Plaintiff brings this action to remedy Defendant's breach of two written and expressly binding trade confirmations whereby Defendant sold to Plaintiff certain claims that Defendant holds against FTX Trading Limited in that company's bankruptcy proceeding. Each trade confirmation contains all the material terms relevant to the transaction, was signed by both Plaintiff and Defendant, and expressly states it "shall constitute a binding agreement between them, in accordance with the terms hereof." Since the trade confirmations were executed, despite Plaintiff's extensive efforts, Defendant has demonstrated that it has no intention of fulfilling its obligation to consummate the transactions at the prices it agreed to under the binding trade confirmations. Accordingly, Plaintiff now seeks specific performance of the parties' contracts or, in the alternative, money damages based on Defendant's failure to perform.

## PARTIES

2. Plaintiff, Svalbard Holdings Limited, is a company organized under the laws of the Cayman Islands, with its registered office in Georgetown, Grand Cayman, Cayman Islands.

1

3. On information and belief, Defendant, Lemma Technologies Inc., is a company organized under the laws of Panama, with its principal place of business unknown to Plaintiff.

4. On information and belief, nonparty Junho Bang is an individual who is a citizen and resident of South Korea and who is the majority owner and President of Defendant.

5. On information and belief, nonparty Han Ko is an individual who is a citizen and resident of South Korea and who is a director of Defendant.

**JURISDICTION AND VENUE**

6. In this action, this Court has personal jurisdiction over Defendant based upon N.Y. G.O.L. section 5-1402, as this action "arises out of or relates to a contract, agreement, or undertaking for which a choice of New York law has been made in whole or in part pursuant to section 5-1401 and which (a) is a contract, agreement or undertaking, contingent or otherwise, in consideration of, or relating to any obligation arising out of a transaction covering in the aggregate, not less than one million dollars, and (b) contains a provision or provisions whereby such foreign corporation or non-resident agrees to submit to the jurisdiction of the courts of this state."

7. In this action, venue is proper in this Court pursuant to N.Y. C.P.L.R. sections 503(a) and 509, as this County has been designated by Plaintiff.

**FACTUAL ALLEGATIONS**

A. **The Transferred Claims**

8. On and after November 11, 2022 (the "FTX Commencement Date"), FTX Trading Limited ("FTX") and over one hundred of its affiliates (collectively with FTX, the "FTX Debtors") filed Chapter 11 petitions in the United States Bankruptcy Court for the District of Delaware, in a case styled *In re FTX Trading Ltd.*, Case No. 22-11068 (JTD) (Jointly Administered) (the "FTX Bankruptcy").

2

NYSCEF DOC. NO. 1
INDEX NO. 650457/2024
RECEIVED NYSCEF: 01/29/2024
Case 25-12298-KBO    Doc 6-11    Filed 12/31/25    Page 6 of 16

9. Prior to the FTX Commencement Date, FTX operated a cryptocurrency exchange known as FTX.com, whose accountholders were located outside the U.S.

10. Junho Bang held two accounts with FTX.com (the "Accounts"), through which he deposited, withdrew, and otherwise transacted in cryptocurrencies and fiat currencies on behalf of himself and various business associates.

11. As of the FTX Commencement Date, Junho Bang held two claims against FTX in the FTX Bankruptcy based on the assets in the Accounts, which on information and belief were valued by Junho Bang at $59,391,855 and $106,269,300, respectively (the "Account Claims").

12. Pursuant to a written "Assignment Agreement" dated as of January 18, 2023 and duly executed by Junho Bang and Defendant (by its Secretary), Junho Bang assigned and transferred to Defendant the Account Claims and all related claims against FTX or the other FTX Debtors or any other person, and all proceeds thereof (the "Assigned Claims"). A true and correct copy of this contract, as provided by Defendant to Plaintiff, is annexed hereto as Exhibit 1.

13. In May 2023, Plaintiff and Defendant (together, the "Parties") began discussing a potential transaction whereby Defendant would sell the Assigned Claims to Plaintiff.

