**<u>EXHIBIT H</u>**



[별지 제41호 서식]

16F, Opulence Bldg.,254 Seocho-dae
Seocho-Gu, Seoul, 137-070, Korea

법무법인 세창 SECHANG & CO.

Tel. 02-595-7121
Fax. 02-595-9626

Registered No. 2025-240

# NOTARIAL CERTIFICATE

### SECHANG & CO.

16F, Opulence Bldg.,254 Seocho-daero,
Seocho-Gu, Seoul, 137-070, Korea



210㎜×297㎜ (보존용지(1종) 70g/㎡)

# Application for Order to Commence Rehabilitation Proceedings

Petitioner        1. LIM Hyungcheol (910315-1076212)

        202-503, 37-48, Jamwon-ro, Seocho-gu, Seoul (Jamwon-dong, Sinbanpo 4-cha Apt.)

        2. CHOI Jiwoong (720919-1074419)

        102, 15, Donggwang-ro 30-gil, Seocho-gu, Seoul (Bangbae-dong, Daum 7-cha Shinehill)

        Counsel for Petitioners: Law Firm Songwoo

        Attorneys in Charge: LEE Jinman, JUNG Dooho, LEE Hayoung

        609, 254, Seocho-daero, Seocho-gu, Seoul (Seocho-dong)

Debtor           BANG Junho (940626-1188229)

        106-2404, 651, Samseong-ro, Gangnam-gu, Seoul (Samseong-dong, Raemian La Classy)

        Place of Service: Seoul Eastern Detention Center, 37, Jeongui-ro, Songpa-gu, Seoul (Munjeong-dong)

## Object of Application

That rehabilitation proceedings be commenced against the debtor.

The Petitioner seeks a decision to this effect.



## Grounds for Application

### 1. Overview of the Debtor and Relationship between Petitioners and the Debtor

#### A. Overview of the Debtor

The debtor, BANG Junho, is a male national of the Republic of Korea born on June 26, 1994, who graduated from Gyeonggi Science High School for the Gifted in February 2013 and graduated Summa Cum Laude from the Department of Industrial Engineering at Seoul National University in February 2019.

Realizing that the rapid growth of the domestic cryptocurrency market in late 2018 offered significant arbitrage opportunities due to price differences between exchanges, the debtor believed that substantial profits could be generated in the cryptocurrency market through system trading, and thus founded a startup with three alumni to develop a system trading program. Subsequently, various market-neutral strategies were developed and operated to manage various cryptocurrencies; however, the three co-founders resigned, and the debtor has operated the company alone since 2020.

In October 2021, the debtor acquired BCD Tech Co., Ltd. (CEO SONG Jun; equity held by the debtor and SONG Jun in a 7:3 ratio), changed the company name to Aventus, and commenced the business of developing and operating cryptocurrency system trading programs. The debtor, either directly or through Aventus [renamed B&S Holdings (hereinafter referred to as "B&S") on July 22, 2022], entered into discretionary investment contracts with various investors or managed virtual assets in investors' accounts according to the system trading program.

Although the debtor deposited most of the virtual assets entrusted for investment or leased from various domestic corporations and individuals into the United States (hereinafter referred to simply as the "US") virtual exchange FTX, the debtor reached financial ruin as withdrawals became difficult following FTX's entry into insolvency proceedings in the US. The debtor can repay domestic creditors only upon receiving dividends from the aforementioned FTX insolvency proceedings, but is currently in a state where repayment cannot be received (this will be discussed in detail below in '4. Tasks for Receiving FTX Dividends, A. KYC'). The debtor was sentenced to 10 years in prison in 2024 for violation of the Act on the Aggravated Punishment, etc. of Specific Economic Crimes (Fraud)[1] and is currently detained at the Seoul Eastern Detention Center. The aforementioned criminal case is currently pending in the appeal court (Supreme Court).

## B. Relationship between Petitioners and the Debtor

Petitioner LIM Hyungcheol is a person who entrusted asset management to the debtor on June 24, 2022, entering into a discretionary investment contract and entrusting the management of 50,000,000 USDC[2] to the debtor [Exhibit A-1 Discretionary Investment Contract (Petitioner LIM Hyungcheol)]. However, even after December 4, 2022, when the contract period expired, the debtor did not repay the investment principal, let alone the investment profits, to Petitioner LIM Hyungcheol. On May 31, 2023, the debtor acknowledged a debt of KRW 89,458,253,549 to Petitioner LIM Hyungcheol and promised to transfer the assets listed in the document titled "Loss Repayment Plan" to LIM Hyungcheol as of June 1, 2023, and to pay the balance (the difference between the debt amount and the asset value) (Exhibit A-2 Loan Certificate (Petitioner LIM Hyungcheol)). However, the debtor did not complete any procedures for asset transfer (such as notice of assignment of claims) and, naturally, did not pay the balance.

Petitioner CHOI Jiwoong is a person who entrusted asset management to the debtor through the debtor's agent, SONG Jun, from around June 2022; Petitioner CHOI Jiwoong and the debtor executed a Notarized Deed of Debt Repayment Contract on June 6, 2023, wherein the debtor acknowledged a liability for damages of approximately

---

1) The debtor explained that even after November 6, 2011, when the withdrawal delay situation for virtual assets deposited in FTX began, and even after the commencement of FTX insolvency proceedings on November 11, 2022, in response to investors' inquiries about where their investment assets were being operated, he had withdrawn most of them from FTX while hiding the fact that they were deposited in FTX and could not be withdrawn, and that he could sufficiently repay the unwithdrawn portion with his own property, and received additional investments or leases. The court judged that these actions constituted deception [Exhibit A-17 Judgment (Seoul Southern District Court Judgment 2024Gohap54 decided August 13, 2024)].

2) USDC is an acronym for "United States Dollar Coin" and is a USD stablecoin (cryptocurrency intended to have a value pegged to existing currency) issued by Circle, a Massachusetts-based company in the US.

KRW 90,160,000,000[3]) to Petitioner CHOI Jiwoong and agreed to pay it by June 10, 2023 [Exhibit A-3 Notarized Deed of Debt Repayment Contract (Petitioner CHOI Jiwoong)]. However, the debtor did not pay this to Petitioner CHOI Jiwoong.

In other words, the Petitioners are creditors holding claims corresponding to an amount of KRW 50 million or more against the debtor (Item (a) of Subparagraph 2 of Paragraph 2 of Article 34 of the Debtor Rehabilitation and Bankruptcy Act).

## 2. Financial Ruin of the Debtor

### A. Insolvency of Virtual Asset Exchange FTX

The debtor operated by depositing most of the virtual assets entrusted for investment or leased from various domestic corporations and individuals into FTX, a US virtual asset exchange. However, on November 11, 2022, FTX filed for Corporate Reorganization Proceedings under Chapter 11 of the United States Bankruptcy Code (hereinafter referred to as "Chapter 11 Rehabilitation Proceedings") with the United States Bankruptcy Court for the District of Delaware[4]). Pursuant to the US Bankruptcy Code, Chapter 11 Rehabilitation Proceedings for FTX commenced simultaneously with the filing, and withdrawals from all accounts were suspended. As a result, the debtor has not yet received any payment of claims from FTX, and a state of default continues where he is consecutively unable to make repayments to his own creditors.

On December 27, 2023, the Delaware Bankruptcy Court determined and announced the amount of each claim held by FTX creditors as of November 11, 2022, the commencement date of the FTX Chapter 11 Rehabilitation Proceedings (DOC 5202). According to this, among the two accounts (FTX Account 799 and FTX Account 765, hereinafter referred to simply as "Account 1" and "Account 2", respectively) currently held by the debtor under the name of Lemma Technologies (hereinafter referred to simply as "Lemma"), which he established in Panama, the value of Account 1 is USD 106 million (hereinafter "USD" is omitted) and the value of Account 2 is USD 59 million, meaning the debtor holds rehabilitation claims totaling USD 165 million against FTX. According to the Second Amended Plan of Reorganization confirmed on October 7, 2024, and effective on January 3, 2025, FTX is to repay 143% of the claim amount, so the nominal amount the debtor (currently Lemma) can theoretically receive amounts to USD 235.95 million (USD 165 million × 143%). However, it is undetermined when this amount will be paid. Repayment has proceeded for claims under USD 50,000, and while the first repayment for claims over USD 50,000 is scheduled for May 30, 2025, it has not yet been announced what percentage of the claim amount will be paid as the first repayment. Experts believe that full repayment will take place over the next

---

3) Article 10 (Special Agreement) stipulates that "The damages are compensation for virtual assets 2,297.45 BTC (Bitcoin), 603.346 ETH (Ethereum), KRW 8 billion in cash, and USD 1,695,211, and in principle, settlement shall be made in the above virtual assets, cash, and US dollars."

4) The debtor's counterparty was FTX Trading Ltd., and there were many other affiliates in the FTX Group, such as Alameda Research LLC, all of which collectively entered Chapter 11 Rehabilitation Proceedings. Pursuant to the Second Amended Plan of Reorganization effective January 3, 2025, the FTX Recovery Trust was established for the repayment of rehabilitation claims. In this application, the FTX Group and its affiliated entities will be collectively referred to as "FTX".

5 to 10 years, and since FTX continues to dispose of assets to secure resources for dividends, the total dividend amount may be adjusted upward if the repayment resources increase during this period.

A significant number of creditors do not wait for FTX's repayment but take the approach of quickly cashing out by selling their FTX rehabilitation claims in the international distressed debt market. In cases where one wishes to sell rehabilitation claims to a third party without waiting for repayment over several years, due to expectations of increased dividend resources from FTX, the debtor's rehabilitation claims can be sold receiving sale proceeds at a rate similar to the 143% dividend rate authorized in the rehabilitation plan.

However, in the case of the debtor in this case, although he holds FTX rehabilitation claims, he has not obtained the qualification to receive repayment. To receive dividends from FTX, KYC (Know Your Customer, a system to verify customer identity) procedures must be preceded, but the debtor has not yet completed the KYC procedures and is expected to be unable to complete them in the future as he is currently incarcerated. This point will be explained in detail in 'Paragraph A of 4' below.

**B. Dispute with Svalbard**

To recover funds by selling[5] the claims (rehabilitation claims) against FTX, the debtor established Lemma in Panama in January 2023 and transferred all assets in the two FTX accounts under his name to Lemma on the 18th of the same month [Exhibit A-5 Evidence A attached to Notice of Filing of Complaint in New York State Court (PDF file pages 18~24)]. Subsequently, in the capacity of representative of Lemma, the debtor entered into a contract (Trade Confirmation) with Svalbard Holdings Limited (hereinafter referred to simply as "Svalbard")[6] to assign all claims regarding Accounts 1 and 2 [Exhibit A-5 Evidence B attached to Notice of Filing of Complaint in New York State Court (PDF file pages 25~27)]. According to the above contract, Svalbard is to pay 35% of the rehabilitation claim amount to Lemma. After the contract, Svalbard delayed performance of the contract by requesting written consent from BANG Junho's investors for the performance of this contract; however, as time passed and the market price of FTX rehabilitation claims rose sharply due to increased asset recovery (liquidation value) by FTX, they actively attempted to consummate the performance of the contract. Negotiations for acquisition price readjustment were attempted around September to November 2023, but no agreement was reached with the debtor's side. Accordingly, on January 19, 2024, Svalbard filed a lawsuit against Lemma in the New York State Court seeking specific performance of the sales contract and damages based on default (Exhibit A-5 Notice of Filing of Complaint in New York State Court). The above lawsuit is currently in the process of service. Therefore, even if the KYC procedures mentioned in Paragraph A above are completed, it is expected that Svalbard will engage in various legal obstructions, including the above lawsuit, at the stage where dividends are deposited into the account or the deposited dividends are withdrawn.

---

5) There are several companies worldwide that purchase FTX rehabilitation claims (Attestor, Farallon, Silver Point, etc.). These companies take the difference between the purchase price and the actual collection price in the future, and for high-value claims of over USD 3 million, the purchase price as of March 25, 2025, is approximately 143% to 148% of the rehabilitation claim amount.

6) Svalbard is a subsidiary of Attestor Limited (hereinafter referred to simply as "Attestor"), the largest company among those specializing in buying FTX rehabilitation claims. Attestor is an asset management company headquartered in the UK, and the purchase volume of FTX rehabilitation claims purchased until June 2024 is known to be USD 800.12 million, recording the highest among all purchasing companies.

**C. Pending Lawsuits**

Legal proceedings currently pending in relation to the debtor are as follows (Exhibits A-4 to 11).

- Application for commencement of bankruptcy proceedings against the debtor (Seoul Bankruptcy Court 2024Hadan102153)
- Application for change of creditor name submitted by Petitioners to the US Bankruptcy Court for the District of Delaware (MOTION OF HYUNG CHEOL LIM, AIMED, INC., BLOCORE PTE., LTD., JI WOONG CHOI, AND MOSAIC CO. LTD. FOR AN ORDER, PURSUANT TO RULES 3001 AND 3020(d) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND 11 U.S.C. §§ 105(a) AND 1142(b), FOR LEAVE TO AMEND PROOF OF CLAIM NO. 87144 TO CORRECT CLAIMANT'S NAME AND ADDRESS, hereinafter referred to simply as the "Motion")
- Lawsuit for specific performance and damages filed by Svalbard against Lemma in the New York State Court (Supreme Court of the State of New York, County of New York) (Svalbard Holdings Limited versus Lemma Technologies Inc., Index No. 650457/2024).
- Lawsuit for return of loan filed by Traum Infotech against the debtor and SONG Jun (Seoul Central District Court 2024Gahap72375)
- Lawsuit for damages filed by Haru United against the debtor and 3 others (Seoul Central District Court 2023Gahap74398)
- Decision on provisional attachment of claims made pursuant to the application for provisional attachment of claims using Haru United's above claim for damages as the preserved claim (Seoul Central District Court Decision 2024Kadan801368 dated March 21, 2024) and Order for Statement and Submission to the Third Debtor FTX
- Decision on preservation for forfeiture of the debtor's property pursuant to the prosecutor's request (Seoul Southern District Court 2024Chogi3063)
- Appeal case in the criminal matter against the debtor (Supreme Court 2025Do3712)

## 3. Liquidation Value and Going Concern Value

**A. Property of the Debtor**

**(1) FTX Dividends**

The debtor operated by depositing virtual assets received from investors into the US virtual asset exchange FTX, but is unable to withdraw the deposited virtual assets as Chapter 11 Rehabilitation Proceedings have commenced for FTX. The debtor's rehabilitation claim has been confirmed at USD 165 million, and according to the FTX rehabilitation plan, 143% of the rehabilitation claim will be repaid. However, the repayment timing is undetermined. Repayment has proceeded for rehabilitation claims under USD 50,000, and the first repayment date for rehabilitation claims over USD 50,000 is scheduled for May 30, 2025.

To receive dividends in the Chapter 11 Rehabilitation Proceedings for FTX, KYC must be performed first, but the debtor has not yet completed KYC. According to FTX's response to the application for change of creditor name[7] (hereinafter referred to simply as the "Motion") submitted by the Petitioners to the US Bankruptcy Court for the District of Delaware in the FTX Chapter 11 Rehabilitation Proceedings, it appears that completion will not be possible in the future either. If KYC is not completed, the rehabilitation claim will be "disallowed and expunged" pursuant to the court's order (February 3, 2025, DOC 29464), and no dividends whatsoever can be received from FTX (Exhibit A-18 Order of Delaware Bankruptcy Court dated February 3, 2025). In this case, the debtor's claim against FTX will receive no repayment, and the resources to be used for that repayment will be distributed to other creditors of FTX, concluding the FTX Chapter 11 Rehabilitation Proceedings. While the value of the FTX rehabilitation claim held by the debtor under the name of Lemma is zero in the current situation where the debtor cannot perform KYC, if the Receiver of the debtor's rehabilitation proceedings successfully performs the KYC tasks and amicably resolves the dispute with Svalbard to remove legal obstacles necessary for receiving dividends, the FTX dividends could reach a maximum of USD 235.95 million (USD 165 million × repayment rate 143%).[8]

## (2) Property Other Than FTX Dividends



The debtor's property identified by the Petitioners is as follows.[9]

<Table 1> List of Debtor's Property Identified by Petitioners

| Description | Investment/ Loan Amount |
|---|---|
| Baekdu Technologies Stock | KRW 2.8 billion |
| One Start Co., Ltd. Venture Startup Investment | KRW 1 billion |
| Philosophia Ventures Equity | KRW 3.3 billion |
| Grit Investment Association No. 2, No. 3, Investment (fund) | KRW 200 million |
| Spring Camp LP Fund Contribution | KRW 3 billion |
| Future Play LP Fund Contribution | KRW 2 billion |
| Murex LP Fund Contribution | KRW 500 million |

---

7) MOTION OF HYUNG CHEOL LIM, AIMED, INC., BLOCORE PTE., LTD., JI WOONG CHOI, AND MOSAIC CO. LTD. FOR AN ORDER, PURSUANT TO RULES 3001 AND 3020(d) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND 11 U.S.C. §§ 105(a) AND 1142(b), FOR LEAVE TO AMEND PROOF OF CLAIM NO. 87144 TO CORRECT CLAIMANT'S NAME AND ADDRESS

8) The debtor's rehabilitation claim in this case has been granted an opportunity by FTX to resolve the KYC issue, as described below. If the debtor succeeds in KYC, it is expected that repayment will proceed according to a separate schedule, not May 30, 2025, which is scheduled as the first repayment date for rehabilitation claims of over USD 50,000.

9) It is difficult for the Petitioners to know the exact property of the debtor. The property indicated here is based on the debtor's statements made during conversations with the debtor in the summer of 2023 for the purpose of identifying the debtor's property.

| | |
|---|---|
| Unboxers Co., Ltd. | KRW 500 million |
| Dunamu/ Kakao Mobility Proxy Investment (HWANG Changhyeon) | Unknown |
| IMM Startup Fund Investment | KRW 3 billion |
| JO Juhyeong (friend) | KRW 300 million |
| Sopoong Ventures 1-10-0 Individual Investment Association | KRW 600 million |
| Sopoong Ventures Impact Picnic / Impact Climate Fund | KRW 1 billion |
| Lease deposit for Rm. 2404, Bldg. 106, 651, Samseong-ro, Gangnam-gu | KRW 500 million |
| Acquisition of shares of Moon River Co., Ltd. by CHOI Gyeongjun | KRW 100 million |
| Missquad Co., Ltd. Startup Investment | Unknown |
| Select Korea Startup Investment | KRW 200 million |
| NPX-Welcome Metaverse Edutech New Technology Investment Association Contribution | KRW 200 million |
| Claim against NAM Sugyun | 770,000 USDT[10] |
| Tri-star Holdings Overseas Investment | USD 200,000 |
| Pow.Le Overseas Investment | USD 1 million |
| ROK Capital Fund Investment | USD 1 million |
| Total | KRW 19.2 billion + USD 2,970,000 |

Some of this appears to have been recovered and used for debt repayment, and it is uncertain how much of the investment amount can actually be recovered. Assuming full recovery, the total amount is approximately KRW 23.4 billion.