14. The Parties spent substantial time and effort negotiating concerning price, due diligence, closing conditions, and other material terms of this potential transaction. Ultimately, Defendant held an open auction of the Assigned Claims, at which Plaintiff was the winning bidder.

B. **The Trade Confirmations**

15. Accordingly, on or about June 16, 2023, the Parties duly executed two contracts (the "Trade Confirmations"), whereby Defendant sold and assigned to Plaintiff, for the purchase price reflected in Plaintiff's winning bid in the auction, the Assigned Claims that Defendant had acquired from Junho Bang (as subject to the Trade Confirmations, the "Transferred Claims"). True

3

and correct copies of the Trade Confirmations, as executed by the Parties, are attached hereto as Exhibits 2 and 3.

16. The two Trade Confirmations correspond to Junho Bang's two Accounts. Other than the Claim amount and the Purchase Price, the terms of the Trade Confirmations, including the Purchase Rate (a percentage of the Claim amount), are the same. As an example, one of the Trade Confirmations provides as follows:

We are pleased to confirm the following transaction subject to the terms set forth herein:

| | |
|---|---|
| *Trade Date* | June 16, 2023 |
| *Seller* | Lemma Technologies Inc. |
| *Principals* | Junho Bang and other economic interest holders [scope to be agreed] |
| *Buyer* | Svalbard Holdings Limited (company ultimately managed by Attestor Limited) |
| *Debtors* | FTX Trading Limited or any of its affiliates including but not limited to third parties, non-debtors and debtors under Case No. 22-11068 in the US Bankruptcy Court of Delaware and FTX Digital Markets Limited (the "Case") |
| *Claim*: | $ 106,269,300 of valid and enforceable, undisputed, liquidated, non- contingent general unsecured claim against Debtors |
| *Purchase Rate* | 35% (payable in two instalments: Upfront Purchase price of 33% and Back-End Purchase Price of 2% based on the Claim) |
| *Purchase Price*: | Upfront Purchase Price: $ 35,068,869, payable by Buyer to Seller following closing of the Assignment of Claim Agreement. Payable in stablecoin as agreed between Seller and Buyer.<br><br>Back-End Purchase Price: $ 2,215,386, payable by Buyer upon receipt of final distribution in the Case provided that Seller has complied with all representations, warranties and other any other ongoing obligations under the purchase contract, and Buyer has not received proportionately less in payments or distributions under, or less favourable treatment (including the timing of payments or distributions) for, the Claim than is received by other creditors in the same class of claims in the Case |

4

| | |
|---|---|
| *Form of purchase* | Assignment of Claim Agreement (if the Claim and related rights cannot be assigned, Parties shall enter into a participation agreement). |
| *Payments and distributions* | All payments, fees or other distributions made on account on or after the Trade Date are for the account of Buyer at no additional consideration. |
| *Closing Conditions* | <ul><li>Seller having provided to Buyer true, correct and complete copies of (i) all agreements, notices, statements and other documentation relating to the Claims; and (ii) any proofs of claim or claim forms filed in connection with the Claims (collectively, "Supporting Documents");</li><li>Satisfactory completion of confirmatory due diligence with respect to the Claims and Supporting Documents, including review of due diligence information as set out in Appendix 1;</li><li>Transaction Documents executed between both Parties, in satisfaction to the Buyer, which will contain<ul><li>customary representations and warranties, including but not limited to: no withdrawals from Seller from Debtors or other transfers to or for the benefit of Seller by Debtors within 91 days of the petition date of Debtors (other than the ones as disclosed during the confirmatory due diligence)</li><li>ongoing obligation by the Seller and Principals to co-operate with the Buyer to receive recovery entitlements arising from the Claims, to the extent required</li><li>Principals to guarantee performance of the Seller's obligation, representations and warranties under the Transaction Documents</li></ul></li></ul> |
| *Settlement Date* | Ultimately within 5 business days following execution of the Assignment Agreement |
| *Confidentiality:* | This Trade Confirmation is strictly private and confidential and subject to the non-disclosure agreement, dated 15 June 2023, between Buyer and Seller |
| *Governing Law; Jurisdiction;* | This Trade Confirmation and the Assignment of Claim shall be governed by the laws of the State of New York. The parties hereto submit to the exclusive jurisdiction of the courts of appropriate jurisdiction sitting in the Borough of Manhattan in the State of New York for any claims or counterclaims arising in connection with this Trade Confirmation. EACH OF THE PARTIES HEREBY |