**(3) Comparison of Liquidation Value and Going Concern Value**

If the debtor's property is liquidated now, the maximum amount that can be recovered is approximately KRW 23.4 billion (FTX dividends KRW 0 + maximum realizable value of other assets KRW 23.4 billion).

If the Receiver of the debtor's rehabilitation proceedings actively asserts rights in the FTX Chapter 11 Rehabilitation Proceedings in the US Bankruptcy Court for the District of Delaware to complete KYC, and amicably resolves the dispute with Svalbard to receive FTX dividends, up to KRW 330 billion (= USD 165,000,000 × 143% × KRW 1,400/USD) can be recovered for domestic creditors. Even if 10% of the cost is paid to remove various legal obstacles, up to approximately KRW 300 billion can be used for repayment to creditors.

---

10) USDT is an acronym for "United States Dollar Tether" and is a USD stablecoin (cryptocurrency intended to have a value pegged to existing currency) issued by Tether.

The business operated by the debtor is the development and operation of cryptocurrency system trading programs. The debtor, either directly or through B&S, conducts business by entering into discretionary investment contracts with various investors or receiving virtual assets from investor accounts and managing them according to the system trading program. At this stage, the debtor's business is to receive dividends from FTX, the virtual asset exchange where virtual assets were entrusted for trading during the management process, and repay the principal and interest to creditors, including the Petitioners who invested in the debtor, using these funds. While the liquidation value of the debtor's business is approximately KRW 23.4 billion (assuming full recovery), the going concern value of the debtor's business is up to approximately KRW 300 billion, so proceeding with rehabilitation proceedings would be of great benefit to the creditors.

## B. Liabilities of the Debtor

We will now discuss the liabilities of the debtor identified by the Petitioners so far. The details of virtual assets invested in or leased to the debtor by those claiming to hold claims against the debtor are identified as shown in <Table 2> below [Exhibit A-12 Deposit and Withdrawal Details (Before and After FTX Collapse); the above documentary evidence is an Excel file prepared by the debtor and sent to the Petitioners on June 25, 2023, wherein Investor 1 is identified as Haru, Investor 2 as Petitioner LIM Hyungcheol (including related corporations), Investor 3 as CHOI Jiwoong (including related corporations), Investor 4 as KIM Dumin, and Investor 5 as Delio].

<Table 2> below subtracts the total amount withdrawn from the total amount deposited for each virtual asset, regardless of whether it was before or after the commencement of the FTX Chapter 11 Rehabilitation Proceedings and regardless of whether the transaction was an investment or a lease, so there may be differences from the actual quantity the debtor is obligated to return. The true quantity will have to be revealed through the claim investigation process in the future.

<Table 2> Quantity of Virtual Assets to be Returned by Debtor to Creditors, etc. (Estimated)[11]

|  | BTC (Bitcoin) | ETH (Ethereum) | XRP (Ripple) | USDT (Note 10) | USDC (Note 2) | SAND (Sandbox) | KRW (Korean Won) |
|---|---|---|---|---|---|---|---|
| Haru | 4,467 | 25,850 | 34,000,020 | 4,300.000 | 2,900,000 | - | - |
| LIM Hyungcheol | 11.84 | - | - | 3,573,000 | 57,771,991 | 36,488,812 | - |
| CHOI Jiwoong | 1,999.48 | 480.12 | - | - | 1,372,000 | - | 8,000,000,000 |
| Traum | 390 | 2,010 | 13,000,000 | - | - | - | - |
| Minor Creditors | 43.31 | 3,955.30 | - | 6,840,057 | - | - | 1,200,000,000 |

In rehabilitation proceedings, the quantity of virtual assets in the above table must be converted into monetary value to determine the rehabilitation claim. Since the value of virtual assets changes every second, the amount

---

11) This is an estimate and does not imply that the Petitioner acknowledges such facts.

recognized as a rehabilitation claim varies depending on how the base time is determined in consideration of the content of the transaction (investment or lease) and the timing of the transaction (before or after the commencement of the FTX Chapter 11 Rehabilitation Proceedings), and consequently, the rehabilitation claim amount also fluctuates. Examples of price calculation based on various criteria are illustrated in Exhibit A-13 Rehabilitation Claim Amounts by Scenario.

<Table 3> below shows the debt amount resulting from applying the calculation method of the creditor table prepared by Attestor (the largest company specializing in buying FTX rehabilitation claims and the parent company of Svalbard) to obtain the consent of creditors including the Petitioners, as one of several cases [Exhibit A-14 Calculation Method Proposed by Attestor to Petitioner LIM Hyungcheol, Exhibit A-15 Calculation Method Proposed by Attestor to Petitioner CHOI Jiwoong, Exhibit A-16 Summary of Investor Deposit and Withdrawal Amounts, Exhibit A-12 Deposit and Withdrawal Details (Before and After FTX Collapse)]. This table calculates the value of virtual assets based on the commencement of the FTX Chapter 11 Rehabilitation Proceedings for investments, and based on the price at the time of the transaction for leases. According to this, the total debt of the debtor is USD 277.5 million, which is approximately KRW 388.5 billion when calculated at KRW 1,400 per dollar. Of course, the existence and content of the claims may change during the subsequent claim investigation and confirmation process, and the amount will vary depending on the valuation time of each virtual asset.

<Table 3> Overview of Claim Amounts Calculated by the Method Proposed by Attestor[12]

(Unit: USD Million)

| Creditor | FTX Chapter 11 Rehabilitation Proceedings Commencement | | Claim Amount |
|---|---|---|---|
| | Before | After | |
| Haru | 163.7 | -40.6 | 123.1 |
| LIM Hyungcheol | 86.2 | -0.2 | 86 |
| CHOI Jiwoong | 35.2 | 6.5 | 41.7 |
| Traum | 0 | 20.1 | 20.1 |
| Minor Creditors | 2.2 | 4.4 | 6.6 |
| Total | | | 277.5 |

## C. Opinion on Examiner

In general rehabilitation cases, an accounting firm is appointed as an examiner to calculate the liquidation value

---

12) This table was prepared by applying the calculation method used in the proposal provided by Attestor to the Petitioners in October 2024 to the transaction records by investor provided by the debtor to the Petitioners in October 2023 to calculate the claim values of Haru, Traum, and other minor creditors. It is calculated by the method proposed by Attestor and does not imply that the Petitioner acknowledges such facts.

and going concern value of the debtor and report to the court. However, in this case, the debtor's business is not profit generation through general corporate management, but receiving dividends from the Chapter 11 Rehabilitation Proceedings of FTX, where the creditors' virtual assets were entrusted, and repaying the principal and interest to creditors, including the Petitioners who invested in the debtor, using these funds as resources. After such repayment is completed, the debtor will continue to conduct business by receiving investment funds or managing virtual assets in investor accounts according to the system trading program.

Currently, the most important business is to successfully complete the KYC procedures and receive dividends on rehabilitation claims in the FTX Chapter 11 Rehabilitation Proceedings pending in the US Bankruptcy Court for the District of Delaware. Therefore, in the rehabilitation proceedings for the debtor sought by this application, we believe that the role of an examiner in the traditional sense is not necessary; however, if an examiner is appointed, we believe that a lawyer with an understanding of US court insolvency proceedings and virtual assets would be suitable as the examiner for this case.

## 4. Tasks for Receiving FTX Dividends (Recovery of Rehabilitation Claims against FTX)

### A. KYC

KYC stands for "Know Your Customer" and refers to the customer identity verification procedure in financial transactions. The US Anti-Money Laundering Laws and Foreign Assets Control Regulations strictly prohibit money laundering and transactions with drug organizations or terrorist groups, and KYC is a specific method to comply with relevant laws.

In the FTX Chapter 11 Rehabilitation Proceedings, KYC proceeds through the following procedures. When identity verification information is submitted by taking a photo or uploading a document according to the program designated on the online portal opened by FTX (https://claims.ftx.com/welcome), the FTX KYC team reviews the submitted information and displays on the screen whether KYC has been passed. If additional documents or information are required, FTX notifies the creditor of specific requirements by email, and FTX reviews the additional materials submitted by the creditor according to the requirements. When KYC is passed, the KYC status is displayed as 'Verified' on the personal page of the FTX online portal. If a request for additional materials has been received but not submitted, or submitted but the review is not completed, it is displayed as 'On Hold'. There is no procedure to file a lawsuit with the court regarding the 'On Hold' decision, and there is also no procedure to file a lawsuit with the court even if the repayment is not received after the KYC completion deadline has passed in the 'On Hold' state.[13]

Recognizing this urgent situation, the Petitioners filed an application for change of creditor name for Account

---

13) Pursuant to the court order that creditors who fail to perform KYC within the deadline among creditors subject to the KYC commencement and completion deadlines shall forfeit their rights, the court recently notified the forfeiture of rehabilitation claims that missed the KYC commencement deadline of March 1, 2025 (DOC 30042, April 2, 2025, Substantiating Material Exhibit A-19 Notice of Delaware Bankruptcy Court dated April 2, 2025).

2 under the name of Lemma with the Delaware Bankruptcy Court on January 21, 2025. Upon receiving this application, FTX notified the Petitioners' representative on January 22, the day after the application date, that the two accounts under the name of Lemma were excluded from the accounts subject to the KYC deadline.[14] Through this, the Petitioners, who are creditors of the debtor, have been exempted from the application of the March 1, 2025 deadline and have the opportunity to pursue other KYC measures. FTX may re-establish the KYC deadline at its discretion at any time while watching the progress of the rehabilitation proceedings in Korea. Therefore, through this application, the Petitioners are seeking a way for the debtor's Receiver to perform KYC before FTX sets a new KYC completion deadline.

FTX's Second Amended Plan of Reorganization (confirmed on October 7, 2024, and effective January 3, 2025) establishes KYC as a matter of FTX's discretion (Plan 2.1.129).[15] Plan 7.14, which lists documents or information required to satisfy KYC,[16] is merely illustrative, and FTX may, at its discretion, request the provision of any materials or information and reject KYC if such requests are not met. If FTX rejects a KYC application, the creditor may file a lawsuit with the court; however, in practice, FTX avoids litigation by not deciding to 'reject' but leaving it in an 'On Hold' status, effectively preventing the creditor from exercising their rights. Even if FTX makes a rejection decision and the party disputes it in court, it is said that it is easy for the court to rule in favor of FTX as long as FTX has even a slight rational basis for the KYC rejection decision, since KYC is originally stipulated as a matter of FTX's discretion.

With the debtor (BANG Junho) convicted of fraud and incarcerated, the debtor himself cannot perform KYC. This is because the creditor (in this case, BANG Junho, as a creditor to FTX) is a criminal, and the deposited funds may be considered linked to crime. In its response to the application for change of creditor name filed by the Petitioners with the Delaware Bankruptcy Court, FTX pointed out that the debtor cannot perform KYC (Exhibit A-20 FTX Response to Motion filed by Petitioners, Paragraph 9).[17]

---

14) Sullivan & Cromwell, the law firm representing FTX, notified that FTX excluded the debtor's two FTX rehabilitation claims from the application of the KYC deadline after a meeting with the Petitioners' counsel on January 22, 2025, the day after the Petitioners submitted the Motion to the Delaware Court, and confirmed this decision in the response to the Motion filed by the Petitioners (DOC 29582, February 14, 2025) (Exhibit A-20 FTX Response to Motion filed by Petitioners). Below is the original text and translation of the relevant main text. "모션 신청인 측 변호인과의 논의에 따라, FTX 회수 신탁은 KYC 이의에서 방과 관련된 계속 중인 회생채권을 제외하였으며, 해당 채권은 별도로 처리될 예정이다."
Following discussion with the Movants' counsel, the FTX Recovery Trust removed the pending claims associated with Bang from the KYC Objection, and will separately address them.

15) Article 2.1.129 of the Second Amended Plan of Reorganization stipulates that "'KYC Information' means the know-your-customer information requested by the Debtors" [Exhibit A-21 FTX Rehabilitation Plan Article 2.1.129 (Excerpt)]. Under this provision, FTX retains the authority to request a particularly high level of documents and information not only when there are formal defects in the documents or information submitted by the customer or when the customer identification information they wish to investigate is not included in the content, but also when FTX determines that there is room for doubt about the identity and source of funds of a specific customer according to information collected in advance by FTX. The important part of this definition provision for KYC Information is the phrase "requested by the Debtors" located at the end of the sentence. This part serves as the legal basis for FTX to operate the KYC procedures at its discretion, such as determining whether the submission of KYC Information has been satisfied.

16) Article 7.14 of the Second Amended Plan of Reorganization stipulates KYC information requested from individuals and KYC information requested from institutions separately in the manner of "(i) for individuals, may include, among other things, full name [...]" and "(ii) for institutional Holders, may include, among other things, company name [...]" [Exhibit A-22 FTX Rehabilitation Plan Article 7.14 (Excerpt)].

17) "In addition, to become Allowed Claims, Bang would need to satisfy Original Customer KYC, which may prove impossible." can be translated as "더욱이 시인된 채권이 되기 위해서는 방이 원 채권자 KYC를 이행해야 하는데, 그것은 불가능할 수 있습니다." The fact that FTX, which judges whether to allow KYC performance, used the expression "which may prove impossible" is said to be an indirect expression of the meaning "KYC is impossible." We think it is in the same vein as expressions like "need to approach carefully"

KYC must be performed not only by the current rehabilitation claim holder but also by the Original Customer[18] (Plan 2.1.197.).[19] In other words, if a rehabilitation claim against FTX is assigned, both the assignor and the assignee must perform KYC. Svalbard also requires the debtor's KYC to perform KYC as an assignee and receive dividends. Determining that the only way to complete KYC related to the account while the debtor cannot perform KYC is to enable the exercise of rights solely through the Petitioners' KYC without the debtor's KYC simultaneously with the change of creditor name, the Petitioners filed an application to this effect with the Delaware Bankruptcy Court.[20]

If a Receiver is appointed in this rehabilitation proceeding, it is expected that the Receiver, representing the debtor and all of the debtor's creditors, can swiftly complete KYC for the debtor's FTX rehabilitation claims by asserting the right to perform KYC directly in the hearing proceedings for the Motion (filed by the Petitioners) currently pending in the US Bankruptcy Court for the District of Delaware. This is the fastest way to bring the debtor's assets tied up in FTX in the US to Korea.

**B. Resolution of Dispute with Svalbard**

On June 15, 2023, the debtor, in the capacity of representative of Lemma, signed a 'Trade Confirmation'[21] to sell FTX rehabilitation claims to Svalbard. According to the above document, the purchase price is 35% of the FTX rehabilitation claim amount, and the debtor must obtain consent from the debtor's creditors (including the Petitioners) for the assignment of rehabilitation claims for the KYC procedures of the debtor and Svalbard. However, the debtor did not inform the investors, including the Petitioners, of the existence of this contract or seek their consent, and no creditor agreed to this transaction. Accordingly, on January 29, 2024, Svalbard filed a lawsuit against Lemma as the defendant in the New York Court seeking specific performance of the sales contract and damages for breach of contract.

In the summer of 2024, Svalbard approached the Petitioners seeking consent for the assignment of the above rehabilitation claims and proposed raising the purchase price to 50.5% of the rehabilitation claim amount.[22] At

---

or "need long-term review" in our practice.
18) Refers to the creditor at the time of entering rehabilitation proceedings.
19) Article 2.1.197 of the Rehabilitation Plan stipulates as follows [Exhibit A-23 Rehabilitation Plan Article 2.1.197 (Excerpt)]: 2.1.197 Unverified Customer Entitlement Claim means a Customer Entitlement Claim in respect of which
    (a) the Original Customer or Holder of such Customer Entitlement Claim has failed to submit KYC Information of the Original Customer by a date determined by the Debtors and approved by order of the Court or
    (b) an objection by the Debtors to the KYC Information of the Original Holder has been sustained by order of the Court.
        2.1.197 Unverified Customer Entitlement Claim" means a Customer Entitlement Claim in respect of which
        (a) the Original Customer or Holder of such Customer Entitlement Claim has failed to submit KYC Information of the Original Customer by a date determined by the Debtors and approved by order of the Court or
        (b) an objection by the Debtors to the KYC Information of the Original Holder has been sustained by order of the Court.
20) 83% of the coins deposited in Account 2 belonged to the Petitioners, 16% belonged to the debtor, and only 1% was under a third party's name, but since the debtor expressed his intention to assign the 16% to the Petitioners for repayment (Exhibit A-24 Certificate dated Sept 26, 2023), the Petitioners effectively became the owners of 99% of the coins in Account 2, leading to this application.
21) Trade Confirmation is a document confirming transaction conditions (seller, buyer, product name, amount, quantity, settlement date, etc.) after agreeing to a transaction of financial products (bonds, derivatives, loan receivables, etc.).
22) Svalbard's proposal was a method of calculating investment funds deposited in FTX before the commencement of the FTX Chapter 11 Rehabilitation Proceedings (November 11, 2022) at the value at the time of commencement, and calculating amounts provided to the debtor

that time, although the value of virtual assets liquidated by FTX had risen and FTX rehabilitation claims were trading at 100% of their face value in the market, Svalbard emphasized that the Petitioners would receive nothing if KYC was not completed. The Petitioners rejected this proposal. There was no significant progress in the video conference between the Petitioners and Svalbard on November 19, 2024, and although there was a revised proposal on January 3, 2015, no agreement was reached. On March 11, 2025, Svalbard approached the Petitioners again (approached because the Petitioners have the right of consent under the contract) to inquire about a price acceptable to the Petitioners, and during the conversation, admitted that Svalbard also cannot perform KYC unless all of the debtor's creditors agree.

While it is true that Svalbard's bargaining power has weakened somewhat since the Petitioners' application for change of debtor name, Svalbard (and its parent company Attestor) is still the largest player in the FTX claim market and an entity capable of launching legal attacks without considering the burden of legal costs.

The Petitioners believe that if the Receiver denies the transfer of assets to Lemma after the commencement of rehabilitation proceedings for the debtor, the transaction between Lemma and Svalbard can be neutralized; however, resolving the dispute with Svalbard remains a major task as it is unknown what attacks they might launch based on the still valid contract between Lemma and Svalbard at the stage of depositing dividends into the debtor's Accounts 1 and 2 or at the stage where the Receiver withdraws the deposited dividends.