5

|  | WAIVES THE RIGHT TO TRIAL BY JURY TO THE FULLEST EXTENT PERMITTED BY LAW FOR ANY CLAIM OR COUNTERCLAIM ARISING IN CONNECTION WITH THIS TRADE CONFIRMATION. |
|---|---|
| *Binding Effect* | **Upon execution by both Parties, this Trade Confirmation shall constitute a binding agreement between them, in accordance with the terms hereof**; *provided, however,* that to the extent there is any conflict between this Trade Confirmation and the Assignment of Claim Agreement, the Assignment of Claim Agreement shall govern. |

[*Plaintiff's signature*]

[*Defendant's signature*]

["Appendix 1 – Minimum Diligence Requirements" *follows*]

Ex. 2 (italicized comments in brackets are edits; bold emphasis added).

17.    Christopher Guth, Director, signed the Trade Confirmations on behalf of Plaintiff.

18.    Junho Bang, President of Defendant and original owner of the Transferred Claims, signed the Trade Confirmations on behalf of Defendant.

19.    The Parties exchanged fully executed versions of the Trade Confirmations.

20.    Upon the Parties' exchange of signatures, each of the Trade Confirmations by its explicit terms became a "binding agreement between them." Exs. 2–3 ("Binding Effect").

21.    Each of the Trade Confirmations includes all material terms of the transaction that it memorializes (together, the "Transactions").

22.    Notwithstanding that each Trade Confirmation included all material terms, the closing of each Transaction is subject to three conditions, all of them explicitly for the benefit of Plaintiff (as buyer), not Defendant (as seller). *See id.* ("Closing Conditions").

23.    The first and second conditions to closing relate to Plaintiff having received all documentation related to the Transferred Claims and Plaintiff being satisfied with its due diligence

6

with respect to that documentation and those claims. *See id.* ("Closing Conditions," first and second bullet points).

24. The third condition to closing is an "Assignment of Claim Agreement" (the "<u>Assignment Agreement</u>") to be "executed between both Parties, in satisfaction to the Buyer" and to include certain listed terms. *See id.* ("Closing Conditions," third bullet point).

25. The Trade Confirmations do not provide Defendant any option to nullify or even modify their terms.

### C. Defendant Breaches the Trade Confirmations

26. For a few months after executing the Trade Confirmations, the Parties made progress on due diligence and drafting the Assignment Agreement.

27. After a few months, however, Defendant began to assert that complications had arisen concerning Defendant's right or authority to sell the Transferred Claims and that as a result Junho Bang could be exposed to liability to his business associates if the Transactions closed.

28. At this point in time, the prevailing market price for customer claims against the FTX Debtors had reportedly risen substantially by comparison with the Purchase Price in the Trade Confirmations.

29. Plaintiff, at substantial expense and effort, committing internal resources and even hiring outside counsel licensed in Panama and South Korea, actively engaged with Defendant in an attempt to resolve the complications that Defendant asserted had arisen.

30. In response to Plaintiff's repeated inquiries, Defendant never provided any concrete evidence of any material impediment to closing the Transactions or any material risk to Junho Bang of liability arising from closing the Transactions.

7

31. At the same time, however, Defendant began to attempt to renegotiate the Purchase Rate in the Trade Confirmations.

32. Plaintiff concludes that Defendant's alleged complications are a pretext for Defendant's attempt to renegotiate the binding terms of the Trade Confirmations.