## 5. Petitioners' Efforts and Awareness

### A. Petitioners' Efforts

While other creditors of the debtor vaguely expected to receive dividends in the US and did not know what to do to receive dividends in the US FTX Chapter 11 Rehabilitation Proceedings, the Petitioners realized that they would receive absolutely no dividends if they remained idle, and made concrete efforts to receive dividends by spending significant legal fees and effort.

FTX submitted an application to the Delaware Court on November 22, 2024, stating that creditors of unapproved claims with KYC issues must commence KYC procedures by March 1, 2025, and pass KYC by June 1, 2025, to maintain the right to be repaid for their claims, and that if either the start time or the end time is violated, the rehabilitation claim will be disallowed and expunged, and the court approved this application by order.[23] Since

---

after commencement based on the investment date, and then pro-rating 50.5% of the face value of the FTX rehabilitation claim (USD 165 million, excluding the debtor's share) to each creditor's claim amount.

23) The Delaware Court accepted FTX's KYC objection and issued the following order on February 3, 2025 (DOC 29464) (Exhibit A-18 Order of Delaware Bankruptcy Court dated February 3, 2025).

2. In the event that the Original Holder of an Unverified Claim listed on Schedule 1 attached hereto does not commence the KYC submission process with respect to such Unverified Claim on or prior to March 1, 2025 at 4:00 p.m. (ET) (the "KYC Commencing Deadline"), such Unverified Claim shall be disallowed and expunged in its entirety.

3. In the event that the Original Holder of an Unverified Claim listed on Schedule 1 attached hereto does not submit all KYC information requested by the Debtors or their KYC vendors on or prior to June 1, 2025 at 4:00 p.m. (ET) (the "KYC Submission Deadline"), such Unverified Claim shall be disallowed and expunged in its entirety.

2. In the event that the Original Holder of an Unverified Claim listed on Schedule 1 attached hereto does not commence the KYC

the debtor's rehabilitation claim was designated as an unapproved claim, the March 1, 2025 deadline was a very severe pressure.

In this situation, the Petitioners determined that it was overwhelming to respond to the lawsuit for claim performance and damages filed by Svalbard in the New York State Court on January 29, 2024, and also that the more important KYC issue could not be resolved in this lawsuit. Reviewing the matter, the Petitioners confirmed that most of the virtual assets deposited in Account 2 held by the debtor were entrusted by the Petitioners (Petitioners 83%, debtor 16%, others 1%), and with the debtor's consent, filed an application with the US Bankruptcy Court for the District of Delaware on January 21, 2025, to change the name of Account 2 from the debtor to the Petitioners and to allow the Petitioners' KYC. [Exhibit A-6-1 Motion, Exhibit A-24 Confirmation dated September 26, 2023]

Svalbard, FTX, the debtor, LEE Jungyup (Korean attorney, representative of the applicant creditor in the bankruptcy application case against the debtor), and Traum Infotech submitted opinions regarding this application. After reviewing the submitted opinions, the Petitioners determined that it would be more advantageous for executing KYC if the Receiver participates in the hearing and presents opinions as the representative of all creditors after the rehabilitation proceedings for the debtor are commenced, rather than proceeding with the hearing scheduled for Feb 27, and applied for a postponement of the hearing, which the court immediately accepted, postponing the hearing until the end of April. Through this application, the following valuable results were obtained.

**(1) Exclusion from KYC Deadline Application**

After the Petitioners' application for change of creditor name, FTX notified the Petitioners in writing that both of the debtor's accounts were excluded from the list of unapproved rehabilitation claims subject to the March 1 and June 1 deadlines, and specified this in Paragraph 9 of the response to the Petitioners' Motion (Exhibit A-20 FTX Response to Motion filed by Petitioners).[24] As a result, time to resolve the KYC issue was bought. If the deadline had been applied as is, the receipt of dividends would have already become impossible as the rehabilitation claim would have been expunged due to the failure to properly commence the KYC application by March 1.[25]

Also, under the current state, since the debtor cannot pass KYC by June 1, he would violate this double deadline, and the debtor's rehabilitation claim would be disallowed and expunged. According to the results of contact between the Petitioners' US representatives and FTX, if rehabilitation proceedings commence in Korea and the

---

submission process with respect to such Unverified Claim on or prior to March 1, 2025 at 4:00 p.m. (ET) (the "KYC Commencing Deadline"), such Unverified Claim shall be disallowed and expunged in its entirety.

3. In the event that the Original Holder of an Unverified Claim listed on Schedule 1 attached hereto does not submit all KYC information requested by the Debtors or their KYC vendors on or prior to June 1, 2025 at 4:00 p.m. (ET) (the "KYC Submission Deadline"), such Unverified Claim shall be disallowed and expunged in its entirety.

24) See Note 14.

25) In the Notice of Claim Expungement dated April 2, 2025, FTX cited the relevant Delaware Court order and notified that a total of 392,049 rehabilitation claims listed in the appendix were expunged for failing to meet the KYC commencement deadline of March 1, 2025 (DOC 30042).

Receiver does not actively exercise rights regarding the KYC of the account under Lemma's name in the FTX Chapter 11 proceedings, it appears that FTX will set a new KYC deadline at any time.

After the hearing on the Petitioners' application for change of creditor name was postponed, in a meeting held on March 21, 2025, with the Petitioners' representatives, the FTX person in charge expressed gratitude for the Petitioners' serious response, spending significant costs to resolve the rehabilitation claim issues such as the KYC of BANG Junho (under the name of Lemma), to which FTX is paying great attention. If rehabilitation proceedings for BANG Junho commence in Korea and a court-appointed Receiver steps forward to resolve this issue, FTX evaluates this as a very positive development in resolving various related issues such as KYC, and FTX's trustee, John Ray III, has expressed his intention to directly support with an active attitude.

In this meeting, opinions regarding the progress of proceedings in the US in the event a Receiver is appointed were also exchanged. Specifically, regarding the Motion currently pending in the Delaware Court, if the Receiver of the Korean rehabilitation proceedings agrees, the court may allow the name change for Account 2 for the Petitioners to perform KYC, and immediately after, the Receiver performs KYC for Account 1 (in this case, if the Petitioners agree with the Receiver in advance to transfer all rights to Account 2 held by the Petitioners to the Receiver, the property of Account 2 will belong to the rehabilitation estate), or the Receiver applies for KYC for Accounts 1 and 2 simultaneously; acknowledging that the approach may vary depending on the situation, they expressed their intention to cooperate with the Receiver's efforts.

**(2) Weakening of Svalbard's Bargaining Power**

By filing the Motion, the Petitioners received a message from the FTX side, which Svalbard conveyed to the Petitioners' side first at the meeting on March 11, 2025, that Svalbard cannot perform KYC without the cooperation of the debtor's creditors like the Petitioners. This has placed them in an advantageous position in negotiations with Svalbard to secure the debtor's property.

**(3) Identification of Risk Factors Related to Fund Recovery from FTX**

FTX's response to the Motion revealed all the obstacles to completing KYC, allowing for sufficient preparation. The gist of FTX's response was whether other creditors besides the Petitioners also have interests in the two accounts under Lemma's name. Therefore, if the Receiver of the rehabilitation proceedings for the debtor requests KYC, it appears that FTX will have no grounds to object. This is because the Receiver represents all creditors of the debtor (BANG Junho). Also, through Svalbard's response, what they consider as the basis for their claim of rights was identified, placing Korean creditors in an advantageous position in future litigation or negotiations with Svalbard.

**B. Petitioners' Awareness of Rehabilitation Proceedings**

As explained above, the Petitioners' application for change of creditor name to the Delaware Bankruptcy Court

was the best effort for the recovery of rehabilitation claims, and through this, the groundwork for receiving dividends from the FTX insolvency estate was laid by excluding the application of the KYC deadline. The Petitioners clearly recognize that if rehabilitation proceedings for the debtor commence, the Receiver will perform KYC representing not only the Petitioners but all creditors, and the amount received as dividends through this is for all creditors, not just the Petitioners.

Although the rehabilitation proceeding is not a procedure solely for the Petitioners but for 'all creditors', the reasons why the Petitioners apply for rehabilitation proceedings at their own expense and effort are as follows. The Petitioners succeeded in excluding the debtor's FTX rehabilitation claims from the application of the KYC deadline by filing a Motion with the US Bankruptcy Court for the District of Delaware. Now, if a Receiver for the debtor (BANG Junho) representing all creditors is appointed, a situation has been created where that Receiver can perform KYC in the FTX Chapter 11 Rehabilitation Proceedings in the Delaware Bankruptcy Court for all creditors. This is because they know that if this opportunity is missed, the KYC deadline will be set again, and if it passes, the FTX rehabilitation claim will be expunged according to the US court order, making it impossible to recover this claim forever.

## C. Petitioners' Will in the Future Rehabilitation Process

With the debtor BANG Junho detained, the Petitioners have spent over USD 2 million in legal fees over the past 8 months to proceed with procedures in the US to recover claims, obtaining a decision to exclude the application of the KYC deadline for the two FTX accounts held by the debtor. Determining that rehabilitation proceedings are absolutely necessary to complete KYC at an early date, this application for rehabilitation proceedings was filed. In this regard, we would like to clearly state two points.

First, if the US Bankruptcy Court for the District of Delaware accepts the Petitioners' application for change of creditor name for Account 2 under the name of Lemma and the Petitioners perform KYC, all related rights will be transferred to the Receiver of the debtor's rehabilitation proceedings (refer to Exhibit A-25 Letter of Commitment).

There are two main ways the debtor's Receiver can be recognized for rights to the debtor's two accounts in the FTX Chapter 11 Rehabilitation Proceedings, complete KYC, and receive dividends. One is for the Receiver to assert rights to the accounts and apply for change of creditor name and permission to perform KYC. The other is for the Receiver to agree to the Petitioners' application for change of creditor name and permission to perform KYC for Account 2 currently in progress, and if the Delaware Court grants the application, the Petitioners perform KYC, and then based on an agreement with the Petitioners, the account name is changed to the Receiver's name and the Receiver performs KYC directly. After the Receiver's KYC for Account 2 is completed, the Receiver of the Korean rehabilitation proceedings can claim KYC for Account 1 based on this.

Comparing these two methods, the former is considered inefficient as it incurs additional costs and time to submit a new application, so it is expected that the Receiver will participate in the Delaware Bankruptcy Court

proceedings based on the letter of commitment submitted by the Petitioners. However, even if the Seoul Bankruptcy Court supervising the rehabilitation proceedings or the Receiver chooses another method, the Petitioners will actively cooperate.

Second, significant legal costs will be incurred until the Receiver of the debtor's rehabilitation proceedings ultimately performs KYC and is recognized as being in a position to receive dividends. It may be necessary to proceed not only with asserting rights in the ongoing Motion proceedings or additional Motions but also with procedures to have the decisions made by the Korean court in the Korean rehabilitation proceedings recognized in the US by obtaining recognition of foreign insolvency proceedings under Chapter 15 of the US Bankruptcy Code. Also, even if the Receiver is recognized as eligible to receive dividends, Svalbard will object (specific actions will be taken by its parent company Attestor) at the stage where FTX pays dividends to the Receiver or in the process of the Receiver withdrawing dividends, and legal disputes to resolve this will occur.

It would be fortunate if such costs could be covered by the debtor's property, but if not, a situation may occur where legal responses cannot be made and dividends are ultimately not received. Among those currently claiming to be creditors of the debtor, the only ones holding claims of over USD 10 million are the Petitioners and two bankruptcy estates (Haru, Delio). Realistically, since the bankruptcy estates cannot afford such costs, the only ones who can virtually cover the costs are the Petitioners. The Petitioners intend to lend the costs. Because the Petitioners believe that they must not miss the large amount they rightfully deserve to receive due to a failure to respond properly legally, they will lend the necessary costs to the Receiver, despite the risk of not being able to recover the lent money.

## 6. Necessity of Commencement of Rehabilitation Proceedings

For the creditors of the debtor in this case to recover their claims, they must receive dividends from the FTX rehabilitation proceedings and bring them to Korea. To this end, the Receiver must first succeed in KYC for the two accounts at the US Bankruptcy Court for the District of Delaware. Then, through consultation with FTX, the remaining procedures for the dividend of rehabilitation claims must be proceeded with, and simultaneously, legal obstacles preventing the withdrawal of dividends must be removed through litigation or negotiation with Svalbard, who is asserting rights to these accounts. To successfully perform these tasks, the commencement of rehabilitation proceedings is urgent.

### A. Debtor's Business in Rehabilitation Proceedings - KYC Tasks and FTX Rehabilitation Claim Recovery Tasks

If rehabilitation proceedings proceed for the debtor, the business of the debtor to be performed by the Receiver is to recover rehabilitation claims in the US FTX Chapter 11 Rehabilitation Proceedings. To do that, KYC tasks must be performed first. KYC tasks are not simply sending identity verification documents. In the US, KYC

procedures are an important task for companies engaged in financial transactions. In the case of Attestor (Svalbard's parent company), which traded with the debtor in this case, a separate business department in charge of KYC is established, where experts perform the tasks.

The reason why KYC tasks require separate experts is that the US government is sensitive to crimes such as terrorism and drugs, so the enforcement of various laws requiring KYC is very strict, and sanctions for violations are severe. On the other hand, the situations where the identity of the counterparty must be verified and the connection with crime must be examined are diverse, so expertise is needed to judge the conditions for KYC approval and whether to allow it. When a KYC problem occurs in a company engaged in financial-related transactions, huge profits are made if the problem is solved by engaging in activities such as negotiation, cooperation, and fulfillment of conditions with the counterparty to pass KYC. This is because KYC prerequisites for financial assets to be tradable are met, allowing them to be traded at their original value, or the value of assets lowered due to KYC issues is increased by the activities of experts. Currently, the rehabilitation claims for which Attestor is consulting with FTX regarding similar issues are known to be approximately KRW 1 trillion or more. KYC of the account under Lemma's name in the FTX Chapter 11 Rehabilitation Proceedings is also a difficult task that the Korean Receiver must resolve with the help of US experts.

On the other hand, just because KYC is completed does not mean dividends are automatically deposited into the account. In the case of the debtor in this case, repayment according to the general dividend plan is impossible due to the delay in KYC, so after succeeding in KYC, the dividend schedule must be newly determined through negotiation with FTX. Consulting with FTX to ensure the dividend schedule is set favorably for creditors is also an important task for the Receiver to perform.

**B. Negotiation Tasks with Svalbard**

Once KYC is passed, the remaining procedures for the dividend of rehabilitation claims will proceed through consultation with FTX. In this process, while responding to the lawsuit filed by Svalbard, who asserts rights to this account, in the New York State Court, negotiations must be conducted in parallel to remove legal obstacles preventing the withdrawal of dividends. Concluding the dispute with Svalbard advantageously is one of the major tasks the Receiver must perform. This task is a business negotiation in the true sense with Attestor, who seeks to create and maximize its own economic profits through the business opportunity of buying claims in the international distressed debt market.

**C. Utilization of Receiver's US Team**

Through the process undertaken over the past 8 months, incurring significant costs such as attorney fees in the US, the Petitioners obtained a decision to exclude the application of the KYC deadline, enabling the debtor's Korean creditors to assert their rights. For this task, attorney SUNG Ungkyu, licensed in New York, led the formation of a US team comprising experts in virtual assets and bankruptcy attorneys. Finding attorneys and experts with expertise who could also bill reasonable fees was not easy. Also, since both the creditors and the

debtor are Koreans residing in Korea, both Korean law and US law had to be considered, and it took several months to establish a system for smooth communication between Korean experts and the US team. The Petitioners believe that the continued activity of this team, which has been handling the US proceedings so far, is the most effective and efficient way for the Receiver in this case to receive dividends in the FTX rehabilitation proceedings.

If bankruptcy proceedings are conducted for the debtor, a bankruptcy trustee will be appointed from the Seoul Bankruptcy Court's list of individual bankruptcy trustees, but it is uncertain whether that bankruptcy trustee will proceed with the Chapter 11 rehabilitation proceedings in the US with the existing US team, and it is also questionable whether effective communication with the US team will be possible. Furthermore, it would not be easy for the bankruptcy trustee to form a new team with the same level of expertise and economic efficiency as the team that has handled the US proceedings so far to respond to the US proceedings, and even if a better team were formed, it would take a lot of time, so it is doubtful whether the KYC tasks, which must be carried out without spare time, could be performed properly.

Going forward, proceeding with the Chapter 11 rehabilitation proceedings in the US will require more costs than the legal fees (approximately USD 2 million) spent by the Petitioners so far. If the debtor's property cannot cover these costs, external borrowing will be necessary to continue the US proceedings. Since the Petitioners judge that it is economical and efficient for the team that has successfully conducted the US proceedings so far to continue handling the legal proceedings in the US under the supervision of the Receiver, they intend to provide funds if external borrowing is needed to finance the costs involved.

**D. Realization of Early Repayment through Agreement of Parties**

Even if the Receiver of this rehabilitation proceeding receives dividends from FTX, various legal challenges must be resolved before creditors actually receive repayment. Since the debtor's transactions with creditors involved 'virtual assets' rather than general goods or cash, and legal issues related to virtual asset transactions have not yet been resolved, it is expected that various legal issues will be contested in this case as well. Among them, we will illustrate a few easily foreseeable issues.

First is the issue of interpreting contracts with the debtor. The contracts the debtor entered into with creditors can generally be divided into investment contracts and loan contracts, but in some cases, it is not clear whether each contract is a typical investment contract where the creditor bears all profits and losses or a Bitcoin loan contract where the same amount of virtual assets (e.g., 10 Bitcoins) must be returned, so disputes over the interpretation of contracts are expected.

Second is the issue of rights of the depositor. Currently, the rehabilitation claim the debtor holds against the FTX insolvency estate is the right to two accounts, and it is possible to verify whose name the virtual assets deposited in these accounts were under. For example, it can be confirmed that approximately 83% of the virtual assets deposited in Account 2 were deposited under the Petitioners' names, approximately 16% under the debtor's name, and approximately 1% under the names of two other individuals. Among those claiming to be creditors,

there are creditors with deposits in their own names and creditors without deposits in their own names.

In this situation, when receiving dividends from FTX, legal disputes are expected regarding whether creditors with virtual asset deposits in their own names will first receive dividends from the dividend amount of the account in proportion to their deposit amount, and receive the remaining unpaid amount from what was deposited under the debtor's name together with other creditors without deposits in their own names, or whether all dividend amounts will be combined regardless of the depositor's name and distributed pro rata among all creditors.