33. Plaintiff further concludes that: Defendant holds title to the Transferred Claims; it lies within Defendant's power to convey title to the Transferred Claims to Plaintiff; and the only complication delaying closing of the Transactions is seller's remorse.

34. On information and belief, Defendant will not proceed with the Transactions or otherwise honor the Trade Confirmations unless compelled by force of law to do so.

35. Plaintiff has never agreed to modify any of the material terms in the Trade Confirmations.

36. Notwithstanding that the due diligence has not been completed and the Assignment Agreement has not been finalized, Plaintiff is willing to waive those conditions to closing and to immediately consummate the Transactions, including paying Defendant the Purchase Price in exchange for transfer of title to the Transferred Claims.

37. Plaintiff has never breached any term of the Trade Confirmations.

**D.    Specific Performance**

38. Since the FTX Commencement Date, a secondary market has developed in which claims against the FTX Debtors are bought and sold.

39. Plaintiff has extensive experience in this secondary market for FTX claims. In fact, through trades in this market Plaintiff has become one of the most substantial creditors of FTX.

40. In the case of customer claims against FTX, each claim is unique, and some are more desirable than others, in that (i) each reflects the particular combination of cryptocurrency

and fiat currency assets that were in that customer's account on the FTX Commencement Date, and (ii) the FTX Debtors have recently proposed valuations of cryptocurrency assets that in some cases are higher or lower than the market price of such assets on the FTX Commencement Date.

41. The Transferred Claims are also unique in that, on information and belief, based on Plaintiff's experience, they are, taken together, among the top ten largest customer claims against FTX based on dollar value.

42. Plaintiff participates in the secondary market for claims against FTX Debtors exclusively as a buyer. Because Plaintiff buys claims against the FTX Debtors with the intention of holding them for the duration of the FTX Bankruptcy, the value of such claims to Plaintiff is the aggregate amount that Plaintiff will recover on the claims at the end of the FTX Bankruptcy, which is impossible to predict with certainty. Put another way, because Plaintiff does not engage in sales of claims against the FTX Debtors, the price at which a claim held by Plaintiff could be sold in this market at any given time does not represent the value of the claim to Plaintiff.

43. Unlike on a public exchange, sales of claims within the secondary market for FTX claims are virtually all negotiated privately between the seller and buyer (with or without a broker). Certain market makers periodically publish prices at which they are potentially willing to buy and sell claims of given types. But actual prices paid when transactions close are not generally disclosed. Thus, other than recent, first-hand experience closing transactions, the participants in this market have a sense of the prevailing price for given types of claims at a given time based generally on second-hand information, which may not be accurate. In short, there is no definitive market price for any type of claim against the FTX Debtors as of any given time, as there would be for a stock listed on the New York Stock Exchange.

9

44. On information and belief as to other persons, based on Plaintiff's experience, the prevailing price being paid for claims originally held by FTX.com customers fluctuates and has generally trended upward since the FTX Commencement Date, but it is uncertain whether (or to what extent) it will continue to do so.

45. On information and belief as to other persons, based on Plaintiff's experience, buyers of claims in the FTX Bankruptcy, like buyers of bankruptcy claims generally, pay less to acquire claims than they believe the present value of the recovery on the claims to be, in order to make a profit.

46. For all of the foregoing reasons, the actual value of the Transferred Claims to Plaintiff will not be known with reasonable certainty until the final distribution in satisfaction of customer creditor claims has been made in the FTX Bankruptcy.

47. In these circumstances, the only way to put Plaintiff in the position it would have been in if Defendant had not breached is specific performance of the Trade Confirmations.

48. Plaintiff seeks specific performance in order to avoid being undercompensated for the value of the Transferred Claims by an award of money damages.

## FIRST CAUSE OF ACTION
### Breach of Contract – Specific Performance

49. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 48 as if fully set forth herein.