Third is the issue of determining the rehabilitation claim amount. Since most transactions with the debtor were virtual assets, the issue is at what point in time the virtual asset price should be used to calculate the rehabilitation claim value. Classifying creditors by type, they can be divided into cases where investment or lease was made before the commencement of FTX rehabilitation proceedings and cases where investment or lease was made after the commencement of FTX rehabilitation proceedings. In the case of investments where all profits and losses resulting from virtual asset operation belong to the investor, the amount receivable in the FTX rehabilitation proceedings can be viewed as the price of the rehabilitation claim. However, in cases of investment after the commencement of FTX rehabilitation proceedings or where a claim for damages exists due to the debtor's fraudulent acts, the question remains as to which point in time should be used as the basis for the value of the relevant virtual assets. In addition, in the case of avoidance, it must also be determined at which point in time the value to be added to the total claim amount upon avoidance and the value to be returned to the debtor should be based.

In the case of leases, there can be various views on the base time for the claim for return of leased property. Possible base times include the commencement of FTX rehabilitation proceedings, the time of lease, the end of the lease contract, and the commencement of the debtor's rehabilitation proceedings. Since the price at the commencement of the FTX Chapter 11 Rehabilitation Proceedings was quite low and there was a sharp price increase thereafter, the rehabilitation claim amount varies greatly depending on what is used as the base time, so disputes are expected regarding this.

The table below shows how the value of the rehabilitation claim in the rehabilitation proceedings for the debtor varies depending on the point in time at which the virtual asset is valued for each creditor. In the table below, the commencement date of rehabilitation for the debtor is assumed to be March 27, 2025, and the value of virtual assets follows the price list on coinmarketcap.com.

[Table 4] Rehabilitation Claim Amounts by Scenario[26]

|  | Scenario 1 | Scenario 2 | Scenario 3 | Scenario 4 |
|---|---|---|---|---|
| Lease | BANG Junho Rehabilitation Commencement Date | BANG Junho Rehabilitation Commencement Date | BANG Junho Rehabilitation Commencement Date | Transaction Date |
| Investment before Nov 11, 2022 | FTX Rehabilitation Commencement Date | FTX Rehabilitation Commencement Date | FTX Rehabilitation Commencement Date | FTX Rehabilitation Commencement Date |
| Investment after Nov 11, 2022 | BANG Junho Rehabilitation Commencement Date | Transaction Date | Transaction Date | Transaction Date |

26) These are figures for calculation and do not imply that the Petitioner acknowledges such facts.

| Transaction Subject to Avoidance | BANG Junho Rehabilitation Commencement Date | | BANG Junho Rehabilitation Commencement Date | | BANG Junho Rehabilitation Commencement Date | | BANG Junho Rehabilitation Commencement Date | |
|---|---|---|---|---|---|---|---|---|
| **Investor** | **Scenario 1** | | **Scenario 2** | | **Scenario 3** | | **Scenario 4** | |
| | Avoidance O | Avoidance X | Avoidance O | Avoidance X | Avoidance O | Avoidance X | Avoidance O | Avoidance X |
| Haru | 46.82 | 46.82 | -71.50 | 83.15 | -72.59 | 83.13 | -161.03 | 105.73 |
| LIM Hyungcheol | 78.20 | 78.20 | 143.26 | 57.79 | 145.45 | 57.78 | 322.67 | 73.49 |
| CHOI Jiwoong | 62.42 | 62.42 | 105.78 | 42.67 | 107.39 | 42.66 | 161.08 | 36.69 |
| Traum | 67.66 | 67.66 | 115.93 | 46.77 | 117.69 | 46.76 | -25.14 | 11.93 |
| Minor Creditors | -0.20 | -0.20 | 2.46 | 9.77 | -0.35 | 9.82 | 5.00 | 12.31 |

Meanwhile, since cryptocurrency investment and lending to the debtor were carried out through several stages, many entities are involved.[27]) Moreover, as mentioned above, there are various legal challenges. There is a concern that numerous disputes may arise among numerous interested parties, and in bankruptcy proceedings, these various issues can only be resolved through litigation. If various legal issues have to be resolved through litigation, it is difficult to gauge when creditors will receive repayment. On the other hand, in rehabilitation proceedings, the scope of disputes can be significantly reduced by creditors agreeing on various issues that may be raised through the rehabilitation plan. Since there is a high possibility of resolving legal issues through agreement among creditors without going through legal disputes in rehabilitation proceedings, the application for commencement of rehabilitation proceedings was made to seek early repayment through rehabilitation proceedings.

## 7. Opinion on Receiver



Since the debtor is incarcerated, a third-party Receiver must be appointed. The Petitioners hope for OH Soogeun, Professor Emeritus at Ewha Womans University Law School, as the Receiver. Professor OH Soogeun is a drafter of the Debtor Rehabilitation Act and has played a pivotal role in the development of Korea's insolvency laws. Since 2000, he has represented the Korean government in various international organizations such as the IMF, World Bank, ADB, and OECD, and notably, while actively working at the United Nations Commission on International Trade Law (UNCITRAL) for 15 years, he served as Chair of the Commission, Chair of Working Group III, and Vice-Chair of Working Group V. Also, having participated as an expert witness in international arbitration cases and US lawsuits multiple times, he has a high understanding of US proceedings. Recently, he served as an arbitrator in a Hong Kong international arbitration case (refer to Exhibit A-26 OH Soogeun Resume).

The Petitioners' hope for Professor OH Soogeun as the Receiver is not solely due to his past career. The Petitioners were able to confirm his capability and suitability in the process of obtaining an expert opinion on Korean law to submit an application for change of creditor name to the US Bankruptcy Court for the District of Delaware. The US team conducting the US legal proceedings experienced many difficulties in understanding the relevant Korean law in the process of establishing strategies and drafting the application. This was because they could not find an expert who was well-versed in Korean insolvency law, had an understanding of US insolvency proceedings, and had no difficulty communicating in English (refer to Exhibit A-27 Progress of US Proceedings,

---

27) For example, the virtual assets of people who invested in the so-called "Haru" appear to have moved along the path of "Investor -> Haru Invest -> Haru Management -> Haru United -> B&S Holdings -> Debtor BANG Junho".

pages 7-8). However, as Professor OH Soogeun agreed to draft and submit the opinion and began dialogue with the US team, the US team was greatly satisfied as they could understand everything they were curious about regarding Korean law and receive an evaluation from the perspective of Korean law on the strategy for US legal proceedings. The US team strongly hopes to work with Professor OH Soogeun in the progress of US legal proceedings after the commencement of Korean rehabilitation proceedings.

A third-party Receiver for a general rehabilitation company would typically be someone with experience in corporate management. However, the business the Receiver will perform in the debtor's rehabilitation proceedings is to receive repayment of rehabilitation claims in the FTX Chapter 11 Rehabilitation Proceedings pending in the US Bankruptcy Court for the District of Delaware. Specifically, permission to perform KYC must be obtained from the Delaware Bankruptcy Court and FTX. Also, resources to distribute to creditors must be secured by successfully selling rehabilitation claims by resolving legal issues between Lemma and Svalbard. To this end, communication with US attorneys specializing in virtual assets and bankruptcy is required, and understanding of insolvency proceedings in both Korea and the US is needed to make important decisions during the US proceedings. On the other hand, in Korea, sales, personnel, and production management usually required in corporate management are not necessary; rather, the ability to take legal measures such as litigation related to various anticipated legal issues and, if necessary, seek resolution through negotiation among interested parties is required. In this respect, Professor OH Soogeun is considered suitable as the Receiver for this case.

## 8. Debtor's Opinion



The debtor's position is that he actively agrees to the application for and commencement of rehabilitation proceedings in this case. Rather, he is grateful that the Petitioners filed the application for commencement of rehabilitation proceedings while he is detained and has limitations on time, costs, and access to information.

## 9. Conclusion

In the case of the debtor, it is clear that it falls under the case where there is a concern that facts constituting a cause for bankruptcy may occur to the debtor. Furthermore, considering that the feasibility of the debt repayment plan for domestic creditors is high if a Receiver is appointed for the debtor and receives repayment of rehabilitation claims from the FTX Chapter 11 Rehabilitation Proceedings currently in progress in the US, commencing rehabilitation proceedings for the debtor would be more suitable for the general interest of creditors. Considering the above circumstances comprehensively, please render a decision to commence rehabilitation proceedings for the debtor.

### Substantiating Materials

[Materials regarding the Amount and Cause of Claims Held by Petitioners]

1. Exhibit A No. 1          Discretionary Investment Contract (Petitioner LIM Hyungcheol)

1. Exhibit A No. 2          Loan Certificate (Petitioner LIM Hyungcheol)

1. Exhibit A No. 3          Notarized Deed of Debt Repayment Contract (Petitioner CHOI Jiwoong)


**[Materials regarding Other Procedures or Dispositions regarding Debtor's Property]**

1. Exhibit A No. 4          My Case Search (Seoul Bankruptcy Court 2024Hadan102153)

1. Exhibit A No. 5          Notice of Filing of Complaint in New York State Court

1. Exhibit A No. 6-1        Motion Submitted by Petitioners

1. Exhibit A No. 6-2        Korean Summary of Motion Submitted by Petitioners

1. Exhibit A No. 7          My Case Search (Seoul Central 2023Gahap74398)

1. Exhibit A No. 8          My Case Search (Seoul Central 2024Gahap72375)

1. Exhibit A No. 9          My Case Search (Seoul Central 2024Kadan801368)

1. Exhibit A No. 10         My Case Search (Seoul Southern 2024Choi3063)

1. Exhibit A No. 11         My Case Search (Supreme Court 2025Do3712)


**[Materials regarding Debtor's Assets, Liabilities, and Other Financial Status]**

1. Exhibit A No. 12         Deposit and Withdrawal Details (Before and After FTX Collapse)

1. Exhibit A No. 13         Rehabilitation Claim Amounts by Scenario

1. Exhibit A No. 14         Calculation Method Proposed by Attestor to Petitioner LIM Hyungcheol

1. Exhibit A No. 15         Calculation Method Proposed by Attestor to Petitioner CHOI Jiwoong

1. Exhibit A No. 16         Summary of Investor Deposit and Withdrawal Amounts Prepared by Debtor


**[Other Substantiating Materials]**

1. Exhibit A No. 17         Judgment (Seoul Southern District Court Judgment 2024Gohap54 decided August 13, 2024)

1. Exhibit A No. 18         Order of Delaware Bankruptcy Court dated February . , 2025

1. Exhibit A No. 19         Notice of Delaware Bankruptcy Court dated April 2, 2025

| | |
|---|---|
| 1. Exhibit A No. 20 | FTX Response to Motion Submitted by Petitioners |
| 1. Exhibit A No. 21 | FTX Rehabilitation Plan Article 2.1.129 (Excerpt) |
| 1. Exhibit A No. 22 | FTX Rehabilitation Plan Article 7.14 (Excerpt) |
| 1. Exhibit A No. 23 | FTX Rehabilitation Plan Article 2.1.197 (Excerpt) |
| 1. Exhibit A No. 24 | Certificate dated September 26, 2023 |
| 1. Exhibit A No. 25 | Letter of Commitment |
| 1. Exhibit A No. 26 | Resume of OH Soogeun |
| 1. Exhibit A No. 27 | Progress of US Proceedings |

## Attached Documents

| | |
|---|---|
| 1. The Above Substantiating Materials | 1 Copy Each |
| 1. Power of Attorney | 1 Copy |

April 9, 2025

Counsel for Petitioners

Law Firm Songwoo

| | |
|---|---|
| Attorneys in Charge | LEE Jinman |
| Attorneys in Charge | JUNG Dooho |
| Attorneys in Charge | LEE Hayoung |

# TO: Seoul Bankruptcy Court

# 회생절차 개시명령 신청서

신청인    1. 임형철(910315-1076212)

        서울 서초구 잠원로 37-48, 202동 503호 (잠원동, 신반포4차아

        파트)

    2. 최지웅(720919-1074419)

        서울 서초구 동광로30길 15, 102호 (방배동, 다움7차샤인힐)

    신청인들 대리인 법무법인 송우

    담당변호사 이진만, 정두호, 이하영

    서울 서초구 서초대로 254(서초동) 609호

채무자    방준호(940626-1188229)

    서울 강남구 삼성로 651, 106동 2404호 (삼성동, 래미안 라클래시)

    송달장소 서울 송파구 정의로 37(문정동) 서울동부구치소

## 신 청 취 지

채무자에 대하여 회생절차를 개시한다.

라는 결정을 구합니다.

## 신 청 원 인

# 1. 채무자의 개요 및 신청인들과 채무자의 관계

## 가. 채무자의 개요

채무자 방준호는 1994년 6월 26일생 대한민국 국적의 남자로, 2013년 2월 경기과학영재학교를 졸업했고, 2019년 2월 서울대학교 산업공학과를 최우등으로 졸업했습니다.

채무자는 2018년 말 국내 암호화폐 시장의 급성장으로 거래소간 가격 차이를 이용한 아비트라지(arbitrage, 차익거래) 기회가 큰 것을 알고 암호화폐 시장에서 시스템 트레이딩으로 상당한 수익을 올릴 수 있을 것이라 생각해 당시 학교 동문이던 3명과 함께 창업하여 시스템 트레이딩 프로그램을 개발했습니다. 이후 다양한 시장 중립형 전략을 개발하고 운용하면서 각종 암호화폐를 운용하였는데, 같이 창업했던 3명은 퇴사하고 2020년도부터는 채무자 혼자서 회사를 운영했습니다.

채무자는 2021년 10월에는 비씨디테크 주식회사를 인수(대표이사 송준, 채무자와 송준이 7:3의 비율로 지분 보유)하여 사명을 어벤투스로 바꾸고 암호화폐 시스템 트레이딩 프로그램 개발 및 운영 사업을 시작했습니다. 채무자는 직접 또는 어벤투스[2022. 7. 22. 사명을 비앤드에스홀딩스(B&S Holdings, 이하 "비앤드에스"라 함)로 변경]를 통하여 여러 투자자와 투자일임계약을 체결하거나 투자자 계좌의 가상자산을 시스템 트레이딩 프로그램에 따라 운용하였습니다.

채무자는 국내의 여러 법인과 개인으로부터 투자 위탁을 받거나 임대를 받은 가상자산을 대부분 미합중국(이하 "미국"이라고만 합니다) 가상거래소 FTX에 예치하였으나 FTX가 미국에서 도산절차에 들어감에 따라 출금이 어려워져 재정적 파탄에 이르렀습니다. 채무자는 위 FTX 도산절차에서 배당을 받아야만 비로소 국내 채권자들에게 변제할 수 있는데 현재 변제를 받을 수 없는 상태에 있습니다(이에 대해서는 아래 '4. FTX 배당금 수령을 위한 과제, 가. KYC'에서 자세히 말씀드리겠습니다). 채무자는 2024년 특정경제범죄가중처벌등에관한법률위반(사기)죄[1]로 징역 10년형을 선고받아 현재 서울동부구치소에 수감되어 있는 상황입니다. 위 형사사건은 현재 상고심 계속중입니다.

## 나. 신청인들과 채무자의 관계



신청인 임형철은 2022. 6. 24. 채무자에게 자산운용을 위임한 사람으로, 투자일임계약을 체결하고 채무자에게 50,000,000 USDC[2]의 운용을 위임하였습니다[소갑제1호증 투자일임계약서(신청인 임형철)]. 그런데 위 계약기간이 만료된 2022. 12. 4. 이후에도 채무자는 신청인 임형철에게 투자수익금은 커녕 투자원금도 상환하지

---

1) 채무자는 FTX에 예치한 가상자산의 출금지연사태가 시작된 2011. 11. 6. 이후, 심지어는 2022. 11. 11. FTX 도산절차가 개시된 후에도 투자자산이 어디에서 운용되고 있는지에 대한 투자자들의 문의에 FTX에 예치되어 인출할 수 없다는 사실을 숨긴 채 FTX에서 대부분 인출하였으며 인출하지 못한 부분도 자신의 재산으로 충분히 상환할 수 있다고 설명하고 추가로 투자나 임대를 받기도 했습니다. 법원은 이러한 행위가 기망에 해당한다고 판단하였습니다[소갑 제17호증 판결문(서울남부지방법원 2024. 8. 13. 선고 2024고합54 판결)].
2) USDC는 영어 "United States Dollar Coin"의 약자로 미국 매사추세츠주 회사인 서클(Circle)이 발행하는 미화 스테이블코인(기존 화폐에 고정되는 가치를 가지고자 하는 암호화폐)입니다.

않았습니다. 채무자는 이후 2023. 5. 31. 신청인 임형철에게 89,458,253,549원의 채무가 있음을 인정하고, "손실액 상환계획서"라는 제목의 문서에 표시한 자산을 2023. 6. 1.자로 임형철에게 이전하고 잔금(위 채무액과 위 자산 가액의 차액)도 지급하겠다고 약속하였습니다(소갑 제2호증 차용증(신청인 임형철)). 그러나 채무자는 자산 이전을 위한 절차(채권양도의 통지 등)를 아무것도 완료하지 않았고, 당연히 잔금도 지급하지 않았습니다.

신청인 최지웅은 2022년 6월경부터 채무자의 대리인 송준을 통하여 채무자에게 자산운용을 위임한 사람으로, 신청인 최지웅과 채무자는 2023. 6. 6. 채무자가 신청인 최지웅에 대하여 90,160,000,000원 상당[3]의 손해배상채무가 있음을 인정하고 이를 2023. 6. 10.까지 지급하기로 하는 내용의 채무변제계약공정증서를 작성하였습니다[소갑 제3호증 채무변제계약공정증서(신청인 최지웅)]. 그러나 채무자는 신청인 최지웅에게 이를 지급하지 않았습니다.

즉, 신청인들은 채무자에 대하여 5천만 원 이상의 금액에 해당하는 채권을 가진 채권자(채무자회생법 제34조 제2항 제2호 가목)들입니다.

## 2. 채무자의 재정적 파탄

### 가. 가상자산 거래소 FTX의 도산

---

3) 제10조(특약)에서 "손해배상금은 암호화폐 2,297.45 BTC(비트코인), 603.346 ETH(이더리움), 현금 80억 원 및 1,695,211달러에 대한 손해배상금이며, 위 암호화폐, 현금, 미화로 정산하는 것을 원칙으로 한다"고 정하고 있습니다.

채무자는 국내의 여러 법인과 개인으로부터 투자 위탁을 받거나 임대받은한 가상자산을 대부분 미국 가상자산 거래소인 FTX에 예치해서 운영했습니다. 그런데 FTX는 2022년 11월 11일 미국 델라웨어 연방도산법원(United States Bankruptcy Court for the District of Delaware)에 미국 연방도산법(United States Bankruptcy Code) 제11장 기업재건절차(Corporate Reorganization Proceedings, 이하 "제11장 회생절차"라고 합니다)를 신청했습니다[4]. 미국 연방도산법에 따라 FTX에 대한 제11장 회생절차가 신청과 동시에 개시되었고 모든 계좌의 출금이 중지되었습니다. 그 결과 채무자는 아직까지 FTX로부터 채권을 전혀 지급받지 못하였고, 연쇄적으로 자신의 채권자들에게도 변제를 하지 못하는 채무불이행 상태가 계속되고 있습니다.