50. The Trade Confirmations are valid and binding contracts.

51. Defendant has breached the Trade Confirmations by refusing to consummate the Transactions agreed to therein.

52. Plaintiff has not breached the Trade Confirmations.

53. Defendant holds title to the Transferred Claims.

10

54. It lies within Defendant's power to convey title to the Transferred Claims to Plaintiff or, in the alternative, it lies within Defendant's power as supplanted by that of this Court to enable itself to convey title to the Transferred Claims to Plaintiff.

55. Plaintiff is prepared to pay Defendant the Purchase Price agreed by the Parties in the Trade Confirmations in exchange for the transfer of title of the Transferred Claims.

56. The Transferred Claims are unique in that they reflect a combination of assets particular to Defendant's Accounts and in that together they constitute one of the largest customer claims against FTX.

57. Money damages for Plaintiff's breach of the Trade Confirmations cannot be calculated with reasonable certainty because there is no definitive market price for claims like the Transferred Claims at any given time; the pricing observable in the secondary market for such claims is based on unreliable information and fluctuates over time; buyers pay less for claims than buyers believe they will ultimately be worth; and prices have been trending upward since the commencement of the FTX bankruptcy case and presumably will continue to do so.

58. Money damages for Plaintiff's breach of the Trade Confirmations would carry a substantial risk of undercompensating Plaintiff because the current market value of the Transferred Claims, even if determinable, would not reflect their value to Plaintiff, which is based on the outcome of the FTX Bankruptcy.

59. Plaintiff does not have an adequate remedy at law for Defendant's breach of the Trade Confirmations.

60. Plaintiff would face substantial challenges executing on a money judgment against Defendant, which is a Panama company with principals in South Korea and no known assets (other than the Transferred Claims) within the U.S.

11

61. In these circumstances, the benefit of specific performance to Plaintiff outweighs the burden, if any, that specific performance would impose on Defendant.

62. Plaintiff is entitled to an order compelling specific performance of the Trade Confirmations.

## SECOND CAUSE OF ACTION
### In the Alternative: Breach of Contract – Money Damages

63. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 62 as if fully set forth herein.

64. The Trade Confirmations are valid and binding contracts.

65. Defendant has breached the Trade Confirmations by refusing to consummate the Transactions agreed to therein.

66. Plaintiff has not breached the Trade Confirmations.

67. Defendant's breach of the Trade Confirmations has caused Plaintiff economic injury.

68. In the event that this Court should find that specific performance of the Trade Confirmations is inappropriate or impracticable, Plaintiff is entitled to money damages for Defendant's breach of the Trade Confirmations, in an amount to be proven at trial, but in no event less than the difference between (a) the aggregate amount that Plaintiff ultimately would have recovered on account of the Transferred Claims in the FTX Bankruptcy and (b) the price agreed by the Parties in the Trade Confirmations for the Transferred Claims.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court issue judgment:

(i)     with respect to the First Cause of Action, ordering Defendant to perform its obligations, including effecting the transfer of the Transferred Claims to Plaintiff in exchange for Plaintiff's payment of the Purchase Price, as set forth in the Trade Confirmations;

(ii)    with respect to the Second Cause of Action, in the alternative, awarding Plaintiff money damages in an amount to be determined at trial, along with prejudgment interest at the statutory rate for breach of contract; and

(iii)   awarding Plaintiff such other and further relief as this Court deems just and proper.

Dated:   New York, New York
         January 29, 2024

                                        MORGAN, LEWIS & BOCKIUS LLP

                                        By: _____/s/_____
                                        Joshua Dorchak
                                        101 Park Avenue
                                        New York, New York 10178
                                        212.309.6000
                                        joshua.dorchak@morganlewis.com

                                        John C. Goodchild, III
                                        2222 Market Street
                                        Philadelphia, PA 19103-3007
                                        215.840.6883
                                        john.goodchild@morganlewis.com

                                        *Attorneys for Plaintiff*
                                        *Svalbard Holdings Limited*