델라웨어 도산법원은 2023년 12월 27일 FTX의 채권자들이 가지고 있는 각 채권의 금액을 FTX 제11장 회생절차 개시일인 2022년 11월 11일 기준으로 확정하여 발표하였습니다(DOC 5202). 이에 따르면 채무자가 현재는 본인이 파나마에 설립한 렘마테크놀로지스(Lemma Technologies, 이하 "렘마"라고만 합니다) 명의로 보유하고 있는 두 개의 계좌(FTX 799 계좌 및 FTX 765 계좌, 이하 각각 "계좌 1", "계좌 2"라고만 합니다) 중 계좌 1의 가액은 미화 1억 6백만 달러(이하 "미화"는 생략합니다), 계좌 2의 가액은 5,900만 달러로, 채무자는 FTX에 대하여 합계 1억

---

[4] 채무자의 거래 상대방은 FTX Trading Ltd. 였고 FTX 그룹에는 이 외에도 Alemada Research LLC 등 많은 관계회사가 있었는데 이들 모두가 집단적으로 제11장 회생절차에 들어갔습니다. 2025. 1. 3. 발효된 제2차 변경 회생계획에 따라 회생채권 변제를 위하여 FTX Recovery Trust가 설립되었습니다. 이 신청서에서는 FTX 그룹과 소속 주체를 통칭하여 "FTX"로 지칭하겠습니다.

6,500만 달러의 회생채권을 가지고 있습니다. 2024. 10. 7. 인가되어 2025. 1. 3. 발효된 제2차 변경 회생계획에 따르면 FTX는 채권금액의 143%를 변제하도록 되어 있어 채무자(현재는 렘마입니다)가 이론적으로 변제받을 수 있는 명목금액은 2억 3,595만 달러(1억 6,500만 달러 × 143%)에 달합니다. 다만 이 금액이 언제 지급될지는 미정입니다. 5만 달러 미만의 채권에 대해 변제가 진행되었으며, 5만 달러 이상의 채권에 대한 첫 번째 변제가 2025. 5. 30. 로 예정되어 있으나 아직 채권금액의 몇 퍼센트가 첫 번째 변제금으로 지급될 수 있을지는 발표되지 않았습니다. 전문가들은 향후 5년~10년에 걸쳐 변제가 모두 이루어질 것으로 보고 있으며, FTX가 자산을 계속 처분하여 배당재원을 마련하고 있어 만일 이 기간동안 변제재원이 늘어나면 전체 배당액을 상향조정할 수 있습니다.

상당수의 채권자들은 FTX의 변제를 기다리지 않고 FTX 회생채권을 국제 도산채권시장에서 매각하여 신속히 현금화하는 방법을 취합니다. 수년에 걸쳐 변제를 받지 않고 회생채권을 제3자에게 매각을 하고자 하는 경우에는, FTX측 배당재원 증가에 대한 기대로 인해, 회생계획에서 인가된 배당률인 143%와 비슷한 비율의 매각대금을 받고 채무자의 회생채권을 매각을 할 수 있습니다.

그러나 이 사건 채무자의 경우는 FTX 회생채권을 갖고 있다고는 하나 변제를 받을 자격을 얻지 못하고 있습니다. FTX로부터 배당을 받기 위해서는 KYC(Know Your Customer, 고객의 신원을 확인하는 제도) 절차가 선행되어야 하는데 채무자는 아직 KYC 절차를 완료하지 못했고 현재 수감 중이어서 앞으로도 KYC 절차를 완료하지 못할 것으로 예상됩니다. 이 점은 아래 '4.의 가항'에서 상세히 설명드리겠

습니다.

## 나. 스발바드와의 분쟁

채무자는 FTX에 대한 청구권(회생채권)을 매각하여[5] 자금을 회수하기 위해 2023년 1월 파나마에 렘마를 설립하고 같은 달 18일 자신의 명의로 있는 FTX 두 계좌의 모든 자산을 렘마에 이전했습니다[소갑 제5호증 뉴욕주 법원 소장 접수통지 첨부 증거 A (PDF 파일 18~24쪽)]. 이어서 채무자는 렘마의 대표자 자격으로 스발바드홀딩스(Svalbard Holdings Limited, 이하 "스발바드"라고만 합니다)[6]와 계좌 1, 2에 관한 청구권을 모두 양도하는 계약(Trade Confirmation)을 체결했습니다 [(소갑 제5호증 뉴욕주 법원 소장 접수통지 첨부 증거 B (PDF 파일 25~27쪽)]. 위 계약에 따르면 스발바드는 렘마에 회생채권액의 35%를 지급하게 되어 있습니다. 계약 이후 스발바드는 방준호의 투자자들이 본 계약의 이행에 서면동의를 할 것을 요청하며 계약 이행을 지체하였으나, 시간이 흐르면서 FTX의 자산회수(환가금)가 증가해 FTX 회생채권의 시장 가격이 급격히 상승하자 적극적으로 계약의 이행을 성사시키려 하였습니다. 2023년 9~11월경 인수가격 재조정을 위한 협상을 진행하려 하였으나 채무자 측과 합의에 이르지 못했습니다. 이에 스발바드는 2024년 1월 19일 렘마를 상대로 미국 뉴욕주 법원에 매매계약의 이행 및 채무불이행에 기

---

5) 전세계적으로 FTX의 회생채권을 매수하는 기업이 여럿 있습니다(Attestor, Farallon, Silver Point 등). 이들 기업은 매수가격과 향후 실제 추심가격의 차액을 취하는데 300만 달러 이상 고액 채권의 경우 2025년 3월 25일 현재 매수가격은 회생채권액의 143%~148% 정도입니다.

6) 스발바드는 FTX 회생채권의 전문 매수회사 중 규모가 가장 큰 회사인 아테스토 리미티드 (Attestor Limited, 이하 "아테스토"라고만 합니다)의 자회사입니다. 아테스토는 영국에 본사를 둔 자산운용사이고 2024년 6월까지 매입한 FTX 회생채권의 매수규모는 8억 12만 달러로 전체 매수업체에서 최고치를 기록한 것으로 알려져 있습니다.

한 손해배상을 청구하는 소를 제기하였습니다(소갑 제5호증 뉴욕주 법원 소장 접수 통지). 위 소송은 현재 송달을 위한 절차가 진행 중입니다. 따라서 가사 위 가.항에서 말씀드린 KYC 절차가 완료되더라도, 배당금이 해당 계좌에 입금되는 단계 또는 입금된 배당금을 인출하는 단계에서 스발바드가 위 소송을 포함하여 여러가지 법적 방해를 할 것으로 예상됩니다.

## 다. 계속 중인 소송

현재 채무자와 관련하여 계속 중인 소송 등 법정 절차는 다음과 같습니다(소갑 제4 내지 11호증).

- 채무자에 대한 파산절차개시신청(서울회생법원 2024하단102153)
- 신청인들이 미국 델라웨어 도산법원에 제출한 채권자 명의 변경 신청(MOTION OF HYUNG CHEOL LIM, AIMED, INC., BLOCORE PTE., LTD., JI WOONG CHOI, AND MOSAIC CO. LTD. FOR AN ORDER, PURSUANT TO RULES 3001 AND 3020(d) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND 11 U.S.C. §§ 105(a) AND 1142(b), FOR LEAVE TO AMEND PROOF OF CLAIM NO. 87144 TO CORRECT CLAIMANT'S NAME AND ADDRESS, 이하 "모션"이라고만 합니다)
- 스발바드가 렘마를 상대로 미국 뉴욕주 법원(Supreme Court of the State of New York, Count of New York)에 제기한 계약이행 및 손해배상청구소송 (Svalbard Holdings Limited versus Lemma Technologies Inc., Index No. 650457/2024)

- 트라움 임포테크가 채무자와 송준을 상대로 제기한 대여금반환청구의 소(서울중앙지방법원 2024가합72375)

- 하루 유나이티드가 채무자 외 3명을 상대로 제기한 손해배상청구의 소(서울중앙지방법원 2023가합74398)

- 하루 유나이티드의 위 손해배상청구권을 피보전채권으로 하는 채권가압류신청에 따라 이루어진 채권가압류결정(서울중앙지방법원 2024. 3. 21.자 2024카단 801368 결정) 및 제3채무자 FTX에 대한 진술 최고 및 제출 명령

- 검사의 청구에 따른 채무자 재산에 대한 추징보전결정(서울남부지방법원 2024초 기3063)

- 채무자에 대한 형사사건 상고심(대법원 2025도3712)

## 3. 청산가치와 계속기업가치

### 가. 채무자의 재산

### (1) FTX 배당금

채무자는 투자자로부터 받은 가상자산을 미국 가상자산 거래소 FTX에 예치하여 운영하였는데 FTX에 대하여 제11장 회생절차가 개시됨에 따라 예치한 가상자산을 인출하지 못하고 있습니다. 채무자의 회생채권은 1억 6,500만 달러로 확정되었고 FTX 회생계획에 따르면 회생채권의 143%를 변제받게 됩니다. 다만 변제시기는 미정입니다. 5만 달러 미만의 회생채권은 변제가 진행되었으며, 5만 달러 이상의 회생

채권은 2025. 5. 30.이 제1차분 변제일로 예정되어 있습니다.

FTX에 대한 제11장 회생절차에서 배당을 받기 위해서는 먼저 KYC를 하여야 하는데 채무자는 아직 KYC를 완료하지 못했습니다. 신청인들이 FTX 제11장 회생절차에서 미국 델라웨어 도산법원에 제출한 채권자 명의변경 신청[7] (이하 "모션"이라고만 합니다)에 대한 FTX의 답변에 따르면 앞으로도 완료할 수 없을 것으로 보입니다. KYC를 완료하지 못하면 법원의 명령(2025년 2월 3일, DOC 29464)에 따라 회생채권이 부인되고 실권되어("disallowed and expunged") FTX로부터는 아무런 배당금도 받을 수 없습니다(소갑 제18호증 델라웨어 도산법원 2025. 2. 3.자 명령). 이렇게 되면 채무자의 FTX에 대한 채권은 아무런 변제도 받지 못한 채 그 변제에 사용될 재원은 FTX의 다른 채권자들에게 변제되고 FTX 제11장 회생절차가 종료됩니다. 채무자가 KYC를 할 수 없는 현재 상황에서 채무자가 램마 명의로 보유하는 FTX 회생채권의 가치는 0이지만 채무자의 회생절차 관리인이 KYC 업무를 성공적으로 수행하고 스발바드와의 분쟁을 원만하게 마무리하여 배당금 수령에 필요한 법적장애를 제거하면 FTX 배당금은 최대 2억 3,595만 달러(1억 6,500만 달러 × 변제율 143%)에 달할 수 있습니다.[8]

---

[7] MOTION OF HYUNG CHEOL LIM, AIMED, INC., BLOCORE PTE., LTD., JI WOONG CHOI, AND MOSAIC CO. LTD. FOR AN ORDER, PURSUANT TO RULES 3001 AND 3020(d) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND 11 U.S.C. §§ 105(a) AND 1142(b), FOR LEAVE TO AMEND PROOF OF CLAIM NO. 87144 TO CORRECT CLAIMANT'S NAME AND ADDRESS

[8] 이 사건 채무자의 회생채권은 후술하는 바와 같이 KYC 문제를 해결할 기회를 FTX로부터 부여받았습니다. 채무자가 KYC에 성공하면 5만 달러 이상 회생채권의 1차 변제일로 예정된 2025년 5월 30일이 아닌 별도의 일정에 따라 변제가 진행될 것으로 예상됩니다.

## (2) FTX 배당금 이외의 재산

신청인들이 파악하고 있는 채무자의 재산은 다음과 같습니다.9)

<표 1> 신청인들이 파악하고 있는 채무자의 재산 목록

| 내용 | 투자/대여액 |
|------|-----------|
| 백두테크놀로지 주식 | 28억 원 |
| 주식회사 원스타트 벤처 스타트업 투자 | 10억 원 |
| 필로소피아벤처스 지분 | 33억 원 |
| 그리트 투자조합 2호, 3호, 투자 (fund) | 2억 원 |
| 스프링 캠프 LP펀드 출자 | 30억 원 |
| 퓨처플레이 LP펀드 출자 | 20억 원 |
| 뮤렉스 LP 펀드 출자 | 5억 원 |
| 주식회사 언박서즈 | 5억 원 |
| 두나무/ 카카오모빌리티 대리투자 (황창현) | 불명 |
| IMM 스타트업 펀드 투자 | 30억 원 |
| 조주형 (친구) | 3억 원 |
| 소풍벤처스 원텐제로 개인투자조합 | 6억 원 |
| 소풍벤처스 임팩트 피크닉/ 임팩트 클라이밋 펀드 | 10억 원 |
| 강남구 삼성로 651 106동2404로 임차보증금 | 5억 원 |
| 최경준 ㈜문리버 주식 양수 | 1억 원 |

9) 신청인들로서는 채무자의 정확한 재산을 알기가 어렵습니다. 여기에서 표시한 재산은 신청인들이 2023년 여름 채무자의 재산파악 목적으로 채무자와 대화를 나누어 채무자의 진술을 기초로 작성한 것입니다.

| | |
|---|---|
| 주식회사 미스쿼드 스타트업 투자 | 불명 |
| 셀렉트 코리아 스타트업 투자 | 2억 원 |
| 엔피엑스–웰컴 메타버스 에듀테크 신기술 투자조합 출자 | 2억 원 |
| 남수균 채권 | 770,000 USDT[10] |
| Tri–star Holdings 해외투자 | 200,000 달러 |
| Pow.Le 해외 투자 | 1백만 달러 |
| ROK Capital 펀드투자 | 1백만 달러 |
| 합계 | 192억 원 + 2,970,000 달러 |

이 가운데 일부는 회수하여 채무변제에 사용한 것으로 보이고 투자액 중 실제 회수할 수 있는 금액이 얼마인지는 불확실합니다. 전액 회수한다고 가정할 때 총액은 약 234억 원입니다.

## (3) 청산가치와 계속기업가치의 비교

지금 채무자의 재산을 청산한다면 회수할 수 있는 금액의 최대치는 약 234억 원 정도입니다(FTX 배당금 0원 + 기타 자산환가액 최대치 234억원).

채무자의 회생절차 관리인이 미국 델라웨어 도산법원의 FTX 제11장 회생절차에서 적극적으로 권리를 주장하여 KYC를 완료하고, 스발바드와의 분쟁을 원만히 해결하여 FTX 배당금을 받아오게 된다면 국내에 있는 채권자들을 위하여 최대 3,300

---

10) USDT는 영어 "United States Dollar Tether"의 약자로 테더(Tether)사가 발행하는 미화 스테이블코인(기존 화폐에 고정되는 가치를 가지고자 하는 암호화폐)입니다.

억 원(= 165,000,000달러 × 143% × 1,400원/달러)을 회수할 수 있게 됩니다. 여러 법적 장애를 제거하는 데 10%의 비용을 치른다고 해도 최대 약 3,000억원을 채권자들에 대한 변제에 사용할 수 있습니다.

채무자가 영위하는 사업은 암호화폐 시스템 트레이딩 프로그램 개발 및 운영 사업입니다. 채무자는 직접 또는 비앤드에스를 통하여 여러 투자자와 투자일임계약을 체결하거나 투자자 계좌의 가상자산을 이전받아 시스템 트레이딩 프로그램에 따라 운용하는 사업을 영위하고 있습니다. 현 단계에서 <u>채무자의 사업은 가상자산 운용 과정에서 가상자산 거래를 위해 이를 맡겨 둔 가상자산 거래소 FTX로부터 배당금을 받아와서</u> 이를 채무자에게 투자한 신청인들을 비롯한 채권자들에게 원리금으로 변제하는 것입니다. 채무자 사업의 청산가치는 약 234억원(전액 회수 가정)인 데 반해 채무자 사업의 계속기업 가치는 최대 약 3,000억 원이어서 회생절차를 진행하는 것이 채권자들에게 큰 이익이 되겠습니다.

## 나. 채무자의 부채

지금까지 신청인들이 파악한 채무자의 부채에 대해 말씀드리겠습니다. 채무자에 대하여 채권을 갖고 있다고 주장하는 이들이 채무자에게 투자하거나 임대한 가상자산의 내역은 아래 <표 2>와 같이 파악하고 있습니다[소갑 제12호증 입출금내역 (FTX붕괴전후). 위 서증은 채무자가 작성하여 2023. 6. 25. 신청인들에게 보낸 엑셀파일로, 그 내용 중 투자자1은 하루, 투자자2는 신청인 임형철(관련 법인 포함), 투자자3은 최지웅(관련 법인 포함), 투자자4는 김두민, 투자자5는 델리오인 것으로

파악되었습니다].


  아래 <표 2>는 FTX 제11장 회생절차의 개시 전후를 불문하고 또 거래의 내용
이 투자인지 임대인지를 불문하고 가상자산 별로 입고된 총량에서 출고된 총량을
차감한 것이어서 채무자에게 반환 의무가 있는 진정한 수량과는 차이가 있을 수 있
습니다. 진정한 수량은 추후 채권조사 절차를 통해서 밝혀져야 할 것입니다.


<표 2> 채무자가 채권자에게 반환할 가상자산 수량 등 (추정)[11]


|  | BTC<br>(비트코인) | ETH<br>(이더리움) | XRP<br>(리플) | USDT<br>(각주10) | USDC<br>(각주2) | SAND<br>(샌드박스) | KRW<br>(원화) |
|---|---|---|---|---|---|---|---|
| 하루 | 4,467 | 25,850 | 34,000,020 | 4,300,000 | 2,900,000 | – | – |
| 임형철 | 11.84 | – | – | 3,573,000 | 57,771,991 | 36,488,812 | – |
| 최지웅 | 1,999.48 | 480.12 | – | – | 1,372,000 | – | 8,000,000,000 |
| 트라움 | 390 | 2,010 | 13,000,000 | – | – | – | – |
| 군소<br>채권자 | 43.31 | 3,955.30 | – | 6,840,057 | – | – | 1,200,000,000 |


  회생절차에서는 위 표의 가상자산의 수량을 금액으로 환산하여 회생채권으로 정
해야 합니다. 가상자산의 가치는 초단위로 변하므로 거래의 내용(투자 또는 임대)
과 거래의 시기(FTX 제11장 회생절차 개시 전 후)를 고려하여 기준 시점을 어떻게
정하는가에 따라 회생채권으로 인정되는 금액이 달라지고 결국 회생채권액도 변동
합니다. 여러 가지 기준에 따른 가격산정의 예를 소갑 제13호증 시나리오별 회생채
권액에서 예시했습니다.


---

11) 추정치이며, 신청인이 이와 같은 사실을 인정한다는 의미는 아닙니다.

아래 <표 3>은 여러 경우의 하나로 아테스토(FTX 회생채권의 전문 매수회사 중 규모가 가장 큰 회사이자 스발바드의 모회사)가 신청인들을 포함한 채권자들의 동의를 받기 위해 작성한 채권자표의 계산방식을 적용한 결과에 따른 채무액입니다 [소갑 제14호증 아테스토가 신청인 임형철에게 제안한 계산방식, 소갑 제15호증 아 테스토가 신청인 최지웅에게 제안한 계산방식, 소갑 제16호증 투자자입출금액정리, 소갑 제12호증 입출금내역(FTX 붕괴 전후)]. 이 표는 투자의 경우는 FTX 제11장 회생절차 개시시를 기준으로 하여 가상자산의 가액을 산정하고 임대의 경우는 거래 시 가격을 기준으로 가상자산의 가액을 산정한 것입니다. 이에 따르면 채무자 채무 총액은 2억 7,750만 달러로 1달러당 1,400원으로 계산하면 한화 약 3,885억원 정 도입니다. 물론 추후 채권조사 확정 과정에서 채권의 존재 여부와 내용이 달라질 수 있고 각 가상자산의 평가시점에 따라 금액이 달라질 것입니다.

<표 3> 아테스토가 제안한 방식에 의해 계산한 채권액의 개요[12]



(단위: 백만 달러)

---

12) 이 표는 아테스토가 2024. 10. 신청인들에게 제공한 제안서에 사용된 계산법을 2023. 10. 채 무자가 신청인들에게 제공한 투자자별 거래기록에 적용하여 하루, 트라움 및 여타 군소 채권자 의 채권가액을 구하는 방식으로 작성된 것입니다. 아테스토가 제안한 방식에 의하여 계산한 것 이며, 신청인이 이와 같은 사실을 인정한다는 의미는 아닙니다.

| 채권자 | FTX 제11장 회생절차 개시 | | 채권금액 |
| --- | --- | --- | --- |
| | 전 | 후 | |
| 하루 | 163.7 | −40.6 | 123.1 |
| 임형철 | 86.2 | −0.2 | 86 |
| 최지웅 | 35.2 | 6.5 | 41.7 |
| 트라움 | 0 | 20.1 | 20.1 |
| 군소채권자 | 2.2 | 4.4 | 6.6 |
| 합계 | | | 277.5 |

## 다. 조사위원에 대한 의견

　일반적인 회생사건에서는 회계법인이 조사위원으로 선임되어 채무자의 청산가치와 계속기업가치를 산정하여 법원에 보고합니다. 그러나 이 사건에서 채무자의 사업은 일반적인 기업 경영을 통한 이익창출이 아니고, 채권자들의 가상자산을 맡겨둔 FTX의 제11장 회생절차에서 배당금을 받아와서 이를 재원으로 채무자에게 투자한 신청인들을 비롯한 채권자들에게 원리금으로 변제하는 것입니다. 이와 같은 변제가 마쳐진 다음 채무자는 계속하여 투자금을 받거나 투자자 계좌의 가상자산을 시스템 트레이딩 프로그램에 따라 운용하는 사업을 영위할 것입니다.

　현재로서 가장 중요한 사업은 KYC 절차를 성공적으로 완료하여 미국 델라웨어 도산법원에서 진행 중인 FTX의 제11장 회생절차에서 회생채권의 배당을 받는 것입니다 따라서 이 신청으로 구하는 채무자에 대한 회생절차에서는 전통적인 의미에서

조사위원의 역할이 필요하지 않을 것으로 생각합니다마는 만일 조사위원을 선임한 다면 이 사건의 조사위원은 미국 법원의 도산절차와 가상자산에 대한 이해가 있는 변호사가 적당하다고 생각합니다.

## 4. FTX 배당금 수령(FTX에 대한 회생채권의 회수)을 위한 과제

### 가. KYC

KYC는 영어 "Know Your Customer"의 약자로 금융거래 시 고객의 신원 확인절 차를 의미합니다. 미국 자금세탁방지법(Anti-Money Laundering Laws) 및 해외자 금 규제 규정(Foreign Assets Control Regulations)은 자금세탁이나 마약조직 또는 테러단체와의 거래 등을 엄격히 금지하고 있는데 KYC는 관련 법을 준수하기 위한 구체적인 방법입니다.

FTX 제11장 회생절차에서 KYC는 다음과 같은 절차로 진행됩니다. FTX가 오픈 한 온라인 포털(https://claims.ftx.com/welcome)에서 정해진 프로그램에 따라 사진 을 찍거나 문서를 업로드하여 신원확인 정보를 제출하면, FTX의 KYC 팀이 제출된 정보를 검토하여 KYC가 통과되었는지를 화면상 표시합니다. 만일 추가 서류나 정 보가 필요한 경우 FTX는 채권자에게 이메일로 구체적인 요구사항을 통지하며, 채 권자가 동 요구사항에 따라 제출한 추가 자료를 FTX가 심사합니다. KYC가 통과되 면 FTX 온라인 포털 개인 페이지에 KYC 지위가 '인증됨(Verified)'으로 표시됩니 다. 추가 자료 요청을 받았는데 제출하지 않거나 제출하였으나 리뷰가 끝나지 않은

경우 '보류(On Hold)'로 표시됩니다. 보류 결정에 대해서는 법원에 제소할 수 있는 절차가 없습니다, 보류 상태에서 KYC 완료 기한을 넘기고, 변제를 받지 못하는 경우에도 법원에 제소할 수 있는 절차가 없습니다.[13]

신청인들은 이러한 위급한 상황을 인지하고 2025. 1. 21. 델라웨어 도산법원에 렘마 명의의 계좌 2에 대한 채권자 명의변경 신청을 하였습니다. 이 신청을 접한 FTX는 신청일 다음 날인 1. 22. 렘마 명의의 두 계좌를 KYC 기한 적용 대상 계좌에서 제외한다고 신청인들의 대리인에게 통보했습니다.[14] 이를 통해 채무자의 채권자들인 신청인들은 2025. 3. 1. 기한의 적용에서 벗어나 다른 KYC를 도모할 기회를 갖게 되었습니다. FTX는 한국에서 회생절차의 진전 상황을 지켜보면서 언제든지 재량으로 다시 KYC 기한을 설정할 수 있습니다. 그렇기 때문에 신청인들은 이 사건 신청을 통해 FTX가 KYC 완료 기한을 새로 설정하기 전에 채무자의 관리인이 KYC를 할 수 있는 방안을 모색하는 것입니다.

---

13) KYC 개시 및 완료 기한 적용되는 채권자들 중 그 기한 내에 KYC를 못한 채권자들은 실권한다는 법원명령에 따라 법원이 최근 KYC 개시기한인 2025. 3. 1.을 도과한 회생채권의 실권을 통보하였습니다(DOC 30042, 2025년 4월 2일, 소명자료 소갑 제19호증 델라웨어 도산법원 2025. 4. 2.자 통지)

14) FTX를 대리하는 설리번 엔 크롬웰(Sullivan & Cromwell) 로펌은 신청인들이 델라웨어 법원에 모션을 제출한 다음 날인 2025. 1. 22. 신청인들의 대리인과의 회의 후 FTX는 채무자의 FTX 회생채권 두 개를 KYC 기한 적용 대상에서 제외한다고 통지하고, 이 결정을 신청인들이 제기한 모션에 대한 답변서(DOC 29582, 2025년 2월 14일)에서 확인하였습니다(소갑 제20호증 신청인들 제출 모션에 대한 FTX 답변서). 아래는 해당 본문 원문과 번역입니다.

"모션 신청인 측 변호인과의 논의에 따라, FTX 회수 신탁은 KYC 이의에서 방과 관련된 계속 중인 회생채권을 제외하였으며, 해당 채권은 별도로 처리할 예정이다."

"Following discussion with the Movants' counsel, the FTX Recovery Trust removed the pending claims associated with Bang from the KYC Objection, and will separately address them."

FTX 제2차 변경 회생계획(2024. 10. 7. 인가, 2025 .1. 3. 발효)은 KYC를 FTX의 재량사항으로 정해놓고 있습니다(회생계획 2.1.129).[15] KYC를 충족시키기 위해 필요한 문서나 정보를 나열한 회생계획 7.14는[16] 예시일 뿐이고, FTX는 재량으로 어떤 자료나 정보의 제공도 요구할 수 있고 그것이 충족되지 않는 경우 KYC를 거부할 수 있습니다. FTX가 KYC 신청을 거부하면 채권자는 법원에 제소할 수 있으나 실무상으로 FTX는 소송을 피하기 위하여 '거부'로 결정하지 않고 '보류' 상태로 두어 채권자가 사실상 권리를 행할 수 없게 합니다. 설사 FTX가 거부결정을 하여 당사자가 법원에서 다툰다고 하여도 FTX가 KYC 거부 결정에 합리적 근거를 조금이라도 가지고 있는 이상 KYC가 원래 FTX의 재량사항으로 규정되어 있기 때문에 법원이 FTX의 손을 들어주기가 쉽다고 합니다.

채무자(방준호)가 사기혐의로 유죄판결을 받고 수감되어 있는 상태에서 채무자 본인은 KYC를 할 수 없습니다. 채권자(FTX에 대한 채권자이므로 이 사건에서는 방준호)가 범법자이고 입금된 자금이 범죄와 연결되어 있을 수 있다고 보기 때문입

---

15) 제2차 변경 회생계획 제2.1.129조는 "KYC 정보는 채무자가 요청하는 고객식별정보를 의미한다(KYC Information" means the know-your-customer information requested by the Debtors)"라고 규정하고 있습니다[소갑 제21호증 FTX 회생계획 제2.1.129조(발췌)]. 이 조항에 따라 FTX는, 고객이 제출하는 문서나 정보에 형식상 하자가 있거나 자신들이 조사하고자 하는 고객식별정보가 내용에 포함되어 있지 않은 경우 뿐만 아니라, FTX가 미리 수집한 정보에 따라 특정 고객의 신원 및 자금 출처에 대해 의심의 여지가 있다고 판단하는 경우에는 특별히 높은 수준의 문서와 정보를 요구할 수 있는 권한을 보유합니다. KYC Information에 대한 이 정의규정에서 중요한 부분은 문장 끝에 위치한 "requested by Debtors"라는 구절입니다. 이 부분이 FTX가 KYC Information의 제출이 충족되었는지를 판단하는 등, KYC 절차를 재량으로 운영할 수 있는 법적 근거가 됩니다.

16) 제2차 변경 회생계획 제7.14조는 개인에게 요청하는 KYC 정보와 기관에게 요청하는 KYC 정보를 "(i) for individuals, may include, among other things, full name [...]" 및 "(ii) for institutional Holders, may include, among other things, company name [...]"와 같은 방식으로 나누어 규정하고 있습니다[소갑 제22호증 FTX 회생계획 제7.14조(발췌)].

니다. FTX는 신청인들이 델라웨어 도산법원에 제기한 채권자 명의 변경 신청에 대한 답변서에서 채무자가 KYC를 할 수 없음을 지적한 바 있습니다(소갑 제20호증 신청인들 제출 모션에 대한 FTX 답변서 9문단).[17]

KYC는 현재 회생채권 보유자뿐만 아니라, 원채권자(Original Customer)[18]도 해야 합니다(회생계획 2.1.197.).[19] 즉, FTX에 대한 회생채권이 양도되면 양도인과 양수인이 모두 KYC를 해야 합니다. 스발바드도 채무자의 KYC가 있어야 양수인으로 KYC를 하고 배당을 받을 수 있습니다. 신청인들은 채무자가 KYC를 할 수 없는 상태에서 해당 계좌에 관련된 KYC를 완료할 수 있는 유일한 방법은, 채권자 명의 변경과 동시에 채무자의 KYC 없이도 신청인들의 KYC만으로 권리행사가 가능하도

---

17) "In addition, to become Allowed Claims, Bang would need to satisfy Original Customer KYC, which may prove impossible." 이 문장은 "더욱이 시인된 채권이 되기 위해서는 방이 원채권자 KYC를 이행해야 하는데, 그것은 불가능할 수 있습니다"로 번역할 수 있습니다. KYC 이행 허부를 판단하는 FTX가 "which may prove impossible"라는 표현을 사용한 것은 "KYC는 불가능하다"는 의미를 우회적으로 표현한 것이라고 합니다. 우리 실무에서 "신중하게 접근할 필요가 있다" 또는 "장기적인 검토가 필요하다"는 표현과 같은 결이라고 생각합니다.

18) 회생절차에 들어갈 당시의 채권자를 가리킵니다.

19) 회생계획 제2.1.197조는 다음과 같이 규정하고 있습니다[소갑 제23호증 회생계획 제2.1.197조(발췌)] 미승인 고객 자격 청구(Unverified Customer Entitlement Claim)란 다음 중 하나에 해당하는 고객 자격 청구를 의미합니다:

(a) 해당 고객 자격 청구의 원고객 또는 권리 보유자가, 채무자가 정하고 법원의 명령으로 정한 기한까지 원고객의 KYC 정보를 제출하지 않은 경우, 또는

(b) 원권리 보유자의 KYC 정보에 대해 채무자가 제기한 이의가 법원의 명령으로 인정된 경우

2.1.197 Unverified Customer Entitlement Claim" means a Customer Entitlement Claim in respect of which

(a) the Original Customer or Holder of such Customer Entitlement Claim has failed to submit KYC Information of the Original Customer by a date determined by the Debtors and approved by order of the Court or

(b) an objection by the Debtors to the KYC Information of the Original Holder has been sustained by order of the Court.

록 하는 것이라고 판단하여, 델라웨어 도산법원에 이와 같은 내용의 신청을 제기한 것입니다.[20]

만약 이 사건 회생절차에서 관리인이 선임되면, 관리인은 채무자와 채무자의 모든 채권자를 대표하여 현재 미국 델라웨어 도산법원에서 진행되고 있는 모션(신청인들이 제기한 것임)의 심리절차에서 관리인이 직접 KYC를 하겠다는 권리 주장을 함으로써 신속하게 채무자의 FTX 회생채권에 대한 KYC를 완료할 수 있을 것으로 기대합니다. 이것이 미국 FTX에 묶여있는 채무자의 재산을 한국으로 가져올 수 있는 가장 빠른 길입니다.

## 나. 스발바드와의 분쟁 해결



채무자는 렘마의 대표 자격으로 2023. 6. 15. 스발바드에게 FTX 회생채권을 매각하기 위해 '거래확인서(Trade Confirmation)'[21]에 서명했습니다. 위 문서에 따르면, 매매가는 FTX 회생채권액의 35%로 하고, 채무자는 채무자와 스발바드의 KYC 절차를 위해 회생채권 양도에 대하여 채무자의 채권자들(신청인들도 이에 해당합니다)의 동의를 받아야 합니다. 그러나 채무자는 신청인들을 포함한 투자자들에게 이 계약의 존재를 알리거나 동의를 구하지 않았고 어떤 채권자도 이 거래에 동의하지

---

20) 계좌 2에 입고된 코인의 83%는 신청인들의 코인이었고, 16%는 채무자의 것이었고, 1%만 제 3자 명의였는데, 채무자가 신청인들에게 변제를 위하여 16%를 양도할 의사를 표했기 때문에 (소갑 제24호증 2023. 9. 26.자 인증서) 실질적으로 계좌 2의 코인 99%의 소유자는 신청인들이 되어서, 이러한 신청을 하게 되었습니다.

21) Trade Confirmation이란 금융상품(채권, 파생상품, 대출채권 등) 거래에 합의한 후 거래조건 (매도인 매수인, 상품명, 금액, 수량, 결제일 등)을 확인하는 문서입니다.

않았습니다. 이에 스발바드는 2024. 1. 29. 렘마를 피고로 하여 뉴욕법원에 매매계약 이행 및 계약위반으로 인한 손해배상을 청구하는 소를 제기하였습니다.

2024년 여름 스발바드는 신청인들에게 접근하여 위 회생채권 양도에 동의를 구하면서 매수가를 회생채권액의 50.5%로 인상하여 제안했습니다.[22] 당시 FTX가 환가하는 가상자산의 가치가 상승하여 FTX 회생채권이 시장에서 액면가의 100%에서 거래되고 있었음에도 불구하고 스발바드는 KYC가 안 되면 신청인들이 한 푼도 받을 수 없음을 강조했습니다. 신청인들은 이 제안을 거부했습니다. 2024. 11. 19. 신청인들과 스발바드 간의 화상회의에서도 별다른 진전은 없었고, 2015. 1. 3. 수정된 제안이 있었지만 합의에 이르지 못했습니다. 2025. 3. 11. 스발바드는 신청인들에게 다시 접근하여(위 계약상 신청인들에게 동의권이 있기 때문에 접근한 것입니다) 신청인들이 수용할 수 있는 가격을 문의하였고 대화 중 채무자의 채권자 모두가 동의하지 않으면 스발바드도 KYC를 하지 못한다는 점을 시인하기도 했습니다.

신청인들의 채무자 명의 변경 신청 이후 스발바드의 협상력은 어느 정도 약화된 것이 사실이지만 스발바드(및 그 모회사 아테스토)는 여전히 FTX 채권시장에서 가장 큰 손이고 법률비용의 부담을 고려하지 않고 법적 공격을 할 수 있는 존재입니다.

---

22) 스발바드의 제안은 FTX 제11장 회생절차 개시시점(2022. 11. 11.) 이전에 FTX에 입금된 투자금은 개시시의 가치로 계산하고 개시 이후 채무자에게 제공된 금액은 투자일 기준으로 계산한 후 각 채권자의 채권액에 FTX 회생채권 액면가(1억 6500만 달러, 채무자의 몫은 고려하지 않음)의 50.5%를 안분비례하는 방안이었습니다.

신청인들은 채무자에 대한 회생절차 개시 후 렘마로 자산을 이전한 것을 관리인이 부인하면 렘마와 스발바드 사이의 거래를 무력화할 수 있다고 생각하지만, 여전히 유효한 렘마와 스발바드 간 계약을 근거로 하여 채무자 계좌 1, 2로 배당금을 입금하는 단계나 관리인이 입금된 배당금을 인출하는 단계에서 어떤 공격을 해올지 몰라 스발바드와의 분쟁 해결이 큰 과제라 하겠습니다.

## 5. 신청인들의 노력과 인식

### 가. 신청인들의 노력

신청인들은 채무자의 다른 채권자들이 미국에서 배당을 받을 수 있다고 막연히 기대만 하고 미국 FTX 제11장 회생절차에서 무엇을 해야 배당을 받을 수 있는지 모르고 있을 때 가만히 있으면 전혀 배당을 받을 수 없다는 것을 알고 많은 변호사 비용과 수고를 들여 배당을 받기 위한 구체적인 노력을 했습니다.

FTX는 KYC에 문제가 있는 미승인 채권의 채권자들은 2025. 3. 1. 이전까지 KYC 절차를 시작하고, 2025. 6. 1. 이전 KYC를 통과해야만 채권을 변제받을 권리를 유지할 수 있고, 시작시점과 종결시점 중 하나라도 어기는 경우 회생채권이 부인되며 실권된다는 내용의 신청을 2024. 11. 22. 델라웨어 법원에 제출하였고 법원은 명령으로 이 신청을 승인하였습니다.[23) 채무자의 회생채권은 미승인 채권으로

---

23) 델라웨어 법원은 FTX의 KYC 이의제기를 인정하여 2025. 2. 3. 아래와 같은 명령을 내렸습니다(DOC 29464)(소갑 제18호증] 델라웨어 도산법원 2025. 2. 3.자 명령).

2. 첨부된 일정 1에 기재된 미승인 채권의 원보유자가 해당 채권과 관련하여 2025. 3. 1. 오후

지정되어 있었기 때문에 2025. 3. 1. 기한은 매우 엄중한 압박이었습니다.


이런 상황에서 신청인들은 스발바드가 2024. 1. 29. 뉴욕주 법원에 제기한 채무 이행청구 및 손해배상소송에 대응하기는 힘이 부치고 또한 이 소송에서는 더 중요한 KYC 문제를 해결할 수 없다고 판단했습니다. 사안을 검토하면서 채무자가 보유하는 계좌 2에 입금된 가상자산의 대부분이 신청인들이 위탁한 것임을 확인하고(신청인들 83%, 채무자 16%, 기타 1%) 채무자의 동의를 얻어 계좌 2의 명의를 채무자에게서 신청인들로 변경하고 신청인들의 KYC를 허용해 달라는 신청을 미국 델라웨어 도산법원에 2025. 1. 21. 제출했습니다.[소갑 제6호증의 1 모션,  소갑 24호증 2023. 9. 26.자 확인서]


이 신청에 대하여 스발바드, FTX, 채무자, 이정엽(한국 변호사, 채무자에 대한 파

---

4시(동부) ("KYC 개시 마감일")까지 KYC 제출 절차를 시작하지 않을 경우, 해당 미승인 채권은 전체가 부인되며 말소된다.

3. 첨부된 일정 1에 기재된 미승인 채권의 원보유자가 채무자 또는 그들의 KYC 대행업체가 요청한 모든 KYC 정보를 2025. 6. 1. 오후 4시(동부 시간) ("KYC 제출 마감일")까지 제출하지 않을 경우, 해당 미승인 채권은 전체가 부인되면 말소된다.

2. In the event that the Original Holder of an Unverified Claim listed on Schedule 1 attached hereto does not commence the KYC submission process with respect to such Unverified Claim on or prior to March 1, 2025 at 4:00 p.m. (ET) (the "KYC Commencing Deadline"), such Unverified Claim shall be disallowed and expunged in its entirety.

3. In the event that the Original Holder of an Unverified Claim listed on Schedule 1 attached hereto does not submit all KYC information requested by the Debtors or their KYC vendors on or prior to June 1, 2025 at 4:00 p.m. (ET) (the "KYC Submission Deadline"), such Unverified Claim shall be disallowed and expunged in its entirety.

산신청 사건의 신청채권자 대리인입니다), 트라움인포테크가 의견을 제출했습니다. 신청인들은 제출된 의견을 검토한 후 2. 27. 예정된 심리를 진행하는 것보다 채무자에 대한 회생절차가 개시된 후 회생관리인이 심리에 참여하여 전체 채권자의 대표로서 의견을 제시하는 것이 KYC를 실행하는 데 더 유리하다고 판단하여 심리연기 신청을 하였고 법원이 이를 즉시 수용하여 4월 말까지 심리가 연기되었습니다. 이 신청을 통해 다음과 같은 소중한 결과를 얻었습니다.

## (1) KYC 기한 적용 배제

FTX는 신청인들의 채권자 명의 변경 신청이 있은 후 신청인들에게 서면으로 3월 1일과 6월 1일의 기한이 적용되는 미승인 회생채권 목록에서 채무자의 두 계좌를 모두 제외한다고 통지하고 이를 신청인의 모션에 대한 답변서 제9문단에 명시했습니다(소갑 제20호증 신청인들 제출 모션에 대한 FTX 답변서).[24] 그 결과 KYC 문제를 해결할 시간을 벌었습니다. 만일 기한이 그대로 적용되었더라면 3월 1일까지 KYC 신청을 제대로 개시하지 못하여 회생채권이 실권되어 배당금 수령은 이미 불가능하게 되었을 것입니다.[25] 또한 현재 상태로는 채무자가 6월 1일까지 KYC를 통과할 수 없으므로 이러한 이중 기한에 저촉되어 채무자의 회생채권이 부인되고 실권될 것입니다. 신청인들의 미국 대리인이 FTX와 접촉한 결과에 따르면, 앞으로 한국에서 회생절차가 개시되어 관리인이 FTX 제11장 절차에서 렘마 명의 계좌의

---

24) 각주 14 참조.
25) FTX는 2025. 4. 2. 채권실권 통지서에서 관련 델라웨어 법원 명령을 인용하면서 부록에 명시한 총 392,049건의 회생채권이 2025. 3. 1. KYC 개시 기한을 맞추지 못하여 실권되었다고 통지했습니다(DOC 30042).

KYC에 관하여 적극적인 권리행사를 하지 않으면, FTX는 언제든지 새로운 KYC 기한을 설정할 것으로 보입니다.

신청인들의 채권자 명의 변경 신청에 대한 심리가 연기된 후 FTX 담당자는 신청인들의 대리인들과 가진 2025. 3. 21. 회의에서 신청인들이 FTX가 크게 주의를 기울이고 있는 방준호(렘마 명의)의 KYC 등 회생채권 문제를 해결하기 위해 많은 비용을 들여가며 진지하게 대응해 준 데 대해 감사를 표했습니다. 한국에서 방준호에 대한 회생절차가 개시되어 법원이 임명한 관리인이 이 문제의 해결을 위해 나서준다면 FTX는 KYC 등 여러 관련 문제를 해결하는 데 매우 긍정적인 진전으로 평가하며, FTX 관리인인 존 레이 3세(John Ray III)가 적극적인 자세로 직접 지원하겠다는 의사를 표명하였습니다.

이 회의에서는 관리인이 선임되는 경우에 미국에서의 절차 진행과 관련된 의견도 교환되었습니다. 구체적으로는 현재 델라웨어 법원에 계속중인 모션에 한국 회생절차의 관리인이 동의하는 경우 법원이 계좌 2에 대해 명의 변경을 허용해 신청인들이 KYC를 수행하고, 그 직후 계좌 1에 대해 관리인이 KYC를 하는 방안이나(이 경우 신청인들은 사전에 관리인과 사이에 신청인들이 가진 계좌 2에 대한 모든 권리를 관리인에게 이전한다는 합의를 하면 계좌 2의 재산은 회생재단으로 귀속되게 될 것입니다), 계좌 1과 2에 대해 관리인이 동시에 KYC를 신청하는 방안 등 상황에 따라 접근법이 달라질 수 있음을 인정하고 관리인의 노력에 협조를 하겠다는 의사를 표명했습니다.

## (2) 스발바드의 협상력 약화

신청인들이 모션을 제기함으로서, 신청인들과 같은 채무자의 채권자들의 협조 없이는 스발바드가 KYC를 할 수 없다는 FTX 측 메시지를 2025. 3. 11. 회의에서 스발바드가 먼저 신청인 측에게 전했습니다. 이로써 채무자의 재산을 확보하기 위한 스발바드와의 협상에서 유리한 위치에 서게 되었습니다.

## (3) FTX로부터의 자금 회수와 관련된 위험요소 파악

모션에 대한 FTX의 답변서에서 KYC를 완료하는 데 장애가 되는 문제들이 다 드러나 이에 충분히 대처할 수 있게 되었습니다. FTX 답변서의 요지는 렘마 명의의 두 계좌에 대하여 신청인 외에 다른 채권자들도 이해관계를 갖고 있는 것이 아닌가 하는 것이었습니다. 그래서 채무자에 대한 회생절차의 관리인이 KYC를 요청하면 FTX가 반대할 근거가 없을 것으로 보입니다. 관리인은 채무자(방준호)의 모든 채권자들을 대표하기 때문입니다. 또 스발바드의 답변서를 통해 그들이 권리주장의 근거로 생각하는 것을 파악하게 되었고 향후 스발바드와의 쟁송이나 협상에서 한국 채권자들이 유리한 위치에 서게 되었습니다.

## 나. 회생절차에 대한 신청인들의 인식

신청인들이 델라웨어 도산법원에 채권자 명의변경 신청을 한 것이 회생채권의 회수를 위한 최선의 노력이었고 이를 통해 KYC 기한 적용을 배제함으로써 FTX 도산

재단으로부터 배당을 받을 정지작업을 한 것은 앞서 설명드린 바와 같습니다. 채무자에 대한 회생절차가 개시되면 관리인이 신청인들만이 아니고 전체 채권자를 대표하여 KYC를 수행하고 이를 통해서 배당받는 금액은 신청인들뿐만 아니라 모든 채권자를 위한 것임을 신청인들은 분명하게 인식하고 있습니다.

회생절차가 신청인들만을 위한 절차가 아니고 '모든 채권자'를 위한 절차임에도 불구하고 신청인들이 자기의 비용과 노력으로 회생절차를 신청하는 이유는 다음과 같습니다. 신청인들이 미국 델라웨어 도산법원에 모션을 제기하여 채무자의 FTX 회생채권을 KYC 기한 적용 대상에서 배제하는 데 성공하였습니다. 이제 모든 채권자를 대표하는 채무자(방준호) 회생절차의 관리인이 선임되면 그 관리인이 모든 채권자를 위하여 델라웨어 도산법원의 FTX 제11장 회생절차에서 KYC를 할 수 있는 상황이 되었습니다. 만약 이러한 기회를 놓치면 다시 KYC 기한이 설정되고 이를 도과하는 경우 미국법원 명령에 따라 FTX 회생채권이 실권되어 이 채권을 영원히 회수할 수 없게 되는 것을 알기 때문입니다.

## 다. 향후 회생절차 진행과정에서의 신청인들의 의지

신청인들은, 채무자 방준호가 구속되어 있는 상황에서, 채권을 회수하기 위하여 지난 8개월여 동안 200만 달러가 넘는 법률비용을 들여서 미국에서 절차를 진행하여 채무자가 보유한 FTX 2개 계좌의 KYC 기한의 적용 배제 결정을 얻어냈습니다. 빠른 시일 내에 KYC 를 완료하기 위해서는 반드시 회생절차가 필요하다고 판단하여 이 사건 회생절차 신청을 하게 되었습니다. 이와 관련하여 두 가지 점을 분명히

말씀드리고자 합니다.

첫째, 미국 델라웨어 도산법원이 신청인들의 렘마 명의 계좌 2에 대한 채권자 명의변경 신청을 받아들여 신청인들이 KYC를 하게 되는 경우 그와 관련된 모든 권리를 채무자 회생절차의 관리인에게 양도할 것입니다(소갑 제25호증 확약서 참조).

채무자의 관리인이 FTX 제11장 회생절차에서 채무자의 2개 계좌에 대한 권리를 인정받아 KYC를 완료하고 배당을 받을 수 있는 방법으로 크게 두 가지를 생각할 수 있습니다. 하나는 관리인이 해당 계좌에 대한 권리를 주장하면서 채권자 명의변경과 KYC 이행 허용을 신청하는 방법입니다. 다른 하나는 관리인이 현재 진행 중인 계좌 2에 대한 신청인들의 채권자 명의변경과 KYC 이행 허용 신청에 동의하고 델라웨어 법원이 신청을 인용하면 신청인들이 KYC를 이행한 후 신청인들과의 합의를 바탕으로 계좌명의를 관리인 명의로 변경하고 관리인이 직접 KYC를 하는 방법입니다. 계좌 2에 대한 관리인의 KYC가 완료된 후 한국 회생절차의 관리인은 이를 기반으로 계좌 1에 대한 KYC를 청구할 수 있습니다.

이 두 방법을 비교하면 전자는 새로운 신청서를 제출하는 데 따른 비용과 시간이 추가적으로 들기 때문에 비효율적이라고 보아 신청인들이 제출한 확약서를 근거로 하여 관리인이 델라웨어 도산법원의 절차에 참여하기를 기대합니다. 그러나 회생절차를 감독하는 서울회생법원이나 관리인이 다른 방법을 선택한다고 하여도 신청인들은 적극 협조할 것입니다.

둘째, 채무자 회생절차의 관리인이 종국적으로 KYC를 하게 되어 배당을 받을 수 있는 위치를 인정받기까지 상당한 법률비용이 소요될 것입니다. 진행 중인 모션 절차 혹은 추가적인 모션에서 권리를 주장하는 것뿐만 아니라 미국 연방 도산법 제15장의 외국 도산절차 승인을 받아 한국 회생절차에서 한국 법원이 내린 결정을 미국에서 인정받기 위한 절차도 진행할 필요가 있을 수 있습니다. 또 관리인이 배당을 받을 수 있는 자격을 인정받더라도 FTX가 관리인에게 배당금을 지급하는 단계나 관리인이 배당금을 인출하는 과정에서 스발바드가 이의를 할 것이고(구체적인 행동은 그 모회사인 아테스터가 함) 그를 해결하기 위한 법적 분쟁이 발생할 것입니다.

채무자의 재산에서 그런 비용을 댈 수 있으면 다행이지만 그렇지 못한 경우 법적 대응을 하지 못해 종국적으로는 배당금을 수령하지 못하는 사태가 발생할 수 있습니다. 현재 채무자의 채권자라고 주장하는 이들 중 일천만 달러 이상의 채권을 갖고 있는 이는 신청인들과 두 파산재단(하루, 멜리오)뿐입니다. 현실적으로 파산재단은 그런 비용을 감당할 수 없으므로 사실상 비용을 댈 수 있는 이는 신청인들뿐입니다. 신청인들은 그 비용을 대여할 의사가 있습니다. 신청인들은 마땅히 배당받을 거액을 법적으로 제대로 대응하지 못해서 놓쳐버리면 안 되다고 믿기 때문에 대여한 금전을 회수하지 못하는 위험이 있지만 필요한 비용을 관리인에게 대여하겠습니다.

## 6. 회생절차개시의 필요성

이 사건 채무자의 채권자들이 채권을 회수하기 위해서는 FTX 회생절차에서 배당

을 받아 이를 한국으로 가져와야 합니다. 이를 위해서는 먼저 관리인이 미국 델라웨어 도산법원에서 2개의 계좌에 대한 KYC에 성공하여야 합니다. 그 다음 FTX와의 협의를 통해 회생채권의 배당을 위한 나머지 절차를 진행하고 동시에 이 계좌에 대한 권리를 주장하고 있는 스발바드와 소송 또는 협상을 통해 배당금 인출을 막는 법적 장애를 제거해야 합니다. 이러한 업무를 성공적으로 수행하기 위해서는 회생절차의 개시가 절실합니다.

## 가. 회생절차에서 채무자의 사업 – KYC 업무 및 FTX 회생채권 회수 업무

채무자에 대해 회생절차가 진행되면 관리인이 수행할 채무자의 사업은 미국 FTX 제11장 회생절차에서 회생채권을 회수하는 일입니다. 그 일을 위해서는 KYC 업무를 먼저 수행해야 합니다. KYC 업무는 단순히 신원확인서류만 보내면 되는 일이 아닙니다. 미국에서 KYC 절차는 금융거래를 하는 회사들의 중요한 업무입니다. 이 사건 채무자와 거래했던 아테스토(스발바드의 모회사)의 경우에도 KYC를 담당하는 별도의 사업부서가 설치되어 있어 이곳에서 전문가들이 업무를 수행합니다.

KYC 업무가 별도의 전문가가 필요한 업무인 까닭은 미국 정부가 테러와 마약 등 범죄에 민감하여 KYC를 요구하는 각종 법률의 집행이 매우 엄격하고 이를 위반하는 경우 제재가 심하기 때문입니다. 반면에 거래 상대방의 신원을 확인하고 범죄와의 연관성을 심사해야 하는 상황은 각양각색이어서 KYC 승인 조건과 허용 여부를 판단하는 데 전문성이 필요합니다. 금융관련 거래를 하는 기업에서 KYC 문제가 발생하면 KYC 통과를 위해 상대방과 협상, 협력, 조건 이행 등의 활동을 하여 문제

를 해결하면 큰 수익을 냅니다. 금융자산이 거래 가능하기 위한 KYC 전제조건이 충족되어 본래의 가치대로 거래가 되기도 하고, KYC 문제로 인해 낮아진 자산의 가치가 전문가들의 활동으로 높아지기도 하기 때문입니다. 현재 아테스토가 유사한 문제로 FTX와 협의 중인 회생채권은 대략 1조 원 이상인 것으로 알려져 있습니다. FTX 제11장 회생절차에서 렘마 명의 계좌의 KYC도 한국 회생절차 관리인이 미국 전문가의 도움을 받아서 해결해야 하는 쉽지 않은 업무입니다.

한편 KYC가 완료되었다고 하여 자동으로 해당 계좌에 배당금이 입금되는 것이 아닙니다. 이 사건 채무자의 경우는 KYC 지연으로 인하여 일반 배당계획에 따른 변제가 불가능한 상황이어서 KYC에 성공한 후에 FTX와의 협상을 통해 배당일정을 새로 정해야 합니다. 배당일정이 채권자들에게 유리하게 정해지도록 FTX와 협의해야 하는 것도 관리인이 수행할 중요한 업무입니다.

## 나. 스발바드와의 협상 업무

KYC가 통과되면 FTX와의 협의를 통해 회생채권의 배당을 위한 나머지 절차를 진행하게 되는데, 이 과정에서 이 계좌에 대한 권리를 주장하고 있는 스발바드가 뉴욕주 법원에 제기한 소송에 대응하면서 협상을 병행하여 배당금 인출을 막는 법적 장애를 제거해야 합니다. 스발바드와의 분쟁을 유리하게 마무리하는 일이 관리인이 수행할 주요한 업무의 하나입니다. 이 업무는 국제 도산채권 시장에서의 채권 매수라는 사업적 기회를 통해 자신의 경제적 이익을 창출하고 극대화 하고자 하는 아테스토와의 진정한 의미의 사업 협상입니다.

## 다. 관리인의 미국팀 활용

신청인들은 지난 8개월 동안 미국에서 변호사보수 등 많은 비용을 치르면서 지난 한 과정을 거쳐 KYC 기한 적용 배제 결정을 받아 채무자의 한국 채권자들이 권리를 주장할 수 있게 만들었습니다. 이 작업을 위해 성웅규 미국 뉴욕주 변호사가 주도하여 가상자산에 대한 전문가와 도산전문 변호사로 미국팀을 꾸렸습니다. 전문성이 있으면서도 합리적인 보수를 청구할 수 있는 변호사와 전문가를 찾는 일이 쉽지 않았습니다. 또 채권자와 채무자가 모두 한국에 거주하는 한국인이어서 한국법과 미국법을 함께 고려해야 되는데 한국 전문가와 미국팀 간의 의사소통이 원활한 체계를 구축하는 데도 몇 달이 걸렸습니다. 신청인들은 지금까지 미국 절차를 진행해 온 이 팀이 계속 활동하는 것이 FTX 회생절차에서 이 사건 관리인이 배당을 받아 오는 데 가장 효과적이고 효율적인 방법이라고 생각합니다.

만일 채무자에 대하여 파산절차를 진행하게 되면 서울회생법원의 개인파산관재인 명부에서 파산관재인이 선임될 터인데 그 파산관재인이 기존의 미국팀과 미국에서 제11장 회생절차를 진행할지도 확실하지 않고, 미국팀과 효과적인 의사소통을 할 수 있을지도 의문입니다. 또 파산관재인이 미국 절차에 대응하기 위해 지금까지 미국 절차를 담당한 팀만큼 전문성과 경제성을 갖춘 새로운 팀을 구성하는 것이 쉽지 않고, 설사 더 나은 팀을 만든다 해도 많은 시간이 걸리기 때문에 시간적 여유 없이 진행해야 하는 KYC 업무를 제대로 할 수 있을지 의문입니다.

앞으로 미국에서 제11장 회생절차를 진행하기 위해서는 지금까지 신청인들이 지출한 법률비용(약 200만 달러)보다 더 많은 비용이 소요될 것입니다. 채무자의 재산이 이 비용을 감당하지 못할 경우 미국 절차를 계속하기 위해서는 외부에서 차입을 해야 합니다. 신청인들은 지금까지 미국절차를 성공적으로 진행한 팀이 관리인의 감독하에 미국에서의 법적 절차를 계속 담당하는 것이 경제적이고 효율적이라고 판단하기 때문에 이에 소요되는 비용을 조달하기 위한 외부 차입이 필요하면 자금을 제공할 의사가 있습니다.

## 라. 당사자 합의에 의한 조기 변제 실현

이 사건 회생절차의 관리인이 FTX로부터 비[용을 받더라]도 실제로 채권자들이 변제를 받게 되기까지는 여러 가지 법률적 난제를 해결해야 합니다. 채무자가 채권자들과 거래한 것이 일반적인 물건이나 현금이 아니고 '가상자산'인데 아직 가상자산의 거래와 관련된 법적 쟁점들이 해소되지 않은 상태여서 이 사건에서도 여러 법리적 쟁점이 다투어질 것으로 예상됩니다. 그 가운데 쉽게 예상할 수 있는 몇 가지 쟁점을 예시하겠습니다.

첫째, 채무자와의 계약 해석의 문제입니다. 채무자가 채권자들과 체결한 계약을 일응 투자계약과 대여계약으로 대별할 수 있는데 각 계약이 채권자가 손익을 전부 부담하는 전형적 투자계약인지 아니면 동량의 가상 자산(예를 들면 비트코인 10개)을 돌려주어야 하는 비트코인 대여계약인지가 명확하지 않은 경우가 있어 계약의 해석을 둘러싸고 다툼이 예상됩니다.

둘째, 입고명의자의 권리 문제입니다. 현재 채무자가 FTX 도산재단에 대해 갖고 있는 회생채권은 2개의 계좌에 대한 권리인데 이 계좌에 입고된 가상자산은 누구 명의의 가상자산이 입고되었는지를 확인할 수 있습니다. 예를 들어 계좌 2에 입금된 가상자산의 약 83%가 신청인들의 명의로, 약 16%는 채무자 명의로, 약 1%는 다른 2명의 명의로 입고된 것을 확인할 수 있습니다. 채권자라고 주장하는 이들 중에는 자신 명의의 입고가 있는 채권자도 있고 자신 명의의 입고가 없는 채권자들도 있습니다.

이러한 상황에 FTX에서 배당을 받을 때 자신 명의의 가상자산 입고가 있는 채권자는 해당 계좌의 배당액에서 자신 명의의 입고액의 비율만큼 먼저 배당을 받고, 여기서 못 받은 금액은 입고 명의가 없는 다른 채권자들과 함께 채무자 명의로 입고된 것으로부터 배당을 받게 될지, 아니면 입고명의 여부를 불문하고 배당받은 모든 금액을 합하여 전체 채권자가 안분비례로 나누어 가질지 법리적인 다툼이 예상됩니다.

셋째, 회생채권 금액 확정의 문제입니다. 채무자와 거래한 것이 대부분 가상자산이므로 회생채권가액을 어느 시점의 가상자산 가격으로 산정할지가 문제입니다. 채권자를 유형별로 구분해 보면 FTX 회생절차 개시 전에 투자나 임대를 한 경우와 FTX 회생절차 개시 후에 투자나 임대를 한 경우로 나누어 볼 수 있습니다. 가상자산 운영의 결과 발생하는 모든 손익이 투자자에게 귀속되는 투자의 경우에는 FTX 회생절차에서 받을 수 있는 금액을 회생채권의 가격으로 볼 수 있습니다. 다만

FTX 회생절차 개시 후에 투자한 경우나 채무자의 사기행위로 인하여 손해배상청구권을 갖는 경우에는 해당 가상자산의 가치를 어느 시점을 기준으로 하는가의 문제가 남습니다. 여기에 더하여 부인을 하는 경우 부인되어 총채권액에 합산될 가액과 채무자에게 반환할 가액을 어느 시점의 가치에 따를 것인지도 정해야 합니다.

임대의 경우에는 임대물반환청구권의 기준시점에 대해 다양한 견해가 있을 수 있습니다. 기준시점으로는 FTX 회생절차 개시시점, 임대시점, 임대계약 종료시점, 채무자의 회생절차 개시시점 등을 생각해 볼 수 있습니다. FTX 제11장 회생절차 개시시점의 가격이 상당히 낮았고 그후 급격한 가격상승이 있었기 때문에 무엇을 기준시점으로 하는가에 따라 회생채권액이 크게 달라지므로 이에 대해 다툼이 예상됩니다.

아래 표는 채권자별로 가상자산을 어느 시점의 가격으로 평가하는가에 따라 채무자에 대한 회생절차에서 회생채권의 가액이 어떻게 달라지는가를 보여줍니다. 아래 표에서 채무자에 대한 회생개시일은 2025. 3. 27.로 가정했고 가상자산의 가액은 coinmarketcap.com의 시세표에 따랐습니다.

[표 4] 시나리오 별 회생채권액26)

|  | 시나리오 1 | 시나리오 2 | 시나리오 3 | 시나리오 4 |
|---|---|---|---|---|
| 임대 | 방준호 회생개시일 | 방준호 회생개시일 | 방준호 회생개시일 | 거래일 |
| 2022.11.11. 이전 투자 | FTX 회생개시일 | FTX 회생개시일 | FTX 회생개시일 | FTX 회생개시일 |
| 2022.11.11. 후 투자 | 방준호 회생개시일 | 거래일 | 거래일 | 거래일 |
| 부인대상거래 | 방준호 회생개시일 | 방준호 회생개시일 | 방준호 회생개시일 | 방준호 회생개시일 |

26) 계산을 위한 수치이며, 신청인이 이와 같은 사실을 인정한다는 의미는 아닙니다.

36/43

| 투자자 | 시나리오1 | | 시나리오2 | | 시나리오3 | | 시나리오4 | |
|---|---|---|---|---|---|---|---|---|
| | 부인O | 부인X | 부인O | 부인X | 부인O | 부인X | 부인O | 부인X |
| 하루 | 46.82 | 46.82 | -71.50 | 83.15 | -72.59 | 83.13 | -161.03 | 105.73 |
| 임형철 | 78.20 | 78.20 | 143.26 | 57.79 | 145.45 | 57.78 | 322.67 | 73.49 |
| 최지웅 | 62.42 | 62.42 | 105.78 | 42.67 | 107.39 | 42.66 | 161.08 | 36.69 |
| 트라움 | 67.66 | 67.66 | 115.93 | 46.77 | 117.69 | 46.76 | -25.14 | 11.93 |
| 군소채권자 | -0.20 | -0.20 | 2.46 | 9.77 | -0.35 | 9.82 | 5.00 | 12.31 |

한편 채무자에 대한 암호화폐 투자 및 대여는 여러 단계를 거쳐서 이루어졌기 때문에 많은 주체들이 관여되어 있습니다.[27] 게다가 위에서 말씀드린 바와 같이 여러 법률적 난제들이 있습니다. 수 많은 이해관계인들 사이에서 다수의 분쟁이 발생할 우려가 있는데, 파산절차에서는 이러한 여러 쟁점들을 소송을 통해서 해결할 수밖에 없습니다. 여러 법적 쟁점을 소송을 통해서 해결을 해야 한다면 언제 채권자들이 변제를 받을지 가늠하기 어렵습니다. 반면에 회생절차에서는 제기될 수 있는 여러 쟁점에 대해 채권자들이 회생계획안을 통해 합의함으로써 분쟁의 범위를 훨씬 줄일 수 있습니다. 회생절차에서는 법리적인 쟁송을 거치지 않고 채권자들 사이의 합의를 통해 법적 쟁점을 해결할 가능성이 높아 회생절차를 통한 조기 변제를 도모하고자 회생절차개시를 신청하게 되었습니다.


## 7. 관리인에 대한 의견


채무자가 수감 중이므로 제3자 관리인을 선임해야 합니다. 신청인들은 관리인으

---

27)  예를 들면 이른바 "하루"에 투자한 사람들의 가상자산은 "투자자 -> 하루 인베스트 -> 하루 매니지먼트 -> 하루 유나이티드 -> 비앤드에스홀딩스 -> 채무자 방준호"에 이르는 경로를 따라 움직인 것으로 보입니다.

로 오수근 이화여자대학교 법학전문대학원 명예교수를 희망합니다. 오수근 교수는 채무자회생법의 기초자로 우리나라 도산법 발전에 중추적 역할을 수행해 왔습니다. 2000년 이후 IMF, World Bank, ADB, OECD 등 각종 국제기구에서 한국 정부를 대표했고 특히 국제연합국제상거래법위원회(UNCITRAL)에서 15년 동안 활발히 활동하면서 전체 회의 의장, 제3분과회의 의장, 제5분과회의 부의장 등을 역임했습니다. 또 국제중재사건과 미국 소송에서 여러 차례 전문가 증인으로 참가하여 미국 절차에 대한 이해가 높습니다. 최근에는 홍콩 국제중재사건의 중재인으로 활동했습니다(소갑 제26호증 오수근 이력서 참조)

 신청인들이 관리인으로 오수근 교수를 희망하는 것은 과거의 경력 때문만이 아닙니다. 신청인들은 미국 델라웨어 도산법원에 채권자명의 변경신청을 제출하기 위하여 한국법의 전문가 의견서를 받는 과정에서 그분의 역량과 적합성을 확인할 수 있었습니다. 미국 법정절차를 진행한 미국팀은 전략을 수립하고 신청서를 작성하는 과정에서 관련 한국법을 이해하는 데 많은 어려움을 겪었습니다. 한국 도산법에 정통하고 미국 도산절차에 대한 이해가 있으면서 영어로 소통하는 데 어려움이 없는 전문가를 찾지 못했기 때문입니다(소갑 제27호증 미국 절차 진행 경과 7~8쪽 참고). 그런데 오수근 교수가 의견서 작성 제출에 동의하여 미국팀과 대화를 시작하면서 미국팀은 한국법에 대해 궁금했던 것을 모두 이해하고 미국 법정절차의 전략에 대한 한국법 시각에서의 평가를 받을 수 있어 크게 만족했습니다. 미국팀은 한국 회생절차 개시 후 미국 법정절차 진행에서도 오수근 교수와 같이 일하게 되기를 강력하게 희망하고 있습니다.

일반적인 회생기업의 제3자 관리인이라면 기업 운영의 경험이 있는 분이어야 할 것입니다. 그런데 채무자의 회생절차에서 관리인이 수행할 사업은 미국 델라웨어 도산법원에서 진행 중인 FTX 제11장 회생절차에서 회생채권을 변제받는 일입니다. 구체적으로는 델라웨어 도산법원과 FTX로부터 KYC를 할 수 있도록 허락을 받아야 합니다. 또 렘마와 스발바드 간의 법적 문제를 해결하여 회생채권을 성공적으로 매각함으로서 채권자들에게 배당할 재원을 확보해야 합니다. 이를 위해서는 미국의 가상자산 및 도산 전문 변호사와 의사소통이 되어야 하고 한국과 미국의 도산절차에 대한 이해가 있어 미국절차 진행 중 중요한 결정을 할 수 있어야 합니다. 한편 한국에서는 기업 경영에서 통상 필요한 영업, 인사, 생산 관리 등이 필요하지 않고, 오히려 향후 예상되는 여러 법적 쟁점과 관련된 소송 등 법적 조치를 취하고 필요한 경우 이해당사자 사이의 협상을 통한 해결을 도모할 능력이 필요합니다. 이런 점에서 오수근 교수가 이 사건의 관리인으로 적임이라고 생각됩니다.

## 8. 채무자의 의견

채무자는 이 사건 회생절차의 신청과 개시에 적극적으로 동의한다는 입장입니다. 오히려 본인이 구속되어 있어 시간이나 비용, 정보접근 등에 제약이 있는 상태에서 신청인들이 회생절차 개시신청을 한 데 대하여 감사하게 생각하고 있습니다.

## 9. 결론

채무자의 경우 채무자에게 파산의 원인인 사실이 생길 염려가 있는 경우에 해당

함이 명백합니다. 뿐만 아니라 채무자에 대해 관리인이 선임되어 미국에서 진행 중인 FTX 제11장 회생절차로부터 회생채권 변제를 받으면 국내 채권자들에 대한 채무상환계획의 이행가능성이 높다는 점 등을 감안하면, 채무자에 대해서는 회생절차를 개시하는 것이 채권자 일반의 이익에 더 적합하다고 할 것입니다. 위와 같은 사정들을 종합적으로 고려하시어 채무자에 대하여 회생절차개시결정을 내려 주시기 바랍니다.

## 소 명 자 료



**[신청인들이 가진 채권의 액과 원인에 관한 자료]**

1. 소갑 제1호증       투자일임계약서(신청인 임형철)

1. 소갑 제2호증       차용증(신청인 임형철)

1. 소갑 제3호증       채무변제계약공정증서(신청인 최지웅)


**[채무자의 재산에 관한 다른 절차 또는 처분에 관한 자료]**

1. 소갑 제4호증       나의 사건검색(서울회생법원 2024하단102153)

1. 소갑 제5호증       뉴욕주 법원 소장 접수통지

1. 소갑 제6호증의 1  신청인들 제출 모션

1. 소갑 제6호증의 2  신청인들 제출 모션 국문 요약문

1. 소갑 제7호증       나의 사건검색(서울중앙 2023가합74398)

1. 소갑 제8호증       나의 사건검색(서울중앙 2024가합72375)

1. 소갑 제9호증        나의 사건검색(서울중앙 2024카단801368)

1. 소갑 제10호증       나의 사건검색(서울남부 2024초기3063)

1. 소갑 제11호증        나의 사건검색(대법원 2025도3712)


**[채무자의 자산, 부채 그 밖의 재산상태에 관한 자료]**

1. 소갑 제12호증        입출금내역(FTX 붕괴 전후)

1. 소갑 제13호증         시나리오별 회생채권액

1. 소갑 제14호증        아테스토가 신청인 임형철에게 제안한 계산방식

1. 소갑 제15호증        아테스토가 신청인 최지웅에게 제안한 계산방식

1. 소갑 제16호증        채무자가 작성한 투자자입출금액정리


**[기타 소명자료]**

1. 소갑 제17호증        판결문(서울남부지방법원 2024. 8. 13. 선고 2024고합54 판결)

1. 소갑 제18호증        델라웨어 도산법원 2025. 2. 3.자 명령

1. 소갑 제19호증        델라웨어 도산법원 2025. 4. 2.자 통지

1. 소갑 제20호증        신청인들 제출 모션에 대한 FTX 답변서

1. 소갑 제21호증        FTX 회생계획 제2.1.129조(발췌)

1. 소갑 제22호증        FTX 회생계획 제7.14조(발췌)

1. 소갑 제23호증        FTX 회생계획 제2.1.197조(발췌)

1. 소갑 제24호증        2023. 9. 26.자 인증서

1. 소갑 제25호증        확약서

1. 소갑 제26호증    오수근 이력서

1. 소갑 제27호증    미국절차 진행 경과


# 첨 부 서 류

1. 위 소명방법                                각 1부
1. 소송위임장                                1부


2025.  4.  9.

신청인들의 대리인


법무법인 송우


담당변호사  이  진  만


담당변호사  정  두  호


담당변호사  이  하  영

서울회생법원 귀중



[별지 제45호 서식]

위 번역문은 원문과 상위없음을 서약합니다.

I swear that the attached translation is true to the original.

2025년 12월 26일

December 26, 2025

서약인    위 성현    (인)

 YU Seongyeon
Signature

---

등부 2025년 제240호

Registered No. 2025-240

# 인    증

# NOTARIAL CERTIFICATE

위 서약인 유성현은 본 공증인의 면전에서 위 번역문이 원문과 상위없음을 확인하고 서명날인하였다.

YU SEONGHYEON personally appeared before me, confirmed that the attached translation is true to the original and subscribed his name.

2025년 12월 26일 이 사무소에서 위 인증한다.

This is hereby attested on this 26th day of December, 2025 at this office.

공증사무소명칭
공증인가 법무법인 세창

Name of the office
SECHANG & CO.

소속
서울 중앙 지방 검찰청

Belong to
Seoul Central District Prosecutor's Office

소재지표시
서울 서초구 서초대로254, 16
(서초동, 오퓨런스빌딩)

Address of the office
16F, Opulence Bldg.,254 Seocho-daero, Seocho-Gu, Seoul., Korea

공증담당변호사 주진태

JIN TAE JOO

(Signature of Notary Public)

본 사무소는 대한민국 법무부 장관의 인가를 받아 법률 제36호에 의거, 2025년 2월 7일부터 공증인의 직무를 수행할 수 있도록 정식으로 허가되었습니다.

This office has been authorized by the Minister of Justice, the Republic of Korea, to act as Notary Public since February, 2025 under Law No. 36.

210㎜×297㎜ (보존용지(1종) 70g/㎡